**E-FILED**
Thursday, 16 March, 2017  12:50:19 PM
Clerk, U.S. District Court, ILCD

**IN THE UNITED STATED DISTRICT COURT**
**FOR THE CENTRAL DISTRICT OF ILLINOIS**

| | |
|---|---|
| DR. RONALD L. SCHROEDER, 1st WAY PREGNANCY SUPPORT SERVICES, an Illinois not-for-profit corporation, and PREGNANCY AID SOUTH SUBURBS, an Illinois not-for-profit corporation, | ) ) ) ) ) Case No. |
| | ) |
| | ) Hon. |
| Plaintiffs, | ) ) |
| v. | ) |
| BRUCE RAUNER, in his official capacity as Governor of Illinois; BRYAN A. SCHNEIDER, in his official capacity as Secretary of the Illinois Department of Financial and Professional Regulation, THOMAS E. PRICE, in his official capacity as Secretary of Health and Human Services, and SEAN CAVANAUGH, in his official capacity as Acting Director, Centers for Medicare and Medicaid Services, | ) ) ) COMPLAINT FOR DECLARATORY AND ) INJUNCTIVE RELIEF ) ) ) ) ) ) ) ) |
| Defendants. | ) |

Plaintiffs Doctor Ronald L. Schroeder, 1st Way Pregnancy Support Services, and Pregnancy Aid Southwest Suburbs, through counsel, file this complaint against the Defendants, BRUCE RAUNER, in his official capacity as Governor of Illinois, BRYAN A. SCHNEIDER, in his official capacity as Secretary of the Illinois Department of Financial and Professional Regulation, THOMAS E. PRICE, in his official capacity as Secretary of Health and Human Services, and SEAN CAVANAUGH, in his official capacity as Acting Director, Centers for Medicare and Medicaid Services ("Defendants"), and respectfully request that this Honorable Court enter a judgment providing the relief requested herein.

## NATURE OF THE CASE

1.    Dr. Ronald L. Schroeder is a physician licensed in Illinois who provides medical care, pro bono, to women who seek his assistance in connection with a pregnancy or possible pregnancy.

1st Way Life Pregnancy Support Services and Pregnancy Aid South Suburbs are not-for-profit corporations that provide, free of charge, limited medical services, counseling, and material assistance to women confronted with crisis pregnancies. Plaintiffs have a sincere religious objection to (1) providing women with information about the supposed benefits of abortion, sterilization, or contraception; (2) counseling women to have abortions or to use contraceptive drugs or devices, or sterilization; and (3) facilitating the procurement of any of these drugs, devices, or procedures by referrals or other means, such as providing information about entities or individuals who provide such drugs, devices, or procedures.

2.      The Illinois Healthcare Right of Conscience Act, 745 ILCS 70/1 et seq. (IHRCA), as amended by Public Act 99-690 ("P.A. 99-690"), became effective January 1, 2017.  See **Exhibit One** for P.A.99-0690 followed by the full IHRCA.  The new law prevents the Plaintiffs from providing healthcare and other assistance to individuals who seek help from them in the manner required by their sincerely held religious convictions.  P.A. 99-690 affirmatively requires Plaintiffs to take the actions described above, which they cannot do without violating their sincerely held religious convictions.  As a result, the Plaintiffs confront an unacceptable dilemma: They must either violate their sincerely held religious convictions in order to comply with P.A. 99-690 or refuse to comply with the new law and subject themselves to discrimination, sanctions, and exposure to liability under state law.

3.      To try to resolve this dilemma Plaintiffs are filing this lawsuit to ask this Honorable Court to find that P.A. 99-690 violates Plaintiffs' rights under the Constitution of the United States and federal law.

## PARTIES, JURISDICTION, AND VENUE

4.      Plaintiff Dr. Ronald L. Schroeder is a resident of Illinois and licensed physician.

2

5.     Plaintiff 1st Way Pregnancy Support Services is an Illinois not for profit corporation doing business as 1st Way Life Center ("1st Way").

6.     Plaintiff Pregnancy Aid South Suburbs ("PASS") is an Illinois not-for-profit corporation.

7.     Defendant Bruce Rauner, Governor of Illinois, is the chief executive officer of the State of Illinois.  As Governor he is ultimately responsible for the enforcement of the IHRCA, as amended by P.A. 99-690, including its enforcement by other state officials such as Defendant Schneider.  He is sued in his official capacity.

8.     Defendant Bryan A. Schneider is Director of the Illinois Department of Financial & Professional Regulation, the agency primarily responsible for enforcing the IHRCA, as amended by P.A. 99-690.  He is sued in his official capacity.

9.     Defendant Thomas E. Price is Secretary of the federal Department of Health and Human Services ("HHS").  This agency makes grants of federal funds totaling hundreds of millions per year to the State of Illinois in connection with a wide range of federal programs.  He is sued in his official capacity as an indispensable party under Fed.R.Civ.P. 19.

10.     Defendant Sean Cavanaugh is the Acting Director of the federal Centers for Medicare & Medicaid Services ("CMS"), which administers grants to the State of Illinois relating to the Medicaid, Medicare, and the Children's Health Insurance Program.  He is sued in his official capacity as an indispensable party under Fed.R.Civ.P. 19.

11.     This cases arises under the Constitution and laws of the United States giving the Court subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1343, and 1361 and 42 U.S.C. §1983.

12.     The Court has authority to issue the requested declaratory relief pursuant to 28 U.S.C. §§2201 & 2202, 42 U.S.C. §1983, and Fed.R.Civ.P.57. The Court has jurisdiction to award the requested injunctive relief under 28 U.S.C. § 1343(a)(3) and Fed.R.Civ.P. 65.

13.     Venue lies in this judicial district pursuant to 28 U.S.C. § 1391 because the state defendants, sued in their official capacity, maintain their principal offices in this district and division, and the Federal Defendants who are parties to the federal grants implicated in this litigation exercise their authority in this district and division.

## GENERAL ALLEGATIONS

14.     Dr. Ronald L. Schroeder is a medical doctor licensed to practice in the State of Illinois. He has practiced in the area of Obstetrics and Gynecology since 1973. In his twenty-five years in private practice in obstetrics and gynecology he has treated a great number of expectant mothers but he cannot recall even one occasion when a woman asked him about having an abortion. Now he provides certain limited care, pro bono, to women who seek assistance because they believe they are pregnant. He administers abdominal and transvaginal ultrasounds and sometimes a physical examination to confirm the existence of pregnancy and to determine the baby's gestation and due date. In connection with this medical treatment he discusses the progress of the pregnancy and any risk factors. He displays ultrasound pictures of the unborn baby. In his communication with the expectant mother he tries to be positive and to encourage his patient to think of her pregnancy in a positive light. He does not raise the subject of abortion since he does not believe abortion is medically necessary except in the most extreme cases, i.e., when a mother's life is in danger because of the pregnancy, a situation he never faced in his many years of medical practice. He does not believe abortion otherwise presents benefits to a

pregnant mother and so he would not, and could not, discuss abortion's "benefits" with her even if she asked.

15.     Dr. Schroeder believes that his approach is fully in accord with current medical standards of care, at least before the IHRCA was amended this year by P.A. 99-690.  In his professional opinion a medical doctor practicing in Illinois prior to 2017 was never obligated to discuss with a patient treatment options that the doctor does not believe, in his or her independent and reasonable professional judgment, present benefits to the patient.   He fears that passage of P.A. 99-690 is intended to, and will, alter the medical standard of care by requiring him to discuss so-called benefits of abortion even though he believes, in his sound professional judgment, that abortion presents no such benefits and is in fact positively harmful to the mother as well as fatal to the unborn child.  In addition he opposes P.A. 99-690's requirement that he make non-emergency transfers or referrals of patients for abortion and abortifacient products or services upon request, and at a minimum to provide information about such services, when he is opposed because of his sincerely held religious beliefs from doing so, and was never as a medical doctor required to do so before passage of 99-690.

