# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# WESTERN DIVISION

| | |
|---|---|
| DR. RONALD L. SCHROEDER, *et al.*, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) No. 17 CV 4663 |
| v. | ) |
| | ) Judge Frederick J. Kapala |
| BRUCE RAUNER, *et al.*, | ) |
| | ) Magistrate Judge Iain D. Johnston |
| Defendants. | ) |

**THE STATE DEFENDANTS' REPLY IN SUPPORT OF
THEIR MOTION TO DISMISS PLAINTIFFS' COMPLAINT**

**TABLE OF CONTENTS**

INTRODUCTION ..................................................................................................................1
ARGUMENT ........................................................................................................................2
    I.  Plaintiffs' Free Exercise claim should be dismissed. ........................................................2
        A.  Plaintiffs have not shown that the Amended Act imposes a substantial burden. ..........2
        B.  The Court should not apply strict scrutiny to the Amended Act. .................................4
        C.  Even if strict scrutiny applied, the Amended Act is the least restrictive means of fulfilling the State's compelling interests. ................................................................6
    II.  Plaintiffs' First Amendment claims should be dismissed. ................................................7
        A.  Intermediate scrutiny applies to Plaintiffs' free speech claim. .....................................7
        B.  The Amended Act survives intermediate or strict scrutiny. .........................................8
    III. Plaintiffs' Due Process Void-for-Vagueness claim should be dismissed. .........................11
    IV. Plaintiffs' Equal Protection claim should be dismissed. ....................................................12
    V.  Plaintiffs' Claims under the 2016 Appropriation Act (Hyde-Weldon Amendment), the Church Amendment, and the Coats-Snowe Amendment should be dismissed. ..........12
CONCLUSION ......................................................................................................................15

## INTRODUCTION

Plaintiffs' response reflects a fundamental misunderstanding of the purpose and operation of Senate Bill 1564. Contrary to Plaintiffs' claims, the Health Care Right of Conscience Act (the "Conscience Act"), as amended (the "Amended Act"), does *not* improperly "target" pro-life medical professionals while leaving health care providers without religious objections to procedures "unregulated." Dkt. 25 at 19, 31. Rather, the Conscience Act benefits religious objectors by protecting them from civil or criminal liability for refusing to provide certain services. The Amended Act clarifies that the Conscience Act's protections do not exempt religious objectors from the standards of care that apply to other health care providers in Illinois. Religious objectors must inform patients of their treatment options, including their risks and benefits, "*consistent with current standards of medical practice or care*." 745 ILCS 70/6.1(1) (emphasis added). In other words, Plaintiffs may exercise their right of conscience, but they are not exempt from complying with the ethical standards of informed consent that apply to other health care providers.

This Court should grant the State Defendants' motion to dismiss.[1] As discussed below, the Amended Act satisfies intermediate or strict scrutiny, requiring dismissal of Plaintiffs' freedom of religion, free speech, and equal protection claims. Plaintiffs' due process void-for-vagueness claim fails under on-point federal and Illinois Supreme Court precedent. Plaintiffs' claims under the 2016 Appropriation Act (or Hyde-Weldon Amendment), the Church Amendment, and the Coats-Snowe Amendment should be dismissed because there is no private right of action under these statutes and because the Amended Act does not discriminate against health care providers with conscience-based objections. And, finally, the Governor is not a proper defendant and the claims against him

---

[1] This case was originally filed in the Central District of Illinois, but was transferred to this district and division because a substantially similar case (*National Institute of Family and Life Advocates et al. v. Rauner et al.* ("*NIFLA*"), No. 16-cv-50310 (N.D. Ill.)) is pending before this Court. In the *NIFLA* case, the plaintiffs' motion for a preliminary injunction and the defendants' motion to dismiss are fully briefed.

