IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | | |
|---|---|---|
| RONALD SCHROEDER, *et al*, | ) | |
| | ) | |
| Plaintiffs, | ) | No. 17-cv-04663 |
| | ) | |
| v. | ) | Judge Iain D. Johnston |
| | ) | |
| MARIO TRETO, JR., | ) | Magistrate Judge Lisa A. Jensen |
| | ) | |
| Defendant. | ) | |

### SCHROEDER PLAINTIFFS' POST-TRIAL BRIEF

Thomas Olp
Thomas Brejcha
Peter C. Breen
Patrick T. Gillen*
Thomas More Society
309 W. Washington, Suite 1250
Chicago, IL 60606
312.782.1680

top@thomasmoresociety.org
tbrechja@thomasmoresociety.org
pbreen@thomasmoresociety.org
ptgillen@gmail.com

*Counsel for Plaintiffs*

*Admitted *pro hac vice*

1

# TABLE OF CONTENTS

TABLE OF CONTENTS....................................................................................................................2
TABLE OF AUTHORITIES............................................................................................................3
INTRODUCTION............................................................................................................................4
LAW AND ARGUMENT................................................................................................................5
    **I. P.A. 99-690 Violates the Plaintiffs' Right to Free Speech**................................................5
        A. P.A. 99-690 Regulates Speech, Not Professional Conduct..............................................5
        B. P.A. 99-690 Is Fatally Overbroad. .....................................................................................9
        C. P.A. 99-690 Is A Speaker, Content and Viewpoint-Based Regulation Of Speech........11
        D. P.A. 99-690 Does Not Advance A Compelling State Interest......................................12
        E. P.A. 99-690 Is Not Narrowly Tailored............................................................................13
        F. The Defendant Has Failed To Prove P.A. 99-690 Is The Least Restrictive Means Available To Advance Its Putative Interest..........................................................................15
    **II. P.A. 99-690 Violates The Plaintiffs' Free Exercise Rights**.......................................16
    **III. P.A. 99-690 Imposes Unconstitutional Conditions On The Plaintiffs' First Amendment Rights**......................................................................................................................18
CONCLUSION............................................................................................................................18

## INTRODUCTION

Plaintiffs are: (1) Dr. Ronald L. Schroeder, M.D., who serves as the volunteer medical director for a Pregnancy Resource Center ("PC"), Options-Now Thrive MetroEast, and two other PCs; (2) Women's Help Center; and (3) Pregnancy Assistance Southwest Suburbs. Religiously motivated, they seek to empower pregnant women to choose to carry their unborn child to term rather than to abort. The PCs offer limited healthcare (pregnancy tests, ultrasounds, and sometimes STD testing and treatment), and obtain prior informed consent for these treatments. Plaintiffs do not want to give medical advice about the supposed "benefits" of elective abortion, sterilization, and contraception, or to provide information that would facilitate access to these treatments.

The Defendant's position is that the Illinois Health Care Right of Conscience Act ("IHRCA"), as amended by P.A. 99-690, requires the Plaintiffs to provide patients with this information, specifically, (1) medical advice about the "risks and benefits" of "legal" treatment options, including elective abortion, contraception, and sterilization, 745 ILCS 70/6 & 70/6.1(1) ("Medical Advice Requirement"), and (2) referrals, transfers, or written information about entities who provide such services. 745 ILCS 70/6 & 70/6.1(2)&(3)("Facilitation Requirement").

In 2017 the Plaintiffs sued, alleging the IHRCA, as amended, violates their right to Free Speech and Free Exercise under the First Amendment and requesting declaratory and injunctive relief.[1] The matter is now before this Court for decision and judgment after a bench trial. As demonstrated below, the Plaintiffs have proven that they are entitled to the relief requested.