16.     While he recognizes that a woman may legally choose abortion, or contraception methods that are abortifacient, he believes, based on his Christian faith, that the decision to end the life of an unborn human child through an abortion is a profoundly immoral one that he may not  morally participate in or further.  It would be heartbreaking and immoral for him to speak to a mother about killing her unborn baby.  Referring for abortion, or giving out information about abortion providers, is likewise morally impermissible for him.

## 1ST WAY LIFE CENTER

17.      1ˢᵗ Way Life Center is a not-for-profit Illinois corporation founded 39 years ago to provide emotional, material, and financial support to women who find themselves in a crisis pregnancy.  It seeks to provide an open and loving environment where women feel safe and empowered.  All of its services are provided free of charge, without discrimination, and in confidence.  Funding for its work comes solely from private donations through individuals, churches, civic groups and businesses.

18.      1ˢᵗ Way Center and those who work with and through it (referred to collectively as "1ˢᵗ Way") firmly believe that pregnancy presents no problem so great as to warrant intentionally destroying the innocent life in the mother's womb.  1ˢᵗ Way's mission is to encourage women who seek its assistance to see that choosing life for their child is in their own and their child's best interest.  1ˢᵗ Way supports that choice by providing pre- and post-natal assistance to the mother so she can better care for her baby.

19.      1ˢᵗ Way Life Center provides certain limited medical services such as pregnancy testing and limited ultrasound screening.  These services are provided pro bono by licensed healthcare professionals such as nurses and sonographers. 1ˢᵗ Way does not provide primary medical care. Women seeking 1ˢᵗ Way's limited services (pregnancy test and ultrasound) are advised to seek follow-up care through a licensed physician of their own choosing.

20.      1ˢᵗ Way also utilizes volunteers who are not licensed healthcare professionals but ordinary, caring people who share publicly available information, personal opinions, and personal and practical advice with clients.  These discussions touch on the public debate about the effects of abortion and contraception, but the prime focus of the discussion is on clients' own private situations.  Non-licensed volunteers do not dispense medical advice.

21.     1ˢᵗ Way endeavors to support its clients during pregnancy and beyond, whatever abortion decision the client makes.  1ˢᵗ Way's lay volunteers provide information individually and in classes on proper prenatal care, gestational development, post-birth parenting, as well as life skills, decision-making and maintaining healthy relationships. 1ˢᵗ Way also provides material assistance such as maternity clothing, diapers, formula and baby food, and makes referrals for employment, housing, childcare, medical care, education, professional counseling, legal assistance, adoption, and sources of financial assistance.   It also provides support for clients' family members.  If a client chooses abortion 1ˢᵗ Way offers post-abortive counseling, which involves discussions and advice between lay staff who consider the individual situation and voiced needs of the client.  Lay staff do not hold themselves out as licensed healthcare providers and do not provide medical advice.

22.     Of 1ˢᵗ Way's clients sixty-seven per cent are single, sixty-two percent are unemployed, sixty-one percent do not have a high school diploma, and the average age is twenty-four.  Thirty percent are Hispanic.  In order to serve its clients effectively 1ˢᵗ Way emphasizes the importance of education and encourages educational betterment as a pathway to a better job.

23.     Over its 39 years 1ˢᵗ Way Life Center estimates it has helped over 12,000 expectant mothers in its community to choose life for their babies.

24.     1ˢᵗ Way's directors, officers, staff, and volunteers fulfill their mission based on Christian principles which place a high value on human life from conception to death.  As a result they have a sincerely-held religious objection to speaking to their clients about supposed "benefits" of abortion or abortifacient contraception.  Because of their sincerely-held religious convictions and their mission of helping women and girls through crisis pregnancies to the birth of their child, 1ˢᵗ Way cannot in good conscience provide women with information about supposed benefits of

abortion or contraceptive drugs and devices. Nor can it provide its clients with referrals to, or information about, individuals or entities that do provide these procedures or devices.

25.     Information about contraception and abortion is readily available to anyone who wishes to access it through various means such as the phone book, the internet, public health departments, and advertisements. It is as easy for clients to obtain information about abortion and contraception services as it was for them to find out about 1ˢᵗ Way and its services.

26.     The medical director of 1ˢᵗ Way recently disassociated from it because he was not willing to violate his conscience and is afraid of disciplinary sanctions under P.A. 99-690 if he does not comply. 1ˢᵗ Way no longer is offering healthcare services to women. It provides non-medical assistance but pending the outcome of this lawsuit no longer uses a limited ultrasound scan to help women confirm their pregnancy, see their unborn child, and make a more informed choice about the consequences of choosing an abortion.

27.     1ˢᵗ Way Life Center's work is dependent upon the volunteers and the private donations it receives. Volunteers and donors are motivated to support us because of its life-affirming mission. Upon information and belief, if 1ˢᵗ Way is required to comply with the requirements of P.A. 99-690 some of its volunteers will disassociate and some donors will cease to contribute.

**Pregnancy Aid Southwest Suburbs (PASS)**

28.     PASS is a faith-based Christian ministry founded in 1983. PASS and those who work with and through it for the purpose of achieving its mission (referred to collectively as "PASS"), believe that all human life has intrinsic value because each person is created in the image and likeness of God. The value of a human life is not measured by position or ability.

29.     PASS's mission is to encourage and assist each pregnant woman to choose life for her baby and to support the mother during her first two years of motherhood.  PASS has operated for 34 years and during that time has served over 51,000 women.

30.     Women who believe they are pregnant can obtain a pregnancy test and a first trimester ultrasound at PASS, administered in accordance with state law.  Healthcare services at PASS (pregnancy tests and ultrasound) are performed by licensed professionals.

31.     PASS does not provide primary care.  Clients of PASS are informed about its limited services and the need to seek the further assistance of a licensed physician.

32.     PASS, through a free "Earn while you Learn" program, offers its clients pre-natal education, basic finance, and parental management classes.  The program is conducted by lay volunteers who are not licensed healthcare professionals and who do not hold themselves out as such when providing support to PASS' clients. Discussions between lay volunteers and clients deal with important topics of public concern like abortion, but their primary focus is on clients' personal situations.  These are often intensely personal discussions in which clients describe difficult situations and the lay volunteers offer emotional support and advice about how to cope.

33.     The PASS program supports clients by assisting them with their baby's needs from birth to age two.  These include diapers, wipes, car seats, and clothing.  PASS receives these materials via donations from businesses and local churches.  The program helps clients to understand their responsibilities to themselves, family, and baby, and assists them to meet them.

34.     PASS also offers the IMPACT prevention program. IMPACT educators go into local schools, churches, and community organizations to encourage and empower young people to be purposeful about who they are, what their goals are, and how to achieve the self-control to realize their goals.  The centerpiece of this is education on abstinence from sexual activity until

marriage. PASS has seen at first-hand that teaching and practicing abstinence until marriage avoids much self-inflicted pain and stress among young mothers.

35.     Information about abortion services is readily available in the Chicago area and its surrounding suburbs via the Internet and in telephone directories, which are available at many libraries, stores, bars, and other establishments, including government and medical. Less than 1000 yards from each of PASS's offices, a person can walk into dozens of business and medical establishments to ask for and look at a phone book or computer to choose an abortion and/or contraception provider. It is simply unnecessary for anyone from PASS to provide any person with such information.

36.     PASS's ministry operates in accordance with Christian principles which it interprets to hold that all human life is sacred and that abortion is immoral because it ends the life of an innocent child and also harms the child's mother. PASS also believes that premarital sex is not consistent with God's plan for sexuality and works harm on those who engage in it.