1

should be dismissed.[2]

## ARGUMENT

**I.         Plaintiffs' Free Exercise claim should be dismissed.**

      **A.         Plaintiffs have not shown that the Amended Act imposes a substantial burden.**

In their opening brief, Defendants explained that the Amended Act does not violate the free exercise clause of the First Amendment because it places a reasonable limitation on a benefit rather than imposing a substantial burden. Dkt. 21 at 7-14, *citing Our Savior Evangelical Lutheran Church v. Saville*, 397 Ill.App.3d 1003, 1020 (2d Dist. 2009). In response, Plaintiffs argue that the Amended Act "impose[s] a *special* burden on religious objectors like Plaintiffs to provide information (as to legal treatment options and providers thereof) that other similarly situated persons do not have to provide under generally applicable medical standards of practice or care." Dkt. 25 at 12. But this argument misunderstands the Amended Act, which requires that health care providers discuss "legal treatment options, and risks and benefits of the treatment options . . . consistent with current standards of medical practice or care." 745 ILCS 70/6.1(1). Thus, the Amended Act does not impose any requirement on conscientious objectors that is not imposed on all medical providers by the "current standards of medical practice or care."[3]

---

[2] In their opening brief, the State Defendants demonstrated that Plaintiffs' claims against Governor Rauner should be dismissed. Dkt. 21 at 32-33. Plaintiffs offer no response to the State Defendants' arguments on these points (*see* Dkt. 25), effectively conceding that these arguments are correct. *See Goodpaster v. City of Indianapolis*, 736 F.3d 1060, 1075 (7th Cir. 2013) ("Because they did not provide the district court with any basis to decide their claims, and did not respond to the [defendant's] arguments, these claims are waived.").

[3] Plaintiffs argue that "current standards of medical practice or care" does not include professional ethics standards, but admit that these ethical standards "may inform" the standard of care. Dkt. 25 at 6-7. Moreover, Plaintiffs' expert's affidavit contradicts this argument, as it frequently references the American Medical Association's Principles of Medical Ethics to help define these standards. *See* Dkt. 25-2 at ¶¶ 3(b), 3(c), 3(d), 3(e), 5(b). These professional ethical standards are completely consistent with Illinois common law, which requires that the medical provider discuss "alternative medical treatment." *Crim ex rel. Crim v. Dietrich*, 2016 IL App (4th) 150843, ¶ 7; *see also id*. ¶ 48 (Court erred in directing verdict to defendant in informed consent action where plaintiff presented evidence that surgical alternative to natural birth procedure existed and could have mitigated injuries to the infant, and mother testified that she would have chosen C-section if adequately informed of the risks and options.). Moreover, the Administrative Code

This is an important point. While another court recently found a factual issue as to "whether the substantive requirements of SB 1564 imposed on conscientious objectors are the same or materially different from those imposed on non-objecting medical providers,"[4] this is incorrect. By its own terms, the Amended Act makes the conscientious objector's disclosure obligation commensurate with the disclosure obligation placed on any other medical provider. 745 ILCS 70/6.1. Moreover, Plaintiffs' expert's discussion about whether a particular medical treatment, such as emergency contraception or methotrexate for an ectopic pregnancy, is appropriate for particular patients (Dkt. 25-2 ¶¶ 9-10) misses the point. The Amended Act does not dictate specific treatment options that should be discussed with every patient. Rather, it provides that medical providers cannot withhold the existence of treatment options that are generally accepted by the medical profession and may be appropriate for the patient solely because the provider has a conscientious objection to providing that service.

It is unclear what burden the Plaintiffs believe that they face from the Amended Act. Plaintiffs claim that "any woman who has a condition for which abortion, sterilization, or contraception is an option . . . know[s] about these procedures or drugs as well as the whereabouts of persons who are willing, able, and indeed eager, to provide those things." Dkt. 25 at 16. They also claim that their "mission [is] to openly acknowledge a woman's legal right to choose abortion but to advocate for a life-giving alternative." *Id*. at 18. The Amended Act does not require providers to promote the "benefits" of abortion (*e.g.,* Dkt. 1 ¶¶1, 14-16, 24, 37), but rather to

---

implementing the Nurse Practice Act specifically incorporates the Code for Nurses with Interpretive Statements, July 2001, American Nurses Association. 68 Ill. Admin. Code 1300.90(c). This ethical code states that patients "have the moral and legal right . . . to be given accurate, complete, and understandable information in a manner that facilitates an informed decision, and to be assisted with weighing the benefits, burdens, and available options in their treatment." Dkt. 21 at 12, 61. So Plaintiffs' claim that they are not bound by the ethical standards of their professions is wrong both factually and legally.