---

[1] The PCs have conscientious objections to describing purported benefits of elective abortion, sterilization, and contraception, and to facilitating access to these services. Dr. Schroeder has a religious objection to giving medical advice about supposed benefits of elective abortion and facilitating access to that procedure. He does not want to be forced to speak as required by the IHRCA as amended because that would undermine the mission and conscientious objections of Options-Now (Parties' Joint Stipulations of Facts ("PJSF") No. 24).

**LAW AND ARGUMENT**

I.     **P.A. 99-690 Violates the Plaintiffs' Right to Free Speech.**

P.A. 99-690 coerces Plaintiffs to speak about the supposed "benefits" of legal treatment options they cannot conscientiously provide and give clients information that facilitates access to these treatments although they do not wish to do so. 745 ILCS 70/6 & 70/6.1(1),(2)&(3). The Defendant argues that P.A. 99-690 is a regulation of professional conduct, but the law compels speech about treatments they do not provide, regulating their speech, not their conduct. It is fatally overbroad because it compels speech in a wide range of circumstances where it is unnecessary to do so in order to advance its supposed (but unproven) interests. It imposes speaker, content, and viewpoint-based burdens on speech that fail strict scrutiny. And it conditions the IHRCA's protections on compliance with these speech requirements. P.A. 99-690 violates the First Amendment guarantee of Free Speech.

    A.     **P.A. 99-690 Regulates Speech, Not Professional Conduct.**

The Defendant argued at trial that the compelled speech requirements of P.A. 99-690 are a permissible regulation of professional conduct because they "relate to a medical procedure." Tr. 25:1; 791:25–792:6. "The First Amendment does not prevent restrictions directed at…conduct from imposing incidental burdens on speech," *National Institute of Family And Life Advocates v. Becerra*, 138 S.Ct. 2361 (2018) ("*NIFLA*"). Compelled speech requirements that facilitate informed consent before a doctor undertakes a medical procedure fall under that principle. *Id*. at 2373 (discussing *Planned Parenthood of Southeastern Pa. v. Casey*, 505 U.S. 833, 884 (1992) (opinion of O'Connor, Kennedy and Souter, JJ.). But, as the Seventh Circuit has recognized, *NIFLA* and *Casey*, when read together, stand for the principle that, while "a state may require medical professionals to provide information *directly linked to* procedures that have been or may be performed" by that provider, it "may not enforce [compelled speech]

4

requirements *disconnected from* medical care" the medical professional has provided or will provide. *Doe v. Rokita*, 54 F.4th 518, 521 (7th Cir. 2022) (emphasis added).

   P.A. 99-690 violates that principle with respect to the PCs' medical directors. P.A. 99-690's speech requirements go beyond facilitating informed consent for the limited medical procedures (pregnancy tests, ultrasounds, and sometimes STD testing and treatment) the medical directors provide. Tr. 229:7-10, 309:20-310:9; 348:10-13. Tr. 229:7-10, 309:20-310:9; 348:10-13;Tr. 230:4-17; Schroeder Ex. 88; Tr. 364:14-22, 365:22-25. Current standards of medical practice and care allow doctors to limit or restrict the scope of medical services they offer, Tr. 737:5-739:20; 435:2-10, 435:18-23, and the PCs' medical directors have done and do not offer elective abortion, contraception, or sterilization, or provide primary or OB-Gyn care at the PCs. PJSF No. 37; Tr. 237:8-19, 309:20-310:9, 311:23-312:5, 391:13-17. Even if they offer primary or OB-Gyn care, current standards of medical practice and care also permit physicians to decline to discuss treatment options that they believe are not *medically* indicated or that they believe are unethical. Tr. 457:14-459:13, 531:20-532:8, 462:13-464:7, 715:10- 716:18; 48:2-6. By definition elective abortion is not medically indicated, Tr. 333:25-334:19, 458:12-22, and the Plaintiffs believe it is unethical. PJSF No. 24.