37.     For this reason, PASS and its personnel may not, consistent with conscience, counsel women to have an abortion procedure or discuss supposed "benefits" of abortion. PASS may not counsel or provide information to clients about supposed "benefits" of contraception or sterilization. PASS may not transfer or refer clients to providers of such procedures, devices or drugs, or even to provide information about, or to identify via list or otherwise, such providers to clients. PASS believes that to facilitate the procurement of any of these procedures, drugs or devices is gravely immoral and sinful.

38.     PASS is currently being forced to violate its sincerely held religious convictions because it cannot risk the sanctions, liability, and discrimination to which it is exposed for non-compliance, but it cannot abandon the women and other clients who come to it seeking help

10

without neglecting its sincerely-held religious conviction that it should aid those most in need. PASS has filed suit to end this intolerable and unnecessary dilemma.

## THE IHRCA AS AMENDED BY P.A. 99-690

39.    Prior to its amendment by P.A. 99-690, The Illinois Healthcare Right of Conscience Act, 745 ILCS 70/1 et seq. ("IHRCA"), protected Plaintiffs, and others similarly situated, from discrimination, coercion, or imposition of liability for conscience-based refusals to participate in certain medical services, notably abortion, contraception and sterilization. See, 745 ILCS 70/2 et seq.

40.    But with the amendment of the IHRCA effected by P.A. 99-690, the law now requires the very physicians, healthcare personnel, and healthcare facilities who have conscience-based objections to these treatment options to speak contrary to their consciences regarding the treatment options.  It does so by requiring conscientious objectors, and only them, to adopt so-called "access to care" protocols that guarantee that patients are informed by someone at the facility about the supposed benefits of abortion, sterilization, or use of contraceptive drugs or devices, as well as the names and locations of providers of abortion, sterilization, or contraception.

41.    The upshot is that the IHRCA, as amended by P.A. 99-690, now forces the Plaintiffs to engage in speech and actions they believe are immoral and contrary to their sincerely held religious beliefs, under pain of state-imposed discrimination, sanctions, and liability.

42.    P.A. 99-690's amendment of the IHRCA does not advance an actual, existing governmental interest, let alone a substantial or compelling one.  The reason is that the federal government and State of Illinois, including their agencies and subdivisions, already spend millions of dollars via a wide range of media to inform residents of Illinois about available

abortion procedures, contraceptive drugs and devices, and sterilization. Private providers likewise spend vast sums advertising these products and services to Illinois residents. Information about contraceptive drugs and devices, sterilization, and abortion is readily available to all Illinois residents via the internet, phone books, billboard and other advertisements, in public libraries, and through contact with governmental agencies. The notion that an individual cannot readily access information about contraceptive drugs and devices, sterilization, or abortion and individuals or entities who provide these things is simply false. In view of the wide availability of information about abortion, contraception and sterilization, P.A. 99-690's requirement that conscientious objectors, and they alone, must affirmatively speak about these products and procedures fails to advance any actual, existing governmental interest, let alone a substantial or compelling one, as required by law.

43.     Even assuming P.A. 99-690 amended the IHRCA in an effort to advance an actually existing governmental interest, the statute is not narrowly tailored means to advance its stated objective; it is in fact unconstitutionally overbroad. It compels Plaintiffs and others to discuss legal treatment options when the Plaintiffs have specifically indicated they do do so and their client has agreed to care subject to the limitations of services disclosed by Plaintiffs or other healthcare providers. It compels Plaintiffs and others to discuss legal treatment options although the healthcare provider knows in fact or has reason good reason to believe that the patient has no interest in those legal treatment options. It compels Plaintiffs and others to discuss legal treatment options with patients although the Plaintiffs or other healthcare providers knows in fact or has good reason to believe that the patient will be offended or distressed by the discussion of certain treatment options. It compels Plaintiffs and others to discuss legal treatment options although the patient has indicated they are not interested in treatment options. It compels

Plaintiffs to provide referrals for, or information about entities who provide abortion, sterilization, and contraception, even though Plaintiffs cannot do so in good conscience and even though this information is widely available from countless public and private sources.

44.     In addition, P.A. 99-690 is not narrowly tailored and is in fact unconstitutionally overbroad because it regulates and compels speech by private citizens who serve as staff or volunteer counselors at the Plaintiffs, individuals who are not licensed healthcare professionals, who do not hold themselves out as such to the public as licensed healthcare providers, and who do not provide medical advice.  These lay advocates discuss abortion (a matter of public concern), and its implications for the women who come to Plaintiffs for help (a matter of private concern).  In addition, lay advocates discuss forms of assistance that may be available to women both as a result of public social welfare programs and private charitable assistance that is available a matter of public concern, and its implications for the women who come to the Plaintiffs help, a matter of private concern.  The discussions are between private citizens about matters of public concern and deeply private matters that the government cannot regulate.  But P.A. 99-690 applies to, and regulates, these discussions which is advice intended for the wellbeing of women who come to PASS for help.

45     Even assuming P.A. 99-690 amended the IHRCA to advance a legitimate state  interest, the statute is not the least restrictive means of securing the interest. The State has many ways of disseminating information about abortion, contraception and sterilization.  It could have tasked its own employees or other public employees to disseminate the information via internet, television, radio, and at public health facilities, schools and libraries. It could have required healthcare providers themselves to disclose the legal treatment options they could not, for conscience reasons, participate in.  Requiring Plaintiffs to mouth its message contrary to their

First Amendment rights not to speak, and to act as referral agents for providers of such procedures and services, was simply unnecessary.

46      P.A. 99-690 changes standards governing healthcare providers covered by the IHRCA in that prior to passage of the act physicians and healthcare providers were free to structure their medical practice in a way that allowed them to avoid violating their conscientious convictions provided they informed clients of the limitations on their practice and clients consented to care subject to these limitations but P.A. 99-690 prevents physicians and healthcare providers from from doing so at present.

47      P.A. 99-690 changes standards governing healthcare providers covered by the IHRCA in that prior to passage of the act physicians and healthcare providers were free to refrain from discussing certain legal treatment options when they knew or had reason to know that the patient was not interested in those treatment options or would find discussion of those treatment options offensive or distressing but P.A. 99-690 prevents physicians and healthcare providers from from doing so at present.

48      P.A. 99-690 changes standards governing healthcare providers covered by the IHRCA in that prior to passage of the act there was no state law that affirmatively required Plaintiffs, physicians or healthcare personnel to perform the duties set forth in P.A. 99-690 6.1(3) but P.A. 99-690 now requires the Plaintiffs and other healthcare providers covered by the IHRCA to do so now.

49.      The State Defendants intend to enforce the provisions of P.A. 99-690 and have said so on the record in judicial proceedings in both state and federal court.  Their enforcement actions will be under color of state law within the meaning of 42 U.S.C. Sec. 1983 and state action within the meaning of the Fourteenth Amendment.

50.     The federal government each year makes hundreds of millions of dollars of grants to the State of Illinois through the Department of Health and Human Services ("HHS").  The grants are administered in large part by the Centers for Medicare and Medicaid Services who are the Federal Defendants in this lawsuit.  The grants are made to further the public health and welfare.

51.     The HHS grants to the State of Illinois are subject to the requirements of federal law designed to protect the Plaintiffs' rights of conscience including, 42 U.S.C. 238n, 42 U.S.C. 700a-7,  and 114 P.L. 113, Title V, Section 507(d), as incorporated into 114 P.L. 223, Title III, Division C, Section 101(a)(8).  The Plaintiffs and healthcare professionals who work with them as staff members or volunteers are entitled to the protections of these laws because Plaintiffs provide healthcare in the plain meaning of the term.

52.     P.A. 99-690 violates these federal laws for two reasons.  First, it requires Plaintiffs to provide information about the risks and benefits of abortion or sterilization: an essential and integral part of providing these treatment options.  Second, it requires Plaintiffs to refer to, or provide information contact information for, individuals or entities that provide abortion, contraception or sterilization, all of which amounts to providing a referral within the meaning of these federal laws.