[4] *See Pregnancy Care Center of Rockford v. Rauner* ("*Pregnancy Care Center*"), No. 2016-MR-741, Mem. Op. and Order re Motion to Dismiss at 9 (Ill. Cir. Ct. May 26, 2017), attached as Ex. I (Exhibits A-H were attached to the State Defendants opening brief (Dkt. 21).

provide truthful medical information regarding the "risks and benefits" of all relevant treatment options—a standard formulation of the informed consent requirement. *See*, *e.g*., Ex. A, AMA *Code of Ethics*, Section 1.1.3 (Dkt. 21 at 44) (patients have the right to "to discuss the benefits, risks, and costs of appropriate care, including the risks, benefits and costs of foregoing treatment"). If Plaintiffs already provide complete, truthful medical information about abortion, then the Amended Act's disclosure requirement places no burden on Plaintiffs, much less a substantial one.

As the Illinois courts have observed, a statute that is "'concerned with a legitimate governmental purpose' is not invalid 'merely because as an incidental effect it may place at some disadvantage persons of a particular religious faith.'" *Mefford v. White*, 331 Ill.App.3d 167, 180 (4th Dist. 2002), *quoting Dep't of Mental Health v. Warmbir*, 37 Ill.2d 267, 269-70 (1967) (statute requiring driver's license applicants to provide a Social Security number did not violate the free exercise rights). In that case, the "difficulty encountered, or the benefit which one must forego, is attributable not to the statute but to the religion or to the individual's own choice." *Id.*; *see also Warmbir*, 37 Ill. 2d at 269-70 (provision of the mental health code that made spouses liable for services rendered to patients did not violate the free exercise rights of woman whose religion prohibited her from obtaining a divorce). The Amended Act's purpose is to ensure that medical providers' exercise of "conscience-based objections do not cause impairment of patients' health." 745 ILCS 70/6.1. Thus, any burden on the Plaintiffs is caused by a conflict between the Plaintiffs' religious beliefs and the ethical standards of the medical profession—not by the Amended Act.

### B. The Court should not apply strict scrutiny to the Amended Act.

Plaintiffs argue that strict scrutiny should apply to the Amended Act because it is neither neutral nor generally applicable (Dkt. 25 at 11-13), but this argument misunderstands the test under *Church of the Lukumi Babalu Aye v. City of Hialeah*, 508 U.S. 520, 532 (1993). Under *Lukumi*, a "law is not neutral if it is intended 'to infringe upon or restrict practices because of their religious

motivation.'" *Our Savior Evangelical Lutheran Church*, 397 Ill.App.3d at 1018, *quoting Lukumi*, 508 U.S. at 533. But the purpose of the Amended Act is to protect patients, not to infringe on the Plaintiffs' religious practices. While the Amended Act only applies to medical providers with conscientious objections, this fact alone does not make the law hostile to religion.

Plaintiffs attempt to distinguish *Our Savior Evangelical Lutheran Church*, 397 Ill.App.3d, and *St. John's United Church of Christ v. City of Chicago*, 502 F.3d 616 (7th Cir. 2007), by stating that "in both of those cases, the laws in question did not strip the religious entity of the benefit of a generally applicable law." Dkt. 25 at 14. But this attempt fails for two reasons. First, in *St. John's United Church of Christ*, the Legislature amended the Illinois Religious Freedom Act to bar a *single* religious cemetery from challenging the taking of their land on religious grounds. The Seventh Circuit held that this statute was nevertheless neutral because "secular cemeteries presumably would have no extraordinary defense to the power of eminent domain to begin with." *St. John's*, 502 F.3d at 632-33. Second, the Amended Act does not "strip" Plaintiffs of the benefit of a generally applicable law. Rather, the Conscience Act provides Plaintiffs and other medical providers with conscientious objections with rights that other medical providers do not have. The Amended Act merely makes it clear that, like other providers, Plaintiffs are still subject to their ethical obligations to provide full information to their patients.

Finally, Plaintiffs argue that the Amended Act is not generally applicable because it is "underinclusive" – that is, that it "does not apply to similarly situated providers who do not have religious objections to legal treatment options." Dkt. 25 at 17. But as discussed above and in Defendants' opening brief, all medical providers are required to adhere to the same ethical standards. The Amended Act simply provides a means of ensuring that providers who exercise a conscientious objection to providing certain services nevertheless meet their patients' needs.