 Having so limited their practices, the medical directors are not required under current standards of medical practice and care to secure informed consent for those services. Tr. 449:4-451:9, 462:13-24, 499:3-502:6, 48:7-49:20. P.A. 99-690's speech requirement impermissibly goes beyond the informed consent requirement under the current standards of medical care, which was described by the Court in *Rokita* as "information that facilitates patients' choices directly linked to procedures that have been or may be performed." *Rokita*, 54 F.4th at 521. The law's use of the word "legal" in the phrase "legal treatment options" reveals an intent to compel speech beyond that required by the informed consent component of current

standards of medical practice and care. This is yet further indication that P.A. 99-690 targets speech outside of what would be "incidental" to the regulation of professional conduct.

The same is true of P.A. 99-690's application to other healthcare professionals at the PCs. The Defendant argues at Tr. 25:6-19 (see also Tr. 795:5-17) that the PCs' "pregnancy options counseling" is professional conduct incidentally burdened by P.A. 99-690's compelled speech requirement to talk about the benefits of elective abortion, and is therefore lawful. But the evidence shows that the PCs' pregnancy options counseling is not professional conduct at all, but pure speech. *Otto v. City of Boca Raton, Fla.*, 981 F.3d 854, 865 (11th Cir. 2020). Pregnancy options counseling is not medical advice. Tr. 452:16-455:12, 507:15-25, 509:25-514:9, 550:24-552:8, 713:7-720:9. It consists of providing generally available medical information along with counseling about the personal situations of clients and emotional support. Tr. 232:15-22, 348:14-22, 374:1-375:10,396:9-397:15;Schroeder Ex.114. And the PCs' pregnancy options counseling, by definition, could not facilitate an informed consent process for abortion, contraception, or sterilization, because these are procedures the PCs do not provide and for which informed consent is therefore not required. See preceding paragraph; Tr. 449:4-451:9, 462:13-24, 499:3-502:6, 48:7-49:20. For these reasons, pregnancy options counseling is not professional conduct which P.A. 99-690's speech requirement could be said to affect only incidentally.

The Facilitation Requirement in P.A. 99-690 likewise cannot be justified as a "regulation[] of professional conduct that incidentally burdens speech," *NIFLA*, 138 S.Ct. at 2373. Current standards of medical practice or care do not require a healthcare professional to provide information that facilitates patient access to treatment options the healthcare professional will not perform, absent emergency. Tr. 471:14-23, 717:10-719:12 (refer); *see also*, 734:20-735:16, 736:11-18 (refer); Tr. 472:2-7 (transfer); Trial Tr. 420:25–421:6; 472:15-20

6

(inform); 735:23–736:6 (inform). Since current standards of medical practice or care do not require, as "professional conduct," the referral, transfer, or information about someone who might provide a service the healthcare professional declines to perform, a coerced speech requirement such as P.A. 99-690's Section 6.1(2) and (3) could not be viewed to be "incidental" to the regulation of professional conduct. *Otto,* 981 F.3d at 865.

      The Defendant argues for a loose fit between the speech a law compels and conduct. According to the Defendant, P.A. 99-690 satisfies the First Amendment because it "relate[s] to a medical procedure," is truthful and relevant to the decision to undergo a medical procedure. Tr. 24:13-16, 791:25–792:6. However, this position cannot be squared with *Rokita*, *Casey*, and *NIFLA*. In *Rokita* the abortion providers were required to inform their patients of laws regarding the disposal of the fetal remains produced by the abortions they performed. In *Casey* the abortion providers were required to provide information about alternatives to the procedure they provided or proposed to provide, *i.e.* elective abortion. And although the law at issue in *NIFLA*, compelling pregnancy centers to post notices that free abortions were available at state facilities, compelled speech arguably "related to" the procedures provided by the pregnancy centers (obstetric ultrasounds and pregnancy options counseling), the Supreme Court enjoined its enforcement as a violation of the First Amendment. *See*, *NIFLA*, 138 S.Ct. at 2368-2369; *id.* at 2373. If the Defendant's reading of *NIFLA* were correct, the Supreme Court would have rendered the opposite holding in *NIFLA*. The case before this court is factually analogous to *NIFLA* in that the speech that is coerced by P.A. 99-690, as in *NIFLA*, is not "directly linked" to any medical procedures that the PCs offer to perform.