53.     Plaintiffs allege that the State Defendants, by their enactment, defense, and enforcement of P.A. 99-690, are in violation of 42 U.S.C. 238n, 42 U.S.C. 700a-7,  and 114 P.L. 113, Title V, Section 507(d), as incorporated into 114 P.L. 223, Title III, Division C, Section 101(a)(8), and request as relief either a judicial order requiring the State of Illinois to comply with these laws, or in the alternative, an order prohibiting the State of Illinois from accepting or being transferred these federal funds.  Because the relief requested directly affects the federal interest to be

furthered by the contractual agreement between the state and federal defendants, the federal defendants are indispensable parties.

54.     The Plaintiffs will suffer irreparable harm for which there is no adequate remedy at law as a result of P.A. 99-690 because they will be deprived of the constitutional and statutory rights referenced herein.

## CLAIMS FOR RELIEF

### Count 1
### FIRST AMENDMENT: SPEECH

55.     Plaintiffs incorporate by reference the paragraphs above.

56.     P.A. 99-690 violates the First Amendment to the U.S. Constitution by compelling the Plaintiffs to speak about the supposed benefits of abortion, contraception, and sterilization, and to make referrals to persons who will provide these drugs, devices, and procedures, or a list of entities and individuals who provide these procedures, although Plaintiffs do not want to speak in this way and cannot do so, consistent with their sincerely held religious convictions.

57.     By exposing individuals and entities who do not comply with P.A. 99-690 to discrimination, sanctions and liability, P.A. 99-690 discriminates against them based on the content of their speech about, and viewpoint on, the supposed benefits of abortion procedures, contraception drugs, devices, and procedures, and sterilization, and their opposition to giving individuals information to procure such procedures, drugs, and devices.  In doing so, P.A. 99-690 violates the First Amendment to the U.S. Constitution.

58.     Enforcement of the provisions of P.A. 99-690 by the State Defendants will violate the Plaintiffs' First Amendment right to free speech as well as other rights referenced herein.

## COUNT 2
## FIRST AMENDMENT - OVERBREADTH

59.     Plaintiffs incorporate by reference the paragraphs above.

60.     P.A. 99-690 is overbroad because it compels Plaintiffs and others to discuss legal treatment options when the Plaintiffs have specifically indicated they do not offer such treatment options and their clients have agreed to care subject to the disclosed limitations of services.

61.     P.A. 99-690 is overbroad because it compels Plaintiffs and others to discuss certain legal treatment options despite their knowing or having reason to believe that their clients have no interest in those treatment options.

62.     P.A. 99-690 is overbroad because it compels Plaintiffs and others to discuss certain legal treatment options with patients although they know or have good reason to believe that their clients will be offended or distressed by the discussion of the treatment options, or simply do not want to discuss the treatment options, and have said so.

63.     P.A. 99-690 is overbroad because it regulates and compels speech by private citizens who serve as staff or volunteer counselors at the Plaintiffs, individuals who are not licensed healthcare professionals, who do not hold themselves out as such to the public as licensed healthcare providers, and who do not provide medical advice.  These lay counselors discuss abortion, a matter of public concern, and its implications for the women who come to Plaintiffs for help, matters of private concern.  In addition, lay counselors discuss forms of assistance that may be available to women both as a result of public social welfare programs and private charitable assistance that is available. The discussions are between private citizens concerning matters of public concern as well as deeply private matters that the government may not regulate.

64.     By its terms PA 99-690 seeks to regulate and dictate the content of these discussions, and as a result, the law violates the First Amendment.

## COUNT 3
## DUE PROCESS

65.     Plaintiffs incorporate by reference the paragraphs above.

66.     P.A. 99-690 is vague and violates due process in that it appears to regulate and compel speech regardless of the limited nature of medical services provided; regardless of the scope and nature of the work performed by individuals working for, or volunteering with, Plaintiffs; regardless of whether the individuals working for or with Plaintiffs are licensed healthcare professionals or working under the direct supervision of licensed healthcare providers for the purpose of rendering medical care; and regardless of whether the entity or individual possesses the competence to provide the information required by state law governing the practice of medicine.

67.     PA 99-690 is vague and violates due process because the nature and scope of the statutory duty is unclear.  The statutory requirements are not clearly tied to, and limited by, the precise health care service being provided.  In addition, the law purports to require conduct based upon current standards of professional care although there are no clearly defined standards in the areas covered by the statute, e.g. the risks and benefits of abortion, contraception, and sterilization, which are subjects upon which reasonable professionals can differ in the exercise of their reasonable and professional medical judgment consistent with the standard of care, at least as it existed prior to the operation of P.A. 99-690.

68.     As a result, the law is open to arbitrary interpretation and enforcement and, consequently, it exposes Plaintiffs and individuals working with them to liability to public and private parties based on how the law is interpreted and applied by the State Defendants.

69.     Because PA 99-690 fails to provide reasonable notice of the conduct required by the law and the conduct that subjects Plaintiffs to legal sanction and liability, and because it is open to arbitrary interpretation and enforcement, it violates Due Process.

**COUNT 4**
**FIRST AMENDMENT - EXPRESSIVE ASSOCIATION**

70.     Plaintiffs incorporate by reference the paragraphs above.

71.     When they associate to carry out their charitable work the Plaintiffs and those associated with them are engaged in expressive association designed to advance their religious beliefs and speech on matters of public and private concern.  Their goal in associating is to give charitable assistance, to share their pro-life message, and to help influence their clients and society.

72.     1st Way and PASS seek to associate with, and do associate with, healthcare professionals as well as non-professionals to achieve its mission.

73.     1st Way and PASS seek to secure charitable donations so they can provide assistance to clients free of charge.

74.     Some individuals have discontinued their association with 1st Way because they fear discrimination, sanctions, or liability under P.A. 99-690.  In addition, 1st Way has been forced to cease providing medical services, a cessation which undermines its ability to generate donations to support its effort to help women in a way consistent with its pro-life convictions.

75.     PASS is also at risk of disassociation by employees and donors because it is complying with the law albeit under duress.

76.     P.A. 99-960 violates the Plaintiffs' right to expressive association because it chills and destroys their ability to associate and attract support for the purpose of exercising its speech and free exercise rights.

## COUNT 5
## FIRST AMENDMENT - FREE EXERCISE

77.     Plaintiffs incorporate by reference the paragraphs above.

78.     The stated purpose of the IHRCA is to protect the ability of healthcare providers to provide healthcare in a manner consistent with their conscientious convictions.

79.     P.A. 99-690 amends the IHRCA to impose statutory duties on physicians and healthcare providers who have a conscientious objection to certain legal treatment options in order to force the Plaintiffs and others to engage in speech and conduct that violates their religious convictions.

80.     On its face as well as in its purpose and effects P.A. 99-690 targets individuals who have conscience-based objections to taking the actions compelled by P.A. 99-690 and subjects them to a range of sanctions and liability solely because they render healthcare and counseling in a manner consistent with their sincerely held religious convictions.

81.     On its face as well as in its purpose and effects P.A. 99-690 is not religion-neutral or generally applicable because it does not impose duties or expose to sanctions or liability persons who refuse to comply with its requirements for reasons unrelated to conscientious objection to the treatment option, for example, because the healthcare provider knows that someone desiring an abortion, sterilization, or contraception can easily find such products and services.

82.     On its face as well as in its purpose and effects P.A. 99-690 discriminates against persons with conscience-based objections to certain treatment options.  It prevents them, and them alone, from limiting the scope of services they provide to the patient with the patient's consent.  It requires them, and them alone, to discuss options they know or have reason to know that their patient does not wish to hear about those treatment options, or would find such discussion offensive or distressing.