5

### C. Even if strict scrutiny applied, the Amended Act is the least restrictive means of fulfilling the State's compelling interests.

Even if strict scrutiny applied to Plaintiffs' free exercise claim, the Amended Act survives strict scrutiny. As discussed in the Defendants' opening brief, Illinois appellate courts have routinely found that the State has a compelling interest in protecting the health of its citizens and regulating the provision of health care. *See* Dkt. 25 at 14-17; *see also Pregnancy Care Center,* Mem. Op. and Order re Prelim. Inj. Mtn. at 12 (Ill. Cir. Ct. Dec. 20, 2016) (Ex. H at 12; Dkt. 21 at 126) ("[T]he "power of the legislature to license and regulate the provision of health care is long-standing and beyond doubt."). Plaintiffs fail to even acknowledge this substantial body of case law.

Plaintiffs also argue that the State's interest does not apply to pregnancy care centers that provide limited medical services. But a 2013 congressional report found that pregnancy resource centers "frequently fail to provide medically accurate information" and that "the vast majority of pregnancy centers" contacted during the investigation misrepresented the medical consequences of abortion. *First Resort, Inc. v. Herrera*, No. 15-15434, 2017 WL 2766094, at *2 (9th Cir. June 27, 2017), *quoting* Minority Staff of H. Comm. on Gov't Reform, Special Investigations Div., *False & Misleading Health Information Provided by Federally Funded Pregnancy Resource Centers* at 14 (July 2006) (the "*Waxman Report*"). The report further concluded that this tactic "denies [patients] vital health information, prevents them from making an informed decision, and is not an accepted public health practice." *Id.*, *quoting Waxman Report* at 14.

In their opening brief, Defendants explained why the State could not adequately address its compelling interest through the use of websites, flyers, *etc*. Dkt. 21 at 17-18. Plaintiffs fail to respond to this point, asserting once again that "[t]he least restrictive means would be for the State to fill the imagined information gap by public service announcements that advance its reproductive rights agenda." Dkt. 25 at 19. Plaintiffs also argue that the State could "ensure that persons

6

securing informed consent for a course of care disclose relevant treatment options that they cannot in good conscience provide" (*id*.), but this is precisely what the Amended Act does. The Plaintiffs' limitation on the medical services that they provide does not change this equation. Whether or not they limit their services, Plaintiffs provide "medical services" (Dkt. 25 at 5; *see also* Dkt. 1 ¶¶ 14, 19, 30). The Amended Act is well within the powers of the Legislature to regulate the health care professions. Plaintiffs' free exercise claim should be dismissed.

## II. Plaintiffs' First Amendment claims should be dismissed.

### A. Intermediate scrutiny applies to Plaintiffs' free speech claim.

In their opening brief, Defendants demonstrated that intermediate scrutiny applies to Plaintiffs' free speech claim because the Amended Act is a regulation of professional speech. Dkt. 21 at 19-21. In response, Plaintiffs argue that they are not engaged in professional speech when they discuss abortion with their clients because professional speech "arises out of 'personalized services to a client based on the professional's expert knowledge and judgment." Dkt. 25 at 20, *quoting King v. Gov. of New Jersey*, 767 F.3d 216 (3rd Cir. 2014). But personalized medical advice is precisely what Plaintiffs purport to provide to their clients. Dkt. 25. at 5-6; *see also* Dkt. 1 ¶¶ 14, 19, 30. Again, Plaintiffs' purported limitation on the medical services does not affect the State's ability to regulate medical providers. *See, e.g.*, *Nat'l Inst. of Family & Life Advocates v. Harris*, 839 F.3d 823, 839-840 (9th Cir. 2016) (pregnancy care centers that offered medical services such as ultrasounds "offer medical and clinical services in a professional context," triggering intermediate scrutiny of regulation). In contrast, in the only case cited by Plaintiffs involving a pregnancy center (Dkt. 25 at 23, 28), that center did *not* provide medical advice. *Greater Baltimore Center for Pregnancy Concerns, Inc. v. Mayor & City Council of Baltimore*, 2016 U.S. Dist.