      These cases insist on a tight (not loose) connection between conduct and speech before permitting regulation because of the vital role that free speech plays in promoting the wellbeing of individuals and the welfare of society. It is for this reason that "First Amendment

standards…must give the benefit of any doubt to protecting rather than stifling speech." *Citizens United v. Federal Election Comm'n, 558 U.S. 310, 327 (2010)*. The looser fit between conduct and speech that the Defendant presses here does not give the benefit of the doubt to free speech. Quite the contrary, it would give "States unfettered power to reduce a group's First Amendment rights by simply imposing a licensing requirement," *NIFLA*, 138 S.Ct. at 75, "a powerful tool to impose invidious discrimination of disfavored subjects." *Id*. The Defendant's argument must be rejected.

### B. P.A. 99-690 Is Fatally Overbroad.

The First Amendment principle of overbreadth provides that "a law may be invalidated as overbroad if a substantial number of its applications are unconstitutional, [when] judged in relation to the statute's plainly legitimate sweep." *U.S. v. Stevens*, 559 U.S. 460, 472 (2010) (quotations and citations omitted).

As an initial matter, P.A. 99-690 does not appear to have any legitimate sweep. The Defendant claims P.A. 99-690 is needed because healthcare personnel were "put[ting] their patients at risk by keeping them in the dark about their medical options." Tr. 22:24-25. But the Defendant failed to prove at trial that healthcare providers with conscientious objections to legal treatment options ever harmed patients by failing to discuss those options with patients. The Defendant also failed to prove at trial that patients were unable to obtain legal treatments because healthcare providers with conscientious objections would not help them. The most the record shows is a handful of unsubstantiated hearsay complaints. They do not prove there is an actual problem, especially since the Defendant took no action in response to them.

But even assuming the Defendant had produced evidence of real harm caused by practitioners withholding information from patients, P.A. 99-690 fails overbreadth analysis because it compels speech in a vast range of cases where it is not necessary to do so in order to

8

address those harms. The medical treatments most likely to produce conscientious objections are those that address human sexuality and reproduction, e.g. elective abortion, sterilization, and contraception. But these treatments and their risks and benefits are commonly known and debated in the public forum. And information about providers is easy to obtain. Tr. 40:22–41:7, 77:13–15 (Lee), 101:13–102:4, 133:21–134:2; 154:6–154:21; 181:11–17; Tr. 44:1–7; 112:12–21; 151:17–152:4; 184:17–185:11; *see also*, NIFLA Exs. 18–25; Schroeder Ex. 163 & 163. Nevertheless, P.A. 99-690 forces healthcare providers with conscientious objections to discuss the benefits of these legal treatments and to facilitate access to them when it is unnecessary to do so in order to advance its asserted interests.

A good example of the law's overbreadth is its application even when women agree to accept care after being told that abortion will not be provided or facilitated as in this case. The women have not been misled and knowingly receive a free limited obstetric ultrasound, for instance, after accepting those limitations. The women are not being harmed, but helped, and the coerced speech requirement is not addressing any actual problem, but only serves to compel them to deliver the Defendant's message although they do not wish to do so.

    C.    **P.A. 99-690 Is A Speaker, Content and Viewpoint-Based Regulation Of Speech.**

On its face, P.A. 99-690 is speaker and content-based. P.A. 99-690 applies to healthcare providers with conscientious objections to legal treatment options and compels them to engage in unwanted speech about those options. Thus, it functions as a speaker-based regulation and "[b]ecause speech restrictions based on the identity of the speaker are all too often simply a means to control content, we have insisted that laws favoring some speakers over others demand strict scrutiny when the legislature's speaker preference reflects a content preference." *Reed v. Town of Gilbert,* 576 U.S. 155, 170 (2015).