83.     P.A. 99-690 forces the Plaintiffs to violate their sincerely-held religious convictions or face discrimination, sanctions, and liability under state law.

84.     Actions taken by the State Defendants to enforce P.A. 99-690 will violate Plaintiffs' right to free exercise of religion guaranteed by the First Amendment of the United State Constitution.

## COUNT 6
## EQUAL PROTECTION

85.     Plaintiffs incorporate by reference the paragraphs above.

86.     On its face and in its purpose and effects, P.A. 99-690 creates a class of health care providers, including Plaintiffs, who have conscience-based objections to abortion, contraception and sterilization, and treats the class unfavorably and discriminatorily compared to all others who have no conscience-based objections.  It mandates that Plaintiffs discuss so-called benefits of abortion, contraception and sterilization, even if they have, with their patients' agreement, expressly restricted the services they offer, or if they know or have reason to know that their patients do not wish to hear about such treatment options, and may have even indicated as much.  But it imposes no similar requirement on providers who have no conscience-based opposition to the treatment options mentioned and decline to discuss them for different reasons, such as that they would lose business if a patient selected a mentioned treatment option, or they believed that information about the option was unnecessary to talk about because it was already available to the patient, or because they simply couldn't be bothered talking about it.

87.     Any action taken by Defendants to enforce P.A. 99-690 will violate the Plaintiffs' right to equal protection of the law.

## COUNT 7
## VIOLATION OF 114 P.L. 223

88.     Plaintiffs incorporate by reference the paragraphs above.

89.     114 P.L. 113, Title V, §507(d), provides that no federal funds may be made available to any state or local government if the state or local government subjects an institution or individual healthcare entity to discrimination because it does not provide or refer for abortions.  Those restrictions are legally binding by virtue of 114 P.L. 223, Title III, Division C, Section 101(a)(8).

90.     The State of Illinois receives millions of dollars of federal financial assistance each year and therefore is subject to the restrictions of 114 P.L. 113, Title V, §507(d).

91.     The Plaintiffs are healthcare entities entitled to the protection under 114 P.L. 113, Title V, §507(d) because at least some of the assistance rendered by them constitutes healthcare in the ordinary sense of that term and within the meaning of the IHRCA.

92.     P.A. 99-690 discriminates against the Plaintiffs and healthcare professionals who work with it as staff members or volunteers for two reasons.  First, it requires Plaintiffs to provide information about the risks and benefits of abortion or sterilization: an essential and integral part of providing these treatment options.  Second, it requires Plaintiffs to provide information about individuals or entities that provide abortion or sterilization amounting to a "referral" within the meaning of the statute.  In both of these ways P.A. 99-690 forces physicians and healthcare personnel to assist in the performance of abortions or sterilizations against their conscience.

93.     Any action taken by the State Defendants or others to enforce P.A. 99-690 against the Plaintiffs will violate 114 P.L. 116, Title V, §507(d).

## COUNT 8
## VIOLATION OF 42 U.S.C. Sec. 300a-7.

94.     Plaintiffs incorporate by reference the paragraphs above.

95.     42 U.S.C., §300a-7 provides that no federal funds may be made available to a state or local government if the state or local government subjects a physician or healthcare personnel to discrimination because such person declines or refuses to assist in abortion or sterilization procedures on the basis of their religious or moral convictions.

96.     The State of Illinois receives millions of dollars of federal financial assistance each year and therefore is subject to the restrictions of  42 U.S.C., §300a-7.

97.     The Plaintiffs and healthcare professionals who work with it as staff members or volunteers are healthcare entities entitled to the protection provided by 42 U.S.C., §300a-7, because at least some of the assistance rendered by them is healthcare in the ordinary sense of that term, and within the meaning of the IHRCA.

98.     P.A. 99-690 discriminates against the Plaintiffs and healthcare professionals who work with it as staff members or volunteers for two reasons.  First, it requires Plaintiffs to provide information about the risks and benefits of abortion or sterilization: an essential and integral part of providing these treatment options.  Second, it requires Plaintiffs to provide information about individuals or entities that provide abortion or sterilization amounting to a "referral" within the meaning of the statute.  In both these ways P.A. 99-690 forces physicians and healthcare personnel to assist in the performance of abortions or sterilizations against their conscience.

99.     Any action taken by the State Defendants or others to enforce P.A. 99-690 against the Plaintiffs will violate 42 U.S.C. Sec. 300a-7.

**COUNT 9**
**VIOLATION OF 42 U.S.C. §238N**

100.     Plaintiffs incorporate by reference the paragraphs above.

101.     42 U.S.C. §238n *inter alia* prohibits the federal government, as well as any state or local government receiving federal financial assistance pursuant to the statute, from discriminating against a health care entity because that entity refuses to perform induced abortions, provides referrals for abortions, or makes arrangements for abortions.

102.     The State of Illinois receives millions of dollars of federal financial assistance each year and therefore is subject to the restrictions and prohibitions of 42 U.S.C. §238n.

103.     The Plaintiffs are protected by 42 U.S.C. §238n because at least some of the assistance rendered by them constitutes healthcare in the ordinary sense of that term, and within the meaning of the IHRCA.

104.     P.A. 99-690 violates 42 U.S.C. §238n.  First, it requires Plaintiffs to provide information about the risks and benefits of abortion or sterilization: an essential and integral part of providing these treatment options.  Second, it requires Plaintiffs to provide information about individuals or entities that provide abortion or sterilization, amounting to a "referral" within the meaning of the statute.

105.     Any action taken by Defendants to enforce P.A. 99-690 against the Plaintiffs will violate 42 U.S.C. Sec. 238n.

**RELIEF REQUESTED**

The Plaintiff respectfully request that this honorable Court provide the following relief:

1.     A declaratory judgment that any action taken by the Defendants against the Plaintiffs and those who work with them for noncompliance with P.A. 99-690 arising from their sincerely-

held religious beliefs and conscientious objections would violate their rights under the U.S. Constitution and federal statutes cited;

2.       An injunction prohibiting the Defendants and others acting in concert with them from violating the Plaintiffs' rights as claimed herein including, but not limited to the following:

(A) an injunction prohibiting the State Defendants from taking any adverse action against the Plaintiffs, and those who associate with them, for noncompliance with the provisions of P.A. 99-690, when the noncompliance has arisen from their conscience-based objections and sincerely-held religious convictions;

(B) an injunction prohibiting the State Defendants from accepting federal funds from HHS or its agencies, including CMMS, unless the State Defendants stipulate by means of a sworn statement placed in the record that they will not take any action based on the provisions of P.A. 99-690 against the Plaintiffs, and those who associate with them, for noncompliance with the provisions of P.A. 99-690, when the noncompliance has arisen from their conscience-based objections and sincerely-held religious convictions; and

(C) an injunction preventing the State Defendants and others acting in concert with them from taking any adverse action towards the Plaintiffs because the Plaintiffs did not comply with the provisions of P.A. 99-690 because of their sincerely-held religious convictions for the period during which this litigation was pending.

3.       Attorneys' fees and costs as authorized by law;

4.       Actual and nominal damages; and

5.       Such other relief as this Court shall deem lawful and just.

Plaintiffs demand a jury trial on all issues so triable.

Respectfully submitted this 16th day of March, 2017.

/s/Thomas Olp
Thomas Brejcha
Thomas Olp ARDC#3122703
Thomas More Society
19 South LaSalle St. Suite 603
Chicago, IL 60603
(312) 782-1680
tolp@thomasmoresociety.org

Attorneys for Plaintiffs

**VERIFICATION**

I am an adult of sound mind and body who is competent to testify based upon personal knowledge about the factual allegations in the Complaint pertaining to me. I declare, under penalty of perjury, that these factual allegations are true and correct to the best of my personal knowledge, information, and belief.

This 21 day of February, 2017.