7

LEXIS 184046 ("[T]he record does not reveal, nor does the City [argue] that the Center staff exercises medical or other judgment or makes decisions on behalf of its clients.").

Plaintiffs' argument that strict scrutiny should apply because their professional speech is intertwined with protected speech (Dkt. 25. at 21-22) likewise fails. As the Ninth Circuit recently observed, where professional or commercial speech "can be easily separated" from "otherwise fully protected speech," the two "are not inextricably intertwined." *First Resort, Inc*, 2017 WL 2766094, at *10 (internal quotations omitted). In *First Resort*, the court found that the pregnancy care center's "misleading commercial speech" about the services that it provided was "easily separated from other protected, non-misleading portions of First Resort's website, such as information regarding certain pregnancy-related issues." *Id*. Here, too, Plaintiffs' ethical obligation as medical providers[5] is easily separated from their "lay speech" (Dkt. 25 at 21) about abortion, contraception, and sterilization. And as long as they provide truthful, complete medical information, they are free to communicate their moral and religious beliefs as they see fit.

> B. **The Amended Act survives intermediate or strict scrutiny.**

Plaintiffs do not seem to argue that the State's interest in regulating the medical professions and protecting the health of the public is not a substantial government interest. *See, e.g*., Dkt. 25 at 23 (noting "the State's admitted authority to regulate the professions"). Nor could they, especially given the substantial Illinois appellate case law holding that this interest is compelling (*see* Dkt. 25 at 14-17) and the recent holdings by the *Pregnancy Care Center* court that the State has a "substantial government interest in advancing patient health." Ex. I at 4; *see also* Ex. H at 10-12 (Dkt. 21 at 124-25). Instead, Plaintiffs argue that "there is no 'professional speech' exception to the effectively *per se* bar on viewpoint discrimination imposed by free speech guarantees." Dkt. 25 at

---

[5] As discussed in Defendants' opening brief, the Amended Act does not apply to the speech of Plaintiffs' unlicensed volunteers or lay staff as long as they are not providing health care. Dkt. 21. at 23-24.

8

26. But as discussed in Defendants' opening brief, the Amended Act is not a viewpoint-based regulation. Dkt. 21 at 20. Moreover, courts have applied intermediate scrutiny (and upheld) statutes promoting a particular viewpoint on both sides of the abortion debate. Ex. H at 10 (Dkt. 21 at 124).

Plaintiffs primarily rely on general First Amendment cases and cases involving regulation of attorney speech (*see*, *e.g.,* Dkt. 25 at 24 n. 7), which involve different considerations than regulation of the medical profession. Plaintiffs' cases involving physician disclosure requirements are easily distinguished. First, *King*, 767 F.3d 216 (Dkt. 25 at 24-25), supports the Amended Act. In *King*, the Third Circuit upheld a New Jersey statute prohibiting licensed counselors from engaging in sexual orientation change efforts with clients under age 18. *Id*. at 240. The statute was not subject to strict scrutiny under First Amendment, even though the court agreed that it discriminated on the basis of content. The statute did not prohibit counselors from expressing their viewpoint, but only from engaging in a particular professional practice that implicitly communicated that viewpoint. *Id*. at 237. Because the legislature had evidence that this counseling was ineffective and potentially harmful to clients, its ban on the practice was narrowly tailored to protect minor patients from harm. *Id*. at 237-40.

Two of Plaintiffs' other cases (Dkt. 25 at 25) struck down statutes that *prohibited* physicians from offering their medical opinion to patients, based on policy considerations that were completely unrelated to patient health. In *Wollschlaeger v. Gov. of Florida*, 848 F.3d 1293, 1312 (11th Cir. 2017), the Eleventh Circuit struck down a statute prohibiting doctors from asking patients about their ownership or possession of firearms. Similarly, in *Conant v. Walters*, 309 F.3d 629, 637 (9th Cir. 2002), the Ninth Circuit struck down a regulation forbidding doctors from telling patients that marijuana might be a beneficial treatment in their case. Here, in contrast, medical providers are neither barred from offering any opinion nor required to offer any opinion. The

9

Amended Act merely clarifies that medical providers must still meet their pre-existing ethical obligation to provide all relevant information to their patients.