The Defendant argues that the Plaintiffs must comply with P.A. 99-690's requirement that healthcare providers talk about "benefits'' of elective abortion, elective sterilization, and elective contraception because they talk about the adverse effects of these treatments. Tr. 25:6-10; 26: 3-7. This is an admission that P.A. 99-690 "exacts a penalty on the basis of … content," s*ee Miami Herald Publ'g Co. v. Tornillo*, 418 U.S. 241, 256-57 (1974), and is content-based because by "[m]andating speech that a speaker would not otherwise make [the regulation] necessarily alters the content of the speech." *Riley v National Fed'n of the Blind*, 487 U.S. 781, 795 (1988). The regulation "violates the fundamental rule of protection under the First Amendment, that a speaker has the autonomy to choose the content of his own message". *Hurley v. Irish-American Gay, Lesbian and Bisexual Group of Boston*, 515U.S. 557, 573 (1995). Such "[c]ontent-based *burdens* must satisfy the same rigorous scrutiny as … content *bans*." *U.S. v. Playboy Entertainment Group, Inc.*, 529 U.S. 803, 812 (2000)(emphasis added).

The Defendant also asserts that the compelled speech requirements imposed by P.A. 99-690 are justified to counteract the PCs' discussion of the negative effects of legal treatment options such as abortion without discussing putative "benefits." Tr. 25:6-10; 26: 3-7. This is an admission that P.A. 99-690 imposes viewpoint discrimination, compelling the Plaintiffs to provide the Defendant's views about supposed benefits of these legal treatment options because they discuss the risks and adverse effects of them with the women they serve. "[D]iscriminating among viewpoints—or the regulations of speech based on 'the specific motivating ideology or the opinion or perspective of the speaker' – is a 'more blatant' and 'egregious form of content discrimination.'" *Reed*, 576 U.S. at 168 (citing *Rosenberger v. Rector and Visitors of Univ. of Va.,* 515 U.S. 819, 829 (1995)). Because P.A. 99-690 targets the views of those who believe legal treatment options are harmful, not beneficial, and requires them to "either speak as the Defendant demands or face sanctions for expressing [their] own beliefs," *303 Creative LLC v.*

*Elenis*, 600 U.S. 570, 589 (2023), it imposes "an impermissible abridgment of the First Amendment's right to speak freely." *Id*. For these reasons, P.A. 99-690 must pass strict scrutiny, but it cannot do so.

### D. P.A. 99-690 Does Not Advance A Compelling State Interest.

Because P.A. 99-690 burdens speech based on the identity of the speaker, the content of their speech, and the views that they express, the Defendant bears the burden of demonstrating that it "furthers a compelling governmental interest. . .". *Reed*, 576 U.S. at 171. The Defendant "must specifically identify an 'actual problem' in need of solving, and the curtailment of free speech must be actually necessary to the solution. That is a demanding standard. It is rare that a regulation restricting speech because of its content will ever be permissible." *Brown v. Entm't Merchs. Ass'n,* 564 U.S. 786, 801 (2011)(internal citations omitted).

As noted in the discussion of overbreadth above in Section I.A., the Defendant failed to prove that the problems P.A. 99-690 are real problems in need of a solution. The handful of complaints cited do not show a real problem, as supported by the Defendant's failure to take remedial action over them. This belies the claim he now makes that P.A. 99-690 is needed to address a serious problem. With regard to elective abortion, the treatment option at the center of the case, the evidence shows that women are well aware of the option and how they can obtain it, and therefore that compelled speech in this area is altogether unnecessary. Tr. 40:22–41:7, 77:13–15 (Lee), 101:13–102:4, 133:21–134:2; 154:6–154:21; 181:11–17; Tr. 44:1–7; 112:12–21; 151:17–152:4; 184:17–185:11; see also NIFLA Exs. 18–25; Schroeder Ex. 163 & 163. There is no reason to infer this is not true of elective sterilization and elective contraception as well, and the Defendant at trial did not offer proof to the contrary. The Defendant has not proven that the compelled speech requirements of P.A. 99-690 are necessary to advance a compelling interest.