_____
Ronald L. Schroeder, MD

**VERIFICATION**

I am an adult of sound mind and body who is competent to testify based upon personal knowledge about the factual allegations pertaining to 1stWay Life Center. I declare, under penalty of perjury, that the factual allegations concerning 1stWay Life Center are true and correct to the best of my personal knowledge, information, and belief.

This _22_ day of February, 2017.

Judy K. Cocks
Director, 1st Way Life Center

**VERIFICATION**

I am an adult of sound mind and body who is competent to testify based upon personal knowledge about the factual allegations pertaining to PASS.  I declare, under penalty of perjury, that the factual allegations concerning PASS are true and correct to the best of my personal knowledge, information, and belief.


This 21 day of February, 2017.

_____

Tim Dilbeck
Executive Director, PASS

# EXHIBIT ONE



Previous General
Assemblies

## Public Act 099-0690

Bill Status    Printer-Friendly Version    PDF

**Public Act 099-0690**

SB1564 Enrolled                                    LRB099 05684 HEP 25727 b

AN ACT concerning civil law.

**Be it enacted by the People of the State of Illinois,
represented in the General Assembly:**

Section 5. The Health Care Right of Conscience Act is
amended by changing Sections 2, 3, 6, and 9 and by adding
Sections 6.1 and 6.2 as follows:

(745 ILCS 70/2)  (from Ch. 111 1/2, par. 5302)
Sec. 2. Findings and policy. The General Assembly finds and
declares that people and organizations hold different beliefs
about whether certain health care services are morally
acceptable. It is the public policy of the State of Illinois to
respect and protect the right of conscience of all persons who
refuse to obtain, receive or accept, or who are engaged in, the
delivery of, arrangement for, or payment of health care
services and medical care whether acting individually,
corporately, or in association with other persons; and to
prohibit all forms of discrimination, disqualification,
coercion, disability or imposition of liability upon such
persons or entities by reason of their refusing to act contrary
to their conscience or conscientious convictions in <u>providing,
paying for, or</u> refusing to obtain, receive, accept, deliver,
pay for, or arrange for the payment of health care services and
medical care. <u>It is also the public policy of the State of
Illinois to ensure that patients receive timely access to
information and medically appropriate care.</u>
(Source: P.A. 90-246, eff. 1-1-98.)

(745 ILCS 70/3)  (from Ch. 111 1/2, par. 5303)
Sec. 3. Definitions. As used in this Act, unless the
context clearly otherwise requires:
(a) "Health care" means any phase of patient care,
including but not limited to, testing; diagnosis; prognosis;
ancillary research; instructions; family planning,
counselling, referrals, or any other advice in connection with
the use or procurement of contraceptives and sterilization or
abortion procedures; medication; or surgery or other care or
treatment rendered by a physician or physicians, nurses,
paraprofessionals or health care facility, intended for the
physical, emotional, and mental well-being of persons;
(b) "Physician" means any person who is licensed by the
State of Illinois under the Medical Practice Act of 1987;

(c) "Health care personnel" means any nurse, nurses' aide, medical school student, professional, paraprofessional or any other person who furnishes, or assists in the furnishing of, health care services;

(d) "Health care facility" means any public or private hospital, clinic, center, medical school, medical training institution, laboratory or diagnostic facility, physician's office, infirmary, dispensary, ambulatory surgical treatment center or other institution or location wherein health care services are provided to any person, including physician organizations and associations, networks, joint ventures, and all other combinations of those organizations;

(e) "Conscience" means a sincerely held set of moral convictions arising from belief in and relation to God, or which, though not so derived, arises from a place in the life of its possessor parallel to that filled by God among adherents to religious faiths; and

(f) "Health care payer" means a health maintenance organization, insurance company, management services organization, or any other entity that pays for or arranges for the payment of any health care or medical care service, procedure, or product; and .

(g) "Undue delay" means unreasonable delay that causes impairment of the patient's health.

The above definitions include not only the traditional combinations and forms of these persons and organizations but also all new and emerging forms and combinations of these persons and organizations.
(Source: P.A. 90-246, eff. 1-1-98.)

(745 ILCS 70/6) (from Ch. 111 1/2, par. 5306)
Sec. 6. Duty of physicians and other health care personnel. Nothing in this Act shall relieve a physician from any duty, which may exist under any laws concerning current standards, of normal medical practice or care practices and procedures, to inform his or her patient of the patient's condition, prognosis, legal treatment options, and risks and benefits of treatment options, provided, however, that such physician shall be under no duty to perform, assist, counsel, suggest, recommend, refer or participate in any way in any form of medical practice or health care service that is contrary to his or her conscience.

Nothing in this Act shall be construed so as to relieve a physician or other health care personnel from obligations under the law of providing emergency medical care.
(Source: P.A. 90-246, eff. 1-1-98.)

(745 ILCS 70/6.1 new)
Sec. 6.1. Access to care and information protocols. All health care facilities shall adopt written access to care and information protocols that are designed to ensure that conscience-based objections do not cause impairment of patients' health and that explain how conscience-based objections will be addressed in a timely manner to facilitate patient health care services. The protections of Sections 4, 5, 7, 8, 9, 10, and 11 of this Act only apply if conscience-based refusals occur in accordance with these protocols. These protocols must, at a minimum, address the following:

(1) The health care facility, physician, or health care personnel shall inform a patient of the patient's condition, prognosis, legal treatment options, and risks and benefits of the treatment options in a timely manner, consistent with current standards of medical practice or care.

        (2) When a health care facility, physician, or health
    care personnel is unable to permit, perform, or participate
    in a health care service that is a diagnostic or treatment
    option requested by a patient because the health care
    service is contrary to the conscience of the health care
    facility, physician, or health care personnel, then the
    patient shall either be provided the requested health care
    service by others in the facility or be notified that the
    health care will not be provided and be referred,
    transferred, or given information in accordance with
    paragraph (3).
        (3) If requested by the patient or the legal
    representative of the patient, the health care facility,
    physician, or health care personnel shall: (i) refer the
    patient to, or (ii) transfer the patient to, or (iii)
    provide in writing information to the patient about other
    health care providers who they reasonably believe may offer
    the health care service the health care facility,
    physician, or health personnel refuses to permit, perform,
    or participate in because of a conscience-based objection.
        (4) If requested by the patient or the legal
    representative of the patient, the health care facility,
    physician, or health care personnel shall provide copies of
    medical records to the patient or to another health care
    professional or health care facility designated by the
    patient in accordance with Illinois law, without undue
    delay.

    (745 ILCS 70/6.2 new)
        Sec. 6.2. Permissible acts related to access to care and
    information protocols. Nothing in this Act shall be construed
    to prevent a health care facility from requiring that
    physicians or health care personnel working in the facility
    comply with access to care and information protocols that
    comply with the provisions of this Act.

    (745 ILCS 70/9)  (from Ch. 111 1/2, par. 5309)
        Sec. 9. Liability. No person, association, or corporation,
    which owns, operates, supervises, or manages a health care
    facility shall be civilly or criminally liable to any person,
    estate, or public or private entity by reason of refusal of the
    health care facility to permit or provide any particular form
    of health care service which violates the facility's conscience
    as documented in its ethical guidelines, mission statement,
    constitution, bylaws, articles of incorporation, regulations,
    or other governing documents.
        Nothing in this Act act shall be construed so as to relieve
    a physician, or other health care personnel, or a health care
    facility from obligations under the law of providing emergency
    medical care.
    (Source: P.A. 90-246, eff. 1-1-98.)