Plaintiffs' citation to *Evergreen Ass'n, Inc. v. City of New York*, 740 F.3d 233 (2d 2014) (Dkt. 25 at 21-22), is similarly unavailing. In *Evergreen*, the Second Circuit upheld a requirement that pregnancy services centers disclose whether or not they have a licensed medical provider on staff. *Id*. at 246. This requirement was "the least restrictive means to ensure that a woman is aware of whether or not a *particular* pregnancy services center has a licensed medical provider at the time that she first interacts with it," and therefore survived either strict or intermediate scrutiny. *Id*. at 247, 245. The court then struck down a requirement that the center disclose upfront the reproductive services it provides or does not provide, because this disclosure "mandat[ed] the manner in which the discussion of these issues begins," as well as a requirement that the center tell clients that the government "encourages women who are or who may be pregnant to consult with a licensed provider," because this required the center to communicate a particular message from the government that the government could communicate equally well on its own. *Id.* at 249. Here, the Amended Act does not require disclosure of any information beyond that required by the provider's ethical duties, nor does it conscript private entities to convey the State's message.

Finally, Plaintiffs' citation to *Sorrell v. IMS Health Inc*., 564 U.S. 552, 572 (2011) (Dkt. 25 at 25) is also easily distinguished. In *Sorrell*, Vermont's Prescription Confidentiality Law restricted the sale of pharmacy records that reveal the prescribing practices of individual doctors. While the expressed purpose of the law was to protect physicians' privacy, the law allowed pharmacies to share such information with anyone as long as the information was not to be used for marketing purposes. 564 U.S. at 572-73. Because the information was "available to an almost limitless audience," except for a "narrow class of disfavored speakers," the State's asserted interest in

10

physician confidentiality did not justify the burden that the law placed on protected expression. *Id*. at 573. Here, in contrast, the Amended Act is narrowly drawn to protect the State's compelling interests while also protecting the medical provider's rights.[6]

Finally, Plaintiffs defend their freedom of association claim by noting that the Supreme Court "has refused to tolerate laws that would impose liability based on nothing more than association." Dkt. 25 at 31. But this statement is a *non sequitur*. The Amended Act imposes conditions on medical providers' ability to invoke their conscientious objections as a defense in a malpractice suit or disciplinary hearing. It does not impose *liability* on anyone, much less on individuals associated with the Plaintiffs who do not provide medical advice or services. Plaintiffs' freedom of association claim should therefore be dismissed.

**III.    Plaintiffs' Due Process Void-for-Vagueness claim should be dismissed.**

In their opening brief, the State Defendants relied on state and federal decisions holding that phrases like "current standards of medical practice or care" are not unconstitutionally vague. Dkt. 21 at 25-26, *citing People v. Burpo*, 164 Ill.2d 261, 267 (1995) (holding that "reasonable medical standards" was not vague and noting that "[m]edical standards are not amenable to precise and explicit statutory codification"); *Waltz v. Herlihy*, 682 F. Supp. 501, 507 (S.D. Ala. 1988) (dismissing physician's due process void-for-vagueness claim as "entirely without merit"), *etc*. Plaintiffs do not even acknowledge these cases, much less try to distinguish them. Nor do Plaintiffs cite any relevant precedent of their own; they quote *Chicago v. Morales*, 527 U.S. 41, 56-57 (1999), regarding the problems with vague laws, but cite no authority supporting their claim that the Amended Act is vague. (*Morales* involved challenges to a gang loitering ordinance, and had

---

[6] The *Pregnancy Care Center* court recently found a factual issue as to whether the Amended Act is narrowly tailored to serve the State's interest. Ex. I at 5, 5-6. However, this conclusion is incorrect because the requirements of the Amended Act are a matter of law, not a question of fact.

11

nothing to do with medical standards.) Rather than confronting the relevant case law, Plaintiffs merely speculate that "the standard used in disciplinary or other actions will be derived from ideological viewpoints." Dkt. 25 at 29. Plaintiffs' speculations of discriminatory enforcement are not only unsubstantiated and unfounded, but also inconsistent with the statute itself, which requires compliance with standards of "medical care." 745 ILCS 70/6.1. Plaintiffs cannot state a void-for-vagueness claim by speculating that the Amended Act will be implemented in a manner inconsistent with its plain language. Plaintiffs' due process claim fails and should be dismissed.