E.     P.A. 99-690 Is Not Narrowly Tailored.

Even assuming the state had a compelling interest in regulating speech here, to satisfy strict scrutiny, it must regulate with means "narrowly tailored to achieve that interest." *Reed*, 576 U.S. 171. A law that is *overinclusive* or *underinclusive* is not narrowly tailored. *Brown v. Entm't Merchs. Ass'n,* 564 U.S. 786, 804 (2011)(italics added). The Defendant may not satisfy narrow tailoring simply by equating the effect of the statute with the state's interest, for "this sort of circular defense can sidestep judicial review of almost any statute because it makes all statutes look narrowly tailored." *Simon & Schuster*, 502 U.S. 105, 120 (1991). Thus, the Defendant cannot show P.A. 99-690 is narrowly tailored simply by asserting that the regulation only affects health care providers with conscience objections because only they present the harm that the regulation seeks to cure, and, therefore, the law is narrowly tailored to advance Defendant's stated interests. The Defendant must prove that this is true in order to prove the law is narrowly tailored. The Defendant did not.

P.A. 99-690's Medical Advice Requirement is overinclusive. As shown in the overbreadth discussion above, the law compels speech in many cases where there is no need to do so in order to protect patients from providers who would treat them without discussing the purported benefits of all legal treatment options or helping them obtain access to treatments they want. P.A. 99-690 compels healthcare providers to discuss the purported benefits of all legal treatment options and where to obtain them even though the treatments are commonly known, information about providers easily obtained, and over the objections of PCs' physicians who not believe abortion is beneficial for either of their patients, the mother or her child. It compels speech when doctors have limited the care they will provide and patients have agreed to those limitations on the care they will receive. It compels speech where, as here, providers have told their patients they will not provide certain treatments or assistance in obtaining them and their

clients have agreed to accept care well aware of these limitations. None of these scenarios implicate the State's putative interests, yet P.A. 99-690 applies to each of them, demonstrating that the law is not narrowly tailored, but overinclusive.

The Medical Advice Requirement is also underinclusive. The Defendant asserts, though he does not prove, that only healthcare professionals with conscientious objections decline to discuss all legal treatment options before treating their patients. Yet P.A. 99-690 does not require providers without conscientious objections, such as abortion providers, to provide this medical advice. Healthcare providers who have no conscientious objection to a treatment option are free to omit discussion of the treatment for any number of reasons. For example, they need not discuss the treatment if they think it will not promote patient health; or if they think the effectiveness of the treatment is uncertain; if they think the treatment is effective but not worth its costs; or if they think the patient cannot afford the treatment so they should not bring it up; or if they do not know enough about the treatment to feel comfortable discussing it. Such "[u]nderinclusiveness raises serious doubts about whether the government is in fact pursuing the interest it invokes, rather than disfavoring a particular speaker or viewpoint." *NIFLA*, 138 S.Ct. at 2376.

The Facilitation Requirement imposed by 6.1(3) is also both overinclusive and underinclusive. The requirement is overinclusive in that it applies to every patient of a provider with conscientious objections to legal treatment options even in situations where it is unnecessary to compel speech to advance its interest as explained in Section I.B. above. The requirement is underinclusive in that providers without conscientious objections are free to decline to facilitate access to legal treatment options for any number of reasons. For example, they do not need to facilitate access if they do not know a competent provider, or do not want to

risk malpractice for negligent referral, or simply do not want to bother. P.A. 99-690 is blatantly underinclusive, which demonstrates it is not narrowly tailored.

### F. The Defendant Has Failed To Prove P.A. 99-690 Is The Least Restrictive Means Available To Advance Its Putative Interest.