    **Effective Date:** 1/1/2017

---



This site is maintained for the Illinois General Assembly by the
Legislative Information System, 705 Stratton Building, Springfield, Illinois 62706
217-782-3944   217-782-2050 (TTY)

http://www.ilga.gov/legislation/publicacts/fulltext.asp?Name=099-0690                3/3



Home   Legislation & Laws   Senate   House   My Legislation   Site Map

Bills & Resolutions

**Compiled Statutes**

Public Acts

Legislative Reports

IL Constitution

Legislative Guide

Legislative Glossary

**Search By Number
(example: HB0001)**



Go   Search Tips

**Search By Keyword**

Go
Search Tips

**Advanced Search**





## Illinois Compiled Statutes

Back to Act Listing   Public Acts   Search   Guide   Disclaimer   Printer-Friendly Version

**Information maintained by the Legislative Reference Bureau**
Updating the database of the Illinois Compiled Statutes (ILCS) is an ongoing process. Recent laws may not yet be included in the ILCS database, but they are found on this site as Public Acts soon after they become law. For information concerning the relationship between statutes and Public Acts, refer to the Guide.

Because the statute database is maintained primarily for legislative drafting purposes, statutory changes are sometimes included in the statute database before they take effect. If the source note at the end of a Section of the statutes includes a Public Act that has not yet taken effect, the version of the law that is currently in effect may have already been removed from the database and you should refer to that Public Act to see the changes made to the current law.

## CIVIL IMMUNITIES
## (745 ILCS 70/) Health Care Right of Conscience Act.

     (745 ILCS 70/1) (from Ch. 111 1/2, par. 5301)
     Sec. 1. Short title. This Act may be cited as the Health Care Right of Conscience Act.
(Source: P.A. 90-246, eff. 1-1-98.)

     (745 ILCS 70/2) (from Ch. 111 1/2, par. 5302)
     Sec. 2. Findings and policy. The General Assembly finds and declares that people and organizations hold different beliefs about whether certain health care services are morally acceptable. It is the public policy of the State of Illinois to respect and protect the right of conscience of all persons who refuse to obtain, receive or accept, or who are engaged in, the delivery of, arrangement for, or payment of health care services and medical care whether acting individually, corporately, or in association with other persons; and to prohibit all forms of discrimination, disqualification, coercion, disability or imposition of liability upon such persons or entities by reason of their refusing to act contrary to their conscience or conscientious convictions in providing, paying for, or refusing to obtain, receive, accept, deliver, pay for, or arrange for the payment of health care services and medical care. It is also the public policy of the State of Illinois to ensure that patients receive timely access to information and medically appropriate care.
(Source: P.A. 99-690, eff. 1-1-17.)

     (745 ILCS 70/3) (from Ch. 111 1/2, par. 5303)
     Sec. 3. Definitions. As used in this Act, unless the context clearly otherwise requires:
     (a) "Health care" means any phase of patient care, including but not limited to, testing; diagnosis; prognosis; ancillary research; instructions; family planning, counselling, referrals, or any other advice in connection with the use or procurement of contraceptives and sterilization or abortion procedures; medication; or surgery or other care or treatment rendered by a physician

or physicians, nurses, paraprofessionals or health care facility, intended for the physical, emotional, and mental well-being of persons;

(b) "Physician" means any person who is licensed by the State of Illinois under the Medical Practice Act of 1987;

(c) "Health care personnel" means any nurse, nurses' aide, medical school student, professional, paraprofessional or any other person who furnishes, or assists in the furnishing of, health care services;

(d) "Health care facility" means any public or private hospital, clinic, center, medical school, medical training institution, laboratory or diagnostic facility, physician's office, infirmary, dispensary, ambulatory surgical treatment center or other institution or location wherein health care services are provided to any person, including physician organizations and associations, networks, joint ventures, and all other combinations of those organizations;

(e) "Conscience" means a sincerely held set of moral convictions arising from belief in and relation to God, or which, though not so derived, arises from a place in the life of its possessor parallel to that filled by God among adherents to religious faiths;

(f) "Health care payer" means a health maintenance organization, insurance company, management services organization, or any other entity that pays for or arranges for the payment of any health care or medical care service, procedure, or product; and

(g) "Undue delay" means unreasonable delay that causes impairment of the patient's health.

The above definitions include not only the traditional combinations and forms of these persons and organizations but also all new and emerging forms and combinations of these persons and organizations.
(Source: P.A. 99-690, eff. 1-1-17.)

(745 ILCS 70/4) (from Ch. 111 1/2, par. 5304)
Sec. 4. Liability. No physician or health care personnel shall be civilly or criminally liable to any person, estate, public or private entity or public official by reason of his or her refusal to perform, assist, counsel, suggest, recommend, refer or participate in any way in any particular form of health care service which is contrary to the conscience of such physician or health care personnel.
(Source: P.A. 90-246, eff. 1-1-98.)

(745 ILCS 70/5) (from Ch. 111 1/2, par. 5305)
Sec. 5. Discrimination. It shall be unlawful for any person, public or private institution, or public official to discriminate against any person in any manner, including but not limited to, licensing, hiring, promotion, transfer, staff appointment, hospital, managed care entity, or any other privileges, because of such person's conscientious refusal to receive, obtain, accept, perform, assist, counsel, suggest, recommend, refer or participate in any way in any particular form of health care services contrary to his or her conscience.
(Source: P.A. 90-246, eff. 1-1-98.)

(745 ILCS 70/6) (from Ch. 111 1/2, par. 5306)
    Sec. 6. Duty of physicians and other health care
personnel. Nothing in this Act shall relieve a physician from
any duty, which may exist under any laws concerning current
standards of medical practice or care, to inform his or her
patient of the patient's condition, prognosis, legal treatment
options, and risks and benefits of treatment options,
provided, however, that such physician shall be under no duty
to perform, assist, counsel, suggest, recommend, refer or
participate in any way in any form of medical practice or
health care service that is contrary to his or her conscience.
    Nothing in this Act shall be construed so as to relieve a
physician or other health care personnel from obligations
under the law of providing emergency medical care.
(Source: P.A. 99-690, eff. 1-1-17.)

    (745 ILCS 70/6.1)
    Sec. 6.1. Access to care and information protocols. All
health care facilities shall adopt written access to care and
information protocols that are designed to ensure that
conscience-based objections do not cause impairment of
patients' health and that explain how conscience-based
objections will be addressed in a timely manner to facilitate
patient health care services. The protections of Sections 4,
5, 7, 8, 9, 10, and 11 of this Act only apply if conscience-
based refusals occur in accordance with these protocols. These
protocols must, at a minimum, address the following:
    (1) The health care facility, physician, or health
care personnel shall inform a patient of the patient's
condition, prognosis, legal treatment options, and risks
and benefits of the treatment options in a timely manner,
consistent with current standards of medical practice or
care.
    (2) When a health care facility, physician, or
health care personnel is unable to permit, perform, or
participate in a health care service that is a diagnostic
or treatment option requested by a patient because the
health care service is contrary to the conscience of the
health care facility, physician, or health care personnel,
then the patient shall either be provided the requested
health care service by others in the facility or be
notified that the health care will not be provided and be
referred, transferred, or given information in accordance
with paragraph (3).
    (3) If requested by the patient or the legal
representative of the patient, the health care facility,
physician, or health care personnel shall: (i) refer the
patient to, or (ii) transfer the patient to, or (iii)
provide in writing information to the patient about other
health care providers who they reasonably believe may
offer the health care service the health care facility,
physician, or health care personnel refuses to permit, perform,
or participate in because of a conscience-based objection.
    (4) If requested by the patient or the legal
representative of the patient, the health care facility,
physician, or health care personnel shall provide copies
of medical records to the patient or to another health
care professional or health care facility designated by
the patient in accordance with Illinois law, without undue
delay.
(Source: P.A. 99-690, eff. 1-1-17.)

(745 ILCS 70/6.2)
    Sec. 6.2. Permissible acts related to access to care and
information protocols. Nothing in this Act shall be construed
to prevent a health care facility from requiring that
physicians or health care personnel working in the facility
comply with access to care and information protocols that
comply with the provisions of this Act.
(Source: P.A. 99-690, eff. 1-1-17.)