### IV.     Plaintiffs' Equal Protection claim should be dismissed.

Plaintiffs' equal protection claim also should be dismissed. In their Complaint, Plaintiffs allege that the Amended Act improperly distinguishes between health care providers who have conscience-based objections to treatment and those who do not. Dkt. 1 at ¶ 61-86. But as defendants previously noted, those groups are not similarly situated. Dkt. 21 at 27. In response, Plaintiffs argue that these two groups are similarly situated "with the exception of the distinction set up by the statute as a basis for treating certain members of the comparison group differently – religiously motivated conscience based objections." Dkt. 25 at 32. But while the Amended Act applies only to providers with conscience-based objections, it does not impose obligations on them beyond what is required of other providers. As discussed in Defendants' opening brief and above, all medical providers are required to adhere to the same ethical standards. Thus, there is no differential treatment and plaintiffs' equal protection claim fails. Moreover, Plaintiffs' equal protection claim adds nothing to their other claims and should be dismissed for this reason as well.

### V.     Plaintiffs' Claims under the 2016 Appropriation Act (Hyde-Weldon Amendment), the Church Amendment, and the Coats-Snowe Amendment should be dismissed.

As the State Defendants established in their opening brief, Plaintiffs' Section 1983 claims seeking to enforce the 2016 Appropriation Act (or Hyde-Weldon Amendment), the Church

Amendment, and the Coats-Snowe Amendment should be dismissed because there is no private right of action under these statutes. Dkt. 21 at 28-31. Plaintiffs do not, and cannot, cite a *single* case finding a private right of action under any of these statutes. The courts are unanimous in holding that the Church Amendment does not create a private right of action—at least four separate courts have reached this conclusion, including one in the Northern District of Illinois—and the same reasoning applies equally to the other statutes. Plaintiffs try to minimize these cases, claiming that they are "not persuasive" because they "do not take into account the role that § 1983 plays in providing a remedy." Dkt. 25 at 35. But this argument misses the point: none of the statutes at issue here manifest an "unambiguous" intent to confer individual rights on plaintiffs, *see Gonzaga v. Doe*, 536 U.S. 273, 280 (2002), so Section 1983's role as a vehicle for enforcement is irrelevant. In other words, Plaintiffs put the cart before the horse.

Plaintiffs' first mistake is to assume that the statutes confer individual *rights* simply because the legislation is "intended to benefit" them. Dkt. 25 at 34. While this is a consideration, *Blessing v. Freestone*, 520 U.S. 329, 340-41 (1997), the Supreme Court has since emphasized that intent to benefit the plaintiff is not enough to establish an enforceable right of action. *See Gonzaga*, 536 U.S. at 283. In *Gonzaga*, the Court cautioned against misreading *Blessing*: "We reject now the notion that our cases permit anything short of an unambiguously conferred right to support a cause of action brought under § 1983." *Id.* at 282-83.

Plaintiffs' second mistake is to ignore the crucial distinction between statutes that focus on the "individuals protected" and those that focus on the "person regulated." *See Alexander v. Sandoval*, 532 U.S. 275, 289 (2001) ("Statutes that focus on the person regulated rather than the individuals protected create no implication of an intent to confer rights on a particular class of persons."). Unlike statutes with "individually focused" "rights-creating" language (for example,

13

Titles VI and IX: "No person…shall…be subjected to discrimination"), which may confer a private right of action, statutes that focus on the "person regulated" do *not* create a private right of action. *Gonzaga*, 536 U.S. at 283, *citing Alexander*, 532 U.S. at 289. Thus, in *Cannon v. Univ. of Chicago*, the Court found a private right of action to enforce Title IX, which has "an unmistakable focus on the benefitted class," but added that there would be "far less reason" to find an enforceable right if Congress "had written it simply as a ban on discriminatory conduct by recipients of federal funds." 441 U.S. 667, 692-93 (1979). To create private rights, a statute must be "phrased in terms of the persons benefitted." *Gonzaga*, 536 U.S. at 284, *citing Cannon*, 441 U.S. at 692 n.13.