To satisfy strict scrutiny, the government must use the "least restrictive means among available, effective alternatives." *Ashcroft v. A.C.L.U.*, 542 U.S. 656, 666 (2004). The question here is whether the government can advance its interest through means that avoid "burdening a speaker with unwanted speech," *id*, and "the burden is on the Government to prove that the proposed alternatives will not be as effective as the challenged statute." *Id*. at 665.

> The purpose of the test is to ensure that speech is restricted no further than necessary to achieve the goal, for it is important to ensure that legitimate speech is not chilled or punished. For that reason, *the test does not begin with the status quo of existing regulations, then ask whether the challenged restriction has some additional ability to achieve [the state's] legitimate interest. Any restriction on speech could be justified under that analysis*. Instead, the court should ask whether the challenged regulation is the least restrictive means among available, effective alternatives.

*Id. at* 666 (emphasis added). The Defendant has not met his burden as to either Section 6.(1) or 6.3(3) requirements.

At trial the Defendant offered no evidence that he had even considered, let alone tried to employ, readily available means of informing people, e.g., public service announcements on radio, television, the internet, social media, or disseminating information through social service organizations, educational institutions, or collaboration with private organizations that serve the intended audience. Of course, not having tried any of these methods, the Defendant can marshal no proof that they would have been ineffective.

The Defendant has not even tried to explain why the tools at his disposal, e.g, disciplinary actions against health professionals, are insufficient, or why he took no action on the few complaints that were raised to his attention. Since Defendant did not show he even tried to

address the purported problem without burdening speakers with unwanted speech, P.A. 99-690 fails strict scrutiny. The "First Amendment does not permit the Defendant to sacrifice speech for efficiency." *NIFLA*, 135 S.Ct. at 2376

## II. P.A. 99-690 Violates The Plaintiffs' Free Exercise Rights.

The Free Exercise Clause "protects…the ability of those who hold religious beliefs of all kinds to live out their faiths in daily life through the performance of (or abstention from) physical acts." *Kennedy v. Bremerton Sch. Dist.*, 142 S. Ct. 2407, 2421 (2022) (cleaned up). Forcing the Plaintiffs to comply with P.A. 99-690 would force them to violate their religious convictions. PJSF No. 39; Tr. 244:19-247:23, 292:24-293:10, 233:16-234:17, 313:1-8, 369:8-21, 372:21-373:25, 380:8-381:1.[2] Consequently, the law imposes a substantial burden upon the free exercise of religion. *Trinity Lutheran Church of Columbia, Inc. v. Comer*, 582 U.S. 449, 463 (2017)(noting that the Free Exercise Clause protects religious believers from indirect coercion or penalties on the free exercise of religion).

P.A. 99-690 is not religiously neutral. On its face it applies to those whose religious views prevent them from providing or facilitating legal treatment options and forces them to discuss the benefits of those treatments and to facilitate access to them. The Defendant claims that P.A. 99-690 is religiously neutral because it simply makes clear that healthcare professionals with religious objections must comply with duties that are imposed by standards of care which are generally applicable in order to get the benefit of the IHRCA. Tr. 791:12–792:6. The evidence does not support this claim. Current standards of care do not require the medical directors of the PCs to provide the medical advice required by Section 6 and 6.1(1) as

---

[2] This is true for all the Plaintiffs with respect to elective abortion, the legal treatment option at the heart of this case. Dr. Schroeder has no conscientious objection to elective sterilization or elective contraception but he does not wish to be compelled to speak on these matters because it would undermine the message of Options-Now, the PC for which he serves as medical director because he agrees with its pro-life mission. Tr. 314:16-315:13.

15

demonstrated above. *See* Sec. I.A. (showing current standards of care do not provide the medical directors to obtain informed consent for care they do not provide). And current standards of care do not require the medical directors to engage in the speech compelled by Section 6.1(3) as demonstrated above. *See* Sec. I.A. (showing current standards of care do not require the medical directors to facilitate access to treatments). In sum, the evidence shows that P.A. 99-690 is neither religiously neutral nor generally applicable.