    (745 ILCS 70/7) (from Ch. 111 1/2, par. 5307)
    Sec. 7. Discrimination by employers or institutions. It
shall be unlawful for any public or private employer, entity,
agency, institution, official or person, including but not
limited to, a medical, nursing or other medical training
institution, to deny admission because of, to place any
reference in its application form concerning, to orally
question about, to impose any burdens in terms or conditions
of employment on, or to otherwise discriminate against, any
applicant, in terms of employment, admission to or
participation in any programs for which the applicant is
eligible, or to discriminate in relation thereto, in any other
manner, on account of the applicant's refusal to receive,
obtain, accept, perform, counsel, suggest, recommend, refer,
assist or participate in any way in any forms of health care
services contrary to his or her conscience.
(Source: P.A. 90-246, eff. 1-1-98.)

    (745 ILCS 70/8) (from Ch. 111 1/2, par. 5308)
    Sec. 8. Denial of aid or benefits. It shall be unlawful
for any public official, guardian, agency, institution or
entity to deny any form of aid, assistance or benefits, or to
condition the reception in any way of any form of aid,
assistance or benefits, or in any other manner to coerce,
disqualify or discriminate against any person, otherwise
entitled to such aid, assistance or benefits, because that
person refuses to obtain, receive, accept, perform, assist,
counsel, suggest, recommend, refer or participate in any way
in any form of health care services contrary to his or her
conscience.
(Source: P.A. 90-246, eff. 1-1-98.)

    (745 ILCS 70/9) (from Ch. 111 1/2, par. 5309)
    Sec. 9. Liability. No person, association, or corporation,
which owns, operates, supervises, or manages a health care
facility shall be civilly or criminally liable to any person,
estate, or public or private entity by reason of refusal of
the health care facility to permit or provide any particular
form of health care service which violates the facility's
conscience as documented in its ethical guidelines, mission
statement, constitution, bylaws, articles of incorporation,
regulations, or other governing documents.
    Nothing in this Act shall be construed so as to relieve a
physician, health care personnel, or a health care facility
from obligations under the law of providing emergency medical
care.
(Source: P.A. 99-690, eff. 1-1-17.)

    (745 ILCS 70/10) (from Ch. 111 1/2, par. 5310)
    Sec. 10. Discrimination against facility. It shall be
unlawful for any person, public or private institution or

public official to discriminate against any person, association or corporation attempting to establish a new health care facility or operating an existing health care facility, in any manner, including but not limited to, denial, deprivation or disqualification in licensing, granting of authorizations, aids, assistance, benefits, medical staff or any other privileges, and granting authorization to expand, improve, or create any health care facility, by reason of the refusal of such person, association or corporation planning, proposing or operating a health care facility, to permit or perform any particular form of health care service which violates the health care facility's conscience as documented in its existing or proposed ethical guidelines, mission statement, constitution, bylaws, articles of incorporation, regulations, or other governing documents.
(Source: P.A. 90-246, eff. 1-1-98.)

    (745 ILCS 70/11) (from Ch. 111 1/2, par. 5311)
    Sec. 11. Denial of aid or benefit to a facility. It shall be unlawful for any public official, agency, institution or entity to deny any form of aid, assistance, grants or benefits; or in any other manner to coerce, disqualify or discriminate against any person, association or corporation attempting to establish a new health care facility or operating an existing health care facility which otherwise would be entitled to the aid, assistance, grant or benefit because the existing or proposed health care facility refuses to perform, assist, counsel, suggest, recommend, refer or participate in any way in any form of health care services contrary to the health care facility's conscience as documented in its existing or proposed ethical guidelines, mission statement, constitution, bylaws, articles of incorporation, regulations, or other governing documents.
(Source: P.A. 90-246, eff. 1-1-98.)

    (745 ILCS 70/11.2)
    Sec. 11.2. Liability of health care payer. No health care payer and no person, association, or corporation that owns, operates, supervises, or manages a health care payer shall be civilly or criminally liable to any person, estate, or public or private entity by reason of refusal of the health care payer to pay for or arrange for the payment of any particular form of health care services that violate the health care payer's conscience as documented in its ethical guidelines, mission statement, constitution, bylaws, articles of incorporation, regulations, or other governing documents.
(Source: P.A. 90-246, eff. 1-1-98.)

    (745 ILCS 70/11.3)
    Sec. 11.3. Discrimination against health care payer in licensing. It shall be unlawful for any person, public or private institution, or public official to discriminate against any person, association, or corporation (i) attempting to establish a new health care payer or (ii) operating an existing health care payer, in any manner, including but not limited to, denial, deprivation, or disqualification in licensing; granting of authorizations, aids, assistance, benefits, or any other privileges; and granting authorization to expand, improve, or create any health care payer, because the person, association, or corporation planning, proposing, or operating a health care payer refuses to pay for or arrange

for the payment of any particular form of health care services
that violates the health care payer's conscience as documented
in the existing or proposed ethical guidelines, mission
statement, constitution, bylaws, articles of incorporation,
regulations or other governing documents.
(Source: P.A. 90-246, eff. 1-1-98.)

   (745 ILCS 70/11.4)
   Sec. 11.4. Denial of aid or benefits to health care payer
for refusal to participate in certain health care. It shall be
unlawful for any public official, agency, institution, or
entity to deny any form of aid, assistance, grants, or
benefits; or in any other manner to coerce, disqualify, or
discriminate against any person, association, or corporation
attempting to establish a new health care payer or operating
an existing health care payer that otherwise would be entitled
to the aid, assistance, grant, or benefit because the existing
or proposed health care payer refuses to pay for, arrange for
the payment of, or participate in any way in any form of
health care services contrary to the health care payer's
conscience as documented in its existing or proposed ethical
guidelines, mission statement, constitution, bylaws, articles
of incorporation, regulations, or other governing documents.
(Source: P.A. 90-246, eff. 1-1-98.)

   (745 ILCS 70/12) (from Ch. 111 1/2, par. 5312)
   Sec. 12. Actions; damages. Any person, association,
corporation, entity or health care facility injured by any
public or private person, association, agency, entity or
corporation by reason of any action prohibited by this Act may
commence a suit therefor, and shall recover threefold the
actual damages, including pain and suffering, sustained by
such person, association, corporation, entity or health care
facility, the costs of the suit and reasonable attorney's
fees; but in no case shall recovery be less than $2,500 for
each violation in addition to costs of the suit and reasonable
attorney's fees. These damage remedies shall be cumulative,
and not exclusive of other remedies afforded under any other
state or federal law.
(Source: P.A. 90-246, eff. 1-1-98.)

   (745 ILCS 70/13) (from Ch. 111 1/2, par. 5313)
   Sec. 13. Liability for refusal to provide certain health
care. Nothing in this Act shall be construed as excusing any
person, public or private institution, or public official from
liability for refusal to permit or provide a particular form
of health care service if:
   (a) the person, public or private institution or public
official has entered into a contract specifically to provide
that particular form of health care service; or
   (b) the person, public or private institution or public
official has accepted federal or state funds for the sole
purpose of, and specifically conditioned upon, permitting or
providing that particular form of health care service.
(Source: P.A. 90-246, eff. 1-1-98.)

   (745 ILCS 70/14) (from Ch. 111 1/2, par. 5314)
   Sec. 14. Supersedes other Acts. This Act shall supersede
all other Acts or parts of Acts to the extent that any Acts or
parts of Acts are inconsistent with the terms or operation of

```
this Act.
(Source: P.A. 90-246, eff. 1-1-98.)
```



This site is maintained for the Illinois General Assembly by the
Legislative Information System, 705 Stratton Building, Springfield, Illinois 62706
217-782-3944   217-782-2050 (TTY)