None of the three statutes at issue here satisfies this requirement. The relevant sections of the 2016 Appropriation Act (or Hyde-Weldon Amendment), the Church Amendment, and the Coats-Snowe Amendment do not have an "unmistakable focus" on the benefitted class, but instead are written as "ban[s] on discriminatory conduct" by the "person regulated." *See* 114 P.L. 113, Title V, § 507(d) (2016 Appropriation Act) (federal funds may not be made available to a State government that "subjects any institutional or individual health care entity to discrimination…"), 42 U.S.C. § 300a-7(b) (Church Amendment) ("prohibition of public officials and public authorities from imposition of certain requirements contrary to religious beliefs or moral convictions"),[7] 42 U.S.C. § 238n (Coats-Snowe Amendment) (governments receiving federal financial assistance "may not subject any health care entity to discrimination…"). In other words, these statutes are precisely the type that the Supreme Court has stated do not create a private right of action. *See Gonzaga*, 536 U.S. at 283, *Alexander*, 532 U.S. at 289, *Cannon*, 441 U.S. at 692-93.

---

[7] In their opening brief, Defendants inadvertently cited to subpart (d) of the Church Amendment, which does not apply here. Plaintiffs base their claim on subpart (b)(1), prohibiting recipients of grants, contracts, loans, or loan guarantees under certain federal statutes from requiring individuals to "perform or assist in the performance of any sterilization procedure or abortion" if it would be contrary to their religious beliefs or moral convictions. Dkt. 25 at 34. While subpart (b)(1) references "individuals," it still focuses on the entity regulated; thus, there is no private right of action, as every court to address the issue has held. Dkt. 21. at 29.

14

Plaintiffs' reliance on *Planned Parenthood of Indiana, Inc. v. Comm'r of the Indiana State Dept. of Health*, 699 F.3d 962 (7th Cir. 2012) (Dkt. 25 at 33-34) is misplaced. In *Planned Parenthood*, the Seventh Circuit found a private right of action under a provision of the Medicaid Act, 42 U.S.C. §1396(a)(a)(23), mandating that state Medicaid plans provide that "any individual eligible for medical assistance . . . may obtain such assistance from any institution, agency, community pharmacy, or person, qualified to perform the service or services required." *Id.* at 974. But the statutes at issue here are different. The Medicaid Act provision arguably focuses on the "individuals protected," because it affirmatively sets forth what the States "must provide" to individuals in their Medicaid plans. *Id.* In contrast, the three statutes at issue here are all framed as prohibitions on discriminatory conduct by the "person regulated" (indeed, the 2016 Appropriation Act and the Coats-Snowe Amendment do not even mention individuals), and therefore do not evince an unmistakable intent to confer enforceable individual rights.

Finally, even if there were a private right of action under any of these statutes, Plaintiffs' claims would still fail because the Amended Act does not discriminate against health care providers with conscience-based objections. Dkt. 21 at 31. Nor does it create a "referral" requirement, as plaintiffs claim. Dkt. 25 at 35-36. Plaintiffs misinterpret the statute by ignoring 745 ILCS 70/4, which specifically states that health care providers cannot be held liable for refusing to "refer" patients for services contrary to their conscience. *See Owner-Operator Indep. Drivers Ass'n, Inc. v. U.S. Dep't of Transp.*, 840 F.3d 879, 888 (7th Cir. 2016) (courts "construe statutes, not isolated provisions" and "fit, if possible, all parts into an harmonious whole").

## CONCLUSION

For these reasons, and those given in the State Defendants' opening brief, the Court should dismiss Plaintiffs' Complaint and order any further just and proper relief.

|  |  | Respectfully submitted, |
|---|---|---|
| LISA MADIGAN<br>Attorney General of Illinois<br>Attorney No. 99000 | <br><br>By: | <br>/s/ *Sarah H. Newman* _____<br>Sarah H. Newman<br>Michael T. Dierkes<br>Assistant Attorneys General<br>General Law Bureau<br>100 W. Randolph St., 13th Fl.<br>Chicago, Illinois 60601<br>312-814-6131 / 312-814-3672<br>snewman@atg.state.il.us<br>mdierkes@atg.state.il.us |