"Because the challenged restrictions are not neutral and of general applicability, they must satisfy strict scrutiny, and this means that they must be narrowly tailored to serve a compelling state interest." *Roman Catholic Diocese of Brooklyn v. Cuomo*, 141 S.Ct. 63, 67 (2020). P.A. 99-690 does not satisfy the requirements of strict scrutiny for the reason explained above. *See* Secs. I.D-F. Consequently, P.A. 99-690 violates the Plaintiffs' right to Free Exercise.

### III. P.A. 99-690 Imposes Unconstitutional Conditions On The Plaintiffs' First Amendment Rights.

The Defendant argues that the coerced speech requirements of P.A. 99-690 are lawful because they merely impose conditions that must be accepted if the Plaintiffs wish to enjoy the immunity provided by IHRCA. Tr. 22:23–23:3; see also Tr. 798:23–799:7. But "government may not deny a benefit to a person on a basis that infringes his constitutionally protected ... freedom of speech even if he has no entitlement to that benefit.' *Agency for Intern. Dev. v. Alliance for Open Society Intern., Inc.*, 570 U.S. 205, 214 (2013). And "[i]t is too late in the day to doubt that the liberties of religion and expression may be infringed by the denial of or placing of conditions upon a benefit or privilege." *Trinity Lutheran Church of Columbian, Inc. v. Comer*, 137 U.S. 2012, 2022 (2017) (cleaned up). As already explained, P.A. 99-690 violates the Plaintiffs' Free Speech and Free Exercise rights. Thus, the Defendant's argument concedes that

P.A. 99-690 amends the IHRCA so as to impose unconstitutional conditions on the Plaintiffs' First Amendment rights.

## CONCLUSION

The Plaintiffs believe elective abortion takes an innocent human life and that elective abortion, sterilization, and contraception, will not promote the physical, emotional, or spiritual well being of the women they serve. The Defendant would compel them to discuss putative benefits of these treatments and help women to obtain them. That violates the First Amendment. This Court should grant the Plaintiffs the relief that they request.

Respectfully submitted November 20, 2023.

/s/ Patrick T. Gillen
Thomas Olp
Thomas Brejcha
Peter C. Breen
Patrick T. Gillen*
Thomas More Society
309 W. Washington, Suite 1250
Chicago, IL 60606
312.782.1680

top@thomasmoresociety.org
tbrechja@thomasmoresociety.org
pbreen@thomasmoresociety.org
ptgillen@gmail.com

*Counsel for Plaintiffs*
*Admitted *pro hac vice*

CERTIFICATE OF SERVICE

I hereby certify that on November 20, 2023, I electronically filed the above paper with the Clerk of the Court by using the ECF system which will send notification of filing to the following:

Elizabeth Morris
Sarah J. Gallo
Hannah Jurowicz
John Hazinski

OFFICE OF THE ILLINOIS ATTORNEY GENERAL
100 West Randolph St., 11th Floor
Chicago, IL 60601
(312) 814-3000

Elizabeth.Morris@ilag.gov
Sarah.Gallo@ilag.gov
H.GroschJurowicz@ilag.gov
John.Hazinski@ilag.gov

Counsel for Defendant

Kevin H. Theriot
Julia C. Payne

Alliance Defending Freedom
15100 N. 90th Street
Scottsdale, AZ 85260
480.444.0020
480.444.0028 (fax)
ktheriot@ADFlegal.org
jpayne@ADFlegal.org

Noel W. Sterett, Bar No. 6292008
Dalton & Tomich PLC
401 W. State St., Suite 509
Rockford, IL 61101
815.986.8050
nsterett@daltontomich.com

Counsel for NIFLA Plaintiffs

 s/ Patrick Gillen

Patrick Gillen

THIS DOCUMENT HAS BEEN ELECTRONICALLY FILED