## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## WESTERN DIVISION

| | |
|---|---|
| DR. RONALD L. SCHROEDER, 1st WAY PREGNANCY SUPPORT SERVICES, an Illinois not-for-profit corporation, and PREGNANCY AID SOUTH SUBURBS, an Illinois not-for-profit corporation, | ) ) ) ) Case No. 1:17-cv-04663 ) |
| | ) |
| Plaintiffs, | ) |
| | ) The Hon. Iain D. Johnston |
| v. | ) U.S. District Judge |
| | ) |
| MARIO TRETO, JR., in his official capacity as Secretary of the Illinois Department of Financial and Professional Regulation, | ) The Hon. Margaret J. Schneider ) U.S. Magistrate Judge ) |
| | ) |
| Defendant. | ) |

## NOTICE OF APPEAL

NOTICE IS HEREBY GIVEN that Dr. Ronald L. Schroeder, 1st Way Pregnancy Support

Services, an Illinois not-for-profit corporation, and Pregnancy Aid South Suburbs, an Illinois

not-for-profit corporation, Plaintiffs in the above-captioned case, hereby appeal to the United

States Court of Appeals for the Seventh Circuit from those portions of the District Court's

Memorandum Decision And Order (ECF 256) and Judgment (ECF 257) entered in this action on

April 4, 2025, denying "all other relief" sought by Plaintiffs.


Dated: April 9, 2025          Respectfully submitted,

THOMAS MORE SOCIETY

/s/Thomas G. Olp

Thomas G. Olp
Thomas Brejcha
Peter C. Breen
Patrick T. Gillen

1

Thomas More Society
A National Public Interest Law Firm
309 W. Washington, Suite 1250
Chicago, IL 60606
312-782-1680
tolp@thomasmoresociety.org
tbrejcha@thomasmoresociety.org
pbreen@thomasmoresociety.org
pgillen@thomasmoresociety.org

*Counsel for Plaintiffs*

*Admitted pro hac vice

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### WESTERN DIVISION

National Institute of Family and Life Advocates, et al.,

       Plaintiffs,

v.

Mario Treto Jr.,

       Defendant.

Ronald Schroeder, et al.,

       Plaintiffs,

v.

Mario Treto Jr.,

       Defendant.

No. 16 CV 50310

No. 17 CV 4663

## **MEMORANDUM OF DECISION**

This Memorandum of Decision contains the Court's findings of fact and conclusions of law under Rule 52(a). The Court will separately enter Rule 58 judgment orders in each case.[1] The Court concludes that Public Act 99-690 Section 6.1(1), in exchange for a liability shield, compels speech, requiring a discussion about the risks and benefits of childbirth and abortion. That compelled discussion violates the First Amendment. Section 6.1(1) isn't a doctrinally qualifying informed consent

---

[1] The Court thanks counsel for all the Parties for their work in these cases. Without doubt, the subject matter of this litigation can result in intemperate language and behavior. But throughout the Court's involvement with this case, counsel have been courteous and professional among themselves and with the Court. What's more, the Court appreciates the quality of the presentations and filings by all counsel. Thank you. X

1

statute, and the compelled speech isn't "incidental" to conduct. However, unlike Section 6.1(1), Section 6.1(3) doesn't compel speech. Instead, Section 6.1(3) merely regulates professional conduct, instructing clinicians, upon request, to either refer or transfer a patient to another physician, or at least provide her with a list of potential providers. These types of conduct regulations don't implicate the First Amendment's Speech clause. And because Section 6.1(3) returns conscientious objectors to their earlier, generally applicable liability exposure, it doesn't violate the Free Exercise Clause either. So, the Court finds Section 6.1(3) constitutional. Constitutionally, to obtain the liability shield, the State can't require medical professionals to discuss with patients what the State believes are the benefits of abortions; however, if patients request abortions, at a minimum, the State can require medical professionals to provide information of other medical professionals whom they reasonably believe might perform abortions.

**INTRODUCTION**

Before launching into the legal analysis, the Court is compelled underscore the narrow legal and factual issues in this case.

First, as described in more detail later, the legislative evidence presented to the Illinois General Assembly in support of Public Act 99-690[2] was underwhelming. Nevertheless, in its wisdom, the State of Illinois sought to address a perceived

---

[2] A note on citations: As discussed shortly, Public Act 99-690 amended the Health Care Right of Conscience Act ("HCRCA"). Public Act 99-690 encompasses Section 6.1(1) and 6.1(3). When the Court refers to the amendment generally, it uses "Public Act 99-690." It otherwise identifies the particular section (e.g. 6.1(1) or 6.1(3)) at issue. Citations to the Illinois Code (ILCS) refer to the HCRCA.

problem, which it has every right to do in support of the public's health, safety, and welfare. It is not this Court's role to judge the wisdom of a public act. Instead, the Court's limited function is to determine whether Public Act 99-690 is constitutional, in whole or in part.

Second, a preliminary injunction enjoining enforcement of Public Act 99-690 has been in place for nearly a decade. Despite the General Assembly's determinations and the State's assertions that—absent Public Act 99-690—the health of women was in grave peril, no evidence has been presented to this Court that supports that concern. Dkt. 48 at 26–27. Despite extensive summary judgment briefing and a three-day bench trial, no evidence was presented showing that a single woman's health was compromised because Public Act 99-690 was enjoined.

Third, the lack of this evidence should not be surprising. Public Act 99-690 amended the HCRCA to limit its use as an affirmative defense in civil and criminal proceedings. This factual scenario is highly unusual and rarely (if ever) occurs. Indeed, the Parties cited no instances in which this aspect of the HCRCA has been litigated, and the Court was unable to find a single reported case involving this aspect of the HCRCA.

Fourth, the lack of evidence of women's health being imperiled but for Public Act 99-690 is unsurprising because the HCRCA provides no protections for health care professionals who fail to treat emergencies. 745 ILCS 70/6 ("Nothing in this Act shall be construed so as to relieve a physician or other health care personnel from obligations under the law of providing emergency medical care."); 745 ILCS 70/9

("Nothing in this Act shall be construed so as to relieve a physician, health care personnel, or a health care facility from obligations under the law of providing emergency medical care."). Health care professionals who fail to treat pregnant women in a medical emergency find no quarter in the HCRCA, regardless of the amendments contained in Public Act 99-690.

None of the foregoing should be interpreted as minimizing the constitutional issues at stake in this litigation, the role of the State to address perceived concerns about public health, safety, and welfare, or a woman's access to medical care. Instead, the Court notes that its decision is cabined to the statutory scheme at issue and the HCRCA and its subsequent amendments.

## I. BACKGROUND

### A. *Parties*

This case involves two sets of plaintiffs: the National Institute of Family and Life Advocates ("NIFLA") Plaintiffs and the Schroeder Plaintiffs. NIFLA is a religious organization comprised of member pregnancy centers from across the country. NIFLA dkt. 275-2. ¶ 1.[3] The NIFLA Plaintiffs also include three individual Illinois pregnancy centers. *Id.* The Schroeder Plaintiffs include Dr. Ronald Schroeder, the volunteer medical director at Options-Now/Thrive Metro-East, as well as two other pregnancy centers. Schroeder dkt. 236-1 ¶ 1.[4]

---

[3] The Court cites 16-cv-50310 as "NIFLA" and 17-cv-04663 as "Schroeder."
[4] For this decision's purposes, the two sets of Plaintiffs and the Pregnancy Centers' work are essentially identical. So, unless otherwise noted, the Court simply refers to them as "Plaintiffs," and assumes they're all engaged in the same activities.

Defendant is the Director of the Illinois Department of Financial and Professional Regulation. The action is brought against that individual in the individual's official capacity. The current Director—and therefore, Defendant—is Mario Treto Jr. Rather than call out the latest person to hold this office, the Court will simply refer to the Defendant as "the State." The Court is mindful that some adherents of the Eleventh Amendment might be shocked at this approach. But they'll get over it. It's just a label for purposes of this decision.

B.      *The Health Care Right of Conscience Act (HCRCA)*

As the Court previously mentioned, Public Act 99-690 purports to amend the HCRCA. Since its enactment in 1977, the HCRCA has addressed many issues, including prohibiting discrimination and providing a right of action if discrimination occurs. Relevant to this action, the HCRCA provides an affirmative defense against civil and criminal liability. 745 ILCS 70/4, 70/9. Section 4 of the HCRCA contains one of the affirmative defenses:

> No physician or health care personnel shall be civilly or criminally liable to any person, estate, public or private entity or public official by reason of his or her refusal to perform, assist, counsel, suggest, recommend, refer or participate in any way in any particular form of health care service which is contrary to the conscience of such physician or health care personnel. 745 ILCS 70/4.

Section 9 of the HCRCA contains the other provision providing a defense:

> No person, association, or corporation, which owns, operates, supervises, or manages a health care facility shall be civilly or criminally liable to any person, estate, or public or private entity by reason of refusal of the health care facility to permit or provide any particular form of health care service which violates the facility's conscience as documented in its ethical guidelines, mission statement,

5

constitution, bylaws, articles of incorporation, regulations,
or other governing documents.  745 ILCS 70/9.

In 2016, the General Assembly held hearings regarding the HCRCA because of concerns raised by Illinois residents regarding their health care treatment.

C.       *Legislative History of Amendments to the HCRCA*

Relating to the issues raised in this case, the legislative support for Public Act 99-690 was sparce.  Only two examples have been identified.  First, there appear to be two letters from an anesthesiologist who refused to provide his services when abortions were performed.  Second, there was heartbreaking testimony from a witness about her treatment during a pregnancy that was not viable.  But nothing in the challenged provisions (what would become Section 6.1(1) and Section 6.1(3)) would have remedied any of problems highlighted by these two examples, because Public Act 99-690 neither requires conscientious objectors to personally perform abortion services nor excuses them from facilitating emergency treatment.

Following these hearings, by way of Public Act 99-690, Illinois amended the HCRCA in several ways.  First, Illinois added a provision identifying the public policy for the HCRCA and presumably the amendments to the HCRCA.  According to the amendments, "[i]t is also the public policy of the State of Illinois to ensure that patients receive timely access to information and medically appropriate care."  Second, the amendments added the definition of "undue delay," which "means unreasonable delay that causes impairment of the patient's health."  Third, the amendments added to the list of duties of medical "practices and care" not relieved by the immunity provided by the HCRCA, specifically identifying the duty to inform

6

patients of "legal treatment options" and "benefits of treatment options." Fourth, the amendments to the HCRCA made two significant additions—one entitled "access to care and information protocols" and the other entitled "permissible acts related to access to care and information protocols." Access to care and information protocols are the important parts.

The amendments adding the protocols provision to Section 6.1 are the crux of this litigation. Section 6.1 requires all health care facilities to adopt protocols that allegedly would ensure that conscience-based objections did not impair patients' health. Critically, the affirmative defenses contained in Section 4 and Section 9 of the HCRCA "only apply if conscience-based refusals occur in accordance with these protocols." The consequence being that for physicians, health care personnel, and persons, associations, or corporations that own, operate, supervise, or manage a health care facility to receive the benefits of the affirmative defense, they are forced to comply with the requirements of Public Act 99-690. Their conscience-based actions are unprotected unless they comply with Illinois' mandates in Public Act 99-690, which require physicians to "inform," "give[] information" to, "refer," or "transfer" patients when they are unable to act or provide information to a patient because of a "conscience-based objection."

To obtain the immunity protections, the protocols minimally need to address the requirements of Section 6.1(1) and Section 6.1(3). The Plaintiffs challenge both provisions. Under Section 6.1(1), health care facilities, physicians, and health care personnel are mandated to inform a patient of, among other things, "legal treatment

options, and the risks and benefits of the treatment options in a timely manner."
Under Section 6.1(3), if requested by a patient or a patient's representative, health
care facilities, physicians, and health care personnel must take one of three actions:
(a) refer the patient, (b) transfer the patient, or (c) provide written information about
other health care providers who they reasonably believe may offer the service that
the facility, physician, or personnel can't provide because of a conscience-based
objection. Note a critical difference between Section 6.1(1) and Section 6.1(3): the
former mandates speech regardless of anything else; whereas, the latter requires
actions when prompted by a patient.

The amendment regarding "permissible acts" allows a health care facility to
require physicians and health care personnel working at the facility to comply with
the protocols. In full, this amendment states, "[n]othing in this Act shall be construed
to prevent a health care facility from requiring that physicians or health care
personnel working in the facility comply with access to care and information protocols
that comply with the provisions of this Act." 745 ILCS 70/6.2.

Fifth, as to liability, the HCRCA's amendments added that a health care
facility is not relieved from providing emergency medical care under the HCRCA.
Stated differently, the HCRCA—which is an immunity statute—explicitly doesn't
provide any immunity when physicians, health care personnel, or health care
facilities fail to meet their legal obligations to provide emergency medical care. 745
ILCS 70/9.

D.      *Procedural History of the Litigation*

This litigation started in 2016, when the NIFLA Plaintiffs filed an action in this Court. The Schroeder Plaintiffs then filed an action in the Eastern Division of the Northern District of Illinois, which was consolidated with the NIFLA action in this Court. On July 19, 2017, then-Judge Fredrick Kapala entered a preliminary injunction, enjoining the State from enforcing Public Act 99-690.

On December 15, 2017, based on an unopposed motion, the Court stayed both actions pending the Supreme Court's ruling in *Nat'l Inst. of Fam. & Life Advocs. v. Becerra*, 585 U.S. 755 (2018). Following the Supreme Court's decision, the Plaintiffs asserted that the decision supported their position and the preliminary injunction. The State asserted that *Becerra* "provided some guidance" but was not "dispositive."

After then-Judge Kapala took inactive status, the actions were assigned to then-Chief Judge Rebecca Pallmeyer. The Plaintiffs moved for summary judgment, seeking permanent injunctive relief. They contended that Public Act 99-690 violated their rights to free speech and to free exercise of religion under the First Amendment. On September 3, 2020, Judge Pallmeyer denied the summary judgment motions, concluding that "genuine disputes of material facts remain[ed]." Dkt. 176. In doing so, Judge Pallmeyer found "that expert discovery about the standard of care [was] necessary before the court [could]" resolve the litigation. Dkt. 176 at 36.

Following Judge Pallmeyer's ruling on summary judgment, three events occurred. First, the undersigned was confirmed by the United States Senate and received a commission, resulting in these actions being transferred. Second, the

Parties engaged in expert discovery per Judge Pallmeyer's order. Third, following expert discovery, the Court held a three-day bench trial.

## II.    FACTUAL FINDINGS

### A.    *Pregnancy Centers' Work*

Pregnancy Centers ("Pregnancy Centers") are pro-life clinics that will not perform or refer for an abortion. NIFLA dkt. 282-1 ¶ 23. The Pregnancy Centers generally offer free ultrasounds, pregnancy testing, STI testing and treatment. *See* NIFLA dkt. 275-2 ¶¶ 2–15. At least one Pregnancy Center offers "abortion pill reversals." *Id.* ¶ 5. The Pregnancy Centers also provide material assistance to pregnant women and engage in "pregnancy options" and "post-abortion" counseling. *Id.* That counseling includes discussion about the risks of abortion, but it doesn't include a benefits discussion, because the Pregnancy Centers don't believe any benefits exist. *Id.*; NIFLA dkt. 282-1 ¶¶ 31–32. They further believe that counseling about abortion benefits would encourage the procedure. *Id.* ¶ 33. The Pregnancy Centers "rely on the visuals of the ultrasound itself and the health care provider's diagnoses to try to convince pregnant patients to carry to term and not have an abortion." *Id.* ¶ 20. The Parties dispute the extent to which the Pregnancy Centers engage in "medical conduct."

### B.    *Standard of Care and Informed Consent*

On summary judgment, Judge Pallmeyer applied intermediate scrutiny and identified an unresolved factual question: whether Public Act 99-690 "burden[ed] more speech than necessary" and whether secular doctors, upon request, generally

transferred, referred, or provided alternative resources. NIFLA dkt. 176 at 23. The State said Public Act 99-690 wasn't overly burdensome because the "standard of care" already required all doctors to discuss a treatment option's benefits and risks. *Id.* at 24. So, the State argued, Public Act 99-690 merely imposed that same standard on the Plaintiffs. *Id.* The Plaintiffs disagreed, claiming that the "standard of care" didn't universally require these types of discussions. *Id.* So, the Plaintiffs contended Public Act 99-690 was underinclusive, applying only to conscientious objectors. *Id.* Judge Pallmeyer ordered a trial to determine what the "standard of care" required.

As discussed later, the Court analyzes the legal issues differently, in a way that turns less on the "standard of care" question. Regardless, a three-day bench trial demonstrated only that, in the abstract, there's no single administrable definition of the standard of care. During that trial, the Parties also discussed "informed consent." Those two issues—standard of care and informed consent—intertwine with one another. However, for later analytical purposes, the Court discusses them separately. All Parties relied on credible and persuasive opinion witnesses. And all Parties agree that any medical organizations pronouncements are only nonmandatory guidelines. NIFLA dkt. 275-2 ¶ 34.

*Standard of Care*

The trial testimony was, by and large, consistent with the Parties' briefing: The State argued that Public Act 99-690 simply repeats the professional standards that already bind all health care professionals, while the Plaintiffs argued that the pre-existing standard of care doesn't require a so-called benefits discussion. NIFLA

dkt. 275 at 22; dkt. 271 at 4–8.  According to all Parties' retained experts, medical standards of care turn on individualized assessments of a patient's needs, including a woman's medical history, mental health, spirituality, stated goals and expectations, reaction to her pregnancy, the providers' own abilities and expertise, and other factual inquiries.  *See e.g.*, Trial Tr. 600:5–13; 629:13–630:21; Trial Tr. 61:6–62:25; *compare* Trial Tr. 431:21–432:9 (Dr. Fernandes encouraging physicians to balance a patient's wishes against other factors) *with id.* at 587:1–25 (Dr. Burcher suggesting patient autonomy is the preeminent principle in modern bioethics).  This testimony is unsurprising.  Under Illinois law, standard of care depends on the specific factual circumstances presented to the health care professional.  *Edelin v. Westlake Comm. Hosp.*, 510 N.E.2d 957, 962 (Ill. App. Ct. 1987).  Indeed, Illinois juries are instructed to this effect.  Illinois Pattern Jury Instructions, Civil, No. 105.00 (2020).  This highly fact-specific inquiry is incompatible with requiring a doctor to discuss so-called benefits with *every* patient—largely because the State never presented evidence that every pregnant woman needs the "thorough[]" discussion that the State tries to impose.  NIFLA dkt. 275-1 ¶¶ 90–110.

The State argued that professional organizations create ethical standards of care that encourage health care professionals to provide neutral options counseling and requested abortion referrals.  NIFLA dkt. 275 at 5–6.  But those standards aren't binding.  Trial Tr. 316:8–10; NIFLA dkt. 275-1 ¶¶ 75–78, 106–09.[5]  In an amicus brief before the Court, the American College of Obstetrics and Gynecology ("ACOG") cites

---

[5] Like the Pirate's Code, trial testimony established that these standards are more what you'd call "guidelines" than actual rules.  https://www.youtube.com/watch?v=WJVBvvS57j0.

its own Code of Professional Ethics, stating that obstetrician-gynecologists must discuss the "risks, benefits, possible complications, and anticipated results" of terminating a pregnancy, and the American Medical Association ("AMA") statement that health care providers "should" present accurate information about "the burdens, risks, and expected benefits of all options." NIFLA dkt. 279 at 3. As the experts testified at trial, ACOG and AMA standards for discussing abortion make no sense when a patient is thrilled to learn of her pregnancy and no reasonable concerns exist for the patient to continue with the pregnancy. Trial Tr. 168:8–13, 629:18–630:2. And, not surprisingly, given the contentious nature of elective abortion, other professional groups have conflicting opinions. *See* Trial Tr. 473:15–475:23. So, all the evidence shows is that the standard of care doesn't require a binding, uniform benefits discussion.

### Informed Consent

The Court's best efforts to define "informed consent" were similarly futile. The Parties disagree on the medical definition of "informed consent." According to the Plaintiffs, a doctor's ethical obligations to a specific patient "arise out of the nature of the doctor–patient relationship . . . specifically what has that patient come to the physician for and what is the physician offering to the patient." NIFLA dkt. 271-1 ¶ 28. Accordingly, "[i]nformed consent is the responsibility of the physician who will provide the treatment for which consent is sought, not the referring physician or any other physician." *Id.* ¶ 29. So, according to the Plaintiffs, "a physician need not discuss the risks and benefits of treatments like abortion that they do not personally provide." *Id.* ¶ 30.

The State takes a different view. According to the State, "[i]nformed consent is not limited to seeking authorization for an imminent medical procedure." NIFLA dkt. 275-1 ¶ 107. Instead, informed consent can "apply to counseling both about a specific medical intervention by a health care provider or more broadly about different relevant medical options available to a patient, because both involve choosing a treatment option or a plan of care." *Id.* ¶ 108. So, "[h]ealth care personnel are obligated to advise patients of risks and benefits of relevant procedures and treatment options, even if those treatments are not available at that particular medical facility." *Id.* ¶ 109. According to the State, proper medical care then requires "medical options counseling," in which providers "present[] patients with medically appropriate treatment options for their condition and the risks and benefits of those options." *Id.* ¶ 96. Again, this view makes no sense if the patient is thrilled to learn of the pregnancy and no reasonable medical concerns exist for the patient to continue the pregnancy.

As with the standard of care issue, the witnesses drew their definitions from competing ethical and moral principles. For example, the State says the "*central approach* to biomedical ethics is the 'principalist theory,'" which emphasizes "autonomy, beneficence, nonmaleficence, and justice." *Id.* ¶ 66. But the Plaintiffs stress that some medical professionals—and organizations—adhere to other ethical regimes that balance values differently. *Schroeder* dkt. 236-1 ¶¶ 61–78. So, the Court can't define, in the abstract, a binding, universal definition of "informed consent."

14

## III.   CONCLUSIONS OF LAW

The Court now addresses the legal questions.  It first considers whether either Section 6.1(1) or Section 6.1(3) violates the First Amendment's Free Speech Clause.[6] If warranted, the Court also considers whether either Section violates the Free Exercise Clause.  In making these assessments, this Court recognizes that "[w]here fairly possibl[e], [it] should construe a statute to avoid a danger of unconstitutionality." *Zbaraz v. Madigan*, 572 F.3d 370, 383 (7th Cir. 2009) (citations omitted); *see Rescue Army v. Mun. Ct.*, 331 U.S. 549, 568–74 (1947).  Further, in addressing the constitutionality of a state statute, a federal court may not formulate a rule of constitutional law broader than is required by the precise facts to which is to be applied.  *United States v. Raines*, 362 U.S. 17, 21 (1960).  And, if a federal court is required to grant injunctive relief, the relief should be no more burdensome than necessary.  *Califano v. Yamasaki*, 442 U.S. 682, 702 (1979).  Injunctive relief must be tailored to the scope of the violation and the specific harm established.  *DraftKings Inc. v. Hermalyn*, 118 F. 4th 416, 423 (1st Cir. 2024); *e360 Insight v. Spamhaus Project*, 500 F.3d 594, 604 (7th Cir. 2007).

**Unconstitutional Conditions**

The Plaintiffs argue that Public Act 99-690 imposes unconstitutional conditions on the receipt of a public benefit.  Importantly, a state cannot condition the receipt of a public benefit—such as a liability shield—on a citizen surrendering their constitutional rights.  *See Elrod v. Burns*, 427 U.S. 347, 361 (1976) (plurality

---

[6] The Court only addresses Sections 6.1(1) and (3), because the others aren't contested.  *See* NIFLA dkt. 275 at 9. Section 6.1(2) is not mentioned.  *Id.*

opinion); *Libertarian Party of Ind. v. Packard*, 741 F.2d 981, 988 (7th Cir. 1984) ("What a government cannot compel, it should not be able to coerce."). So, the unconstitutional conditions doctrine is a theory of First Amendment liability, not a claim in itself. As discussed more in the Free Exercise section, Public Act 99-690 offers a benefit, namely a liability shield. In making that offer, however, the State can't demand a constitutional violation. So, the threshold question is whether each Section violates the constitution.

**First Amendment Free Speech Claim**

The First Amendment, applicable to the states through the Fourteenth, prohibits laws "abridging the freedom of speech." U.S. Const. amend. I; *Becerra*, 585 U.S. at766. In any challenge to government action that allegedly violates the First Amendment, the first step is to determine whether a particular state-action provision regulates speech (implicating the First Amendment) or conduct (not entitled to First Amendment protections).[7] Next, if the state action regulates speech based on its content, the court applies strict scrutiny, unless a doctrinal exception pulls the state action to a lesser tier of scrutiny. The First Amendment protects both the "right to speak freely and the right to refrain from speaking at all." *Wooley v. Maynard*, 430 U.S. 705, 714 (1977). The Court analyzes Sections 6.1(1) and 6.1(3) in turn.

---

[7] Just as Everlast explained in *What It's Like*, *see* https://genius.com/Everlast-what-its-like-lyrics, where a court starts its analysis—by concluding that the state action regulates speech or regulates conduct—is essentially dispositive. *See Dana's R.R. v. AG*, 807 F.3d 1235, 1242 (11th Cir. 2015) (describing speech conduct determination as being determinative).

A.       *Section 6.1(1)*

The Supreme Court's precedents have "long drawn a line" between speech and conduct.  *Becerra*, 585 U.S. at 769 (collecting cases).   Although, in some circumstances, that line might be "difficult" to draw, *id.*, Section 6.1(1) falls on the speech side.   The provision demands that health care providers "*inform*" patients about the risks and benefits associated with their treatment options.  § 1 (emphasis added).   And the State imagines a "thorough discuss[ion]" between the health care provider and the patient.   NIFLA dkt. 275-1 ¶¶ 90–110 (terming the discussion "counseling").[8] So, Section 6.1(1) regulates speech, implicating the First Amendment.

Next, the Court considers whether Section 6.1(1) is content-based or content-neutral.   Content-based state actions "target speech based on its communicative content." *Reed v. Town of Gilbert*, 576 U.S. 155, 163 (2015).   A statute alters the content of a speaker's speech by compelling individuals to speak a particular message or share particular pieces of information.  *Becerra*, 585 U.S. at 755 (2018).

Section 6.1(1) is a content-based regulation because it governs a health care provider's discussion on pregnancy and abortion.   The state action is especially suspect because it's also view-point discriminatory.  *Nat'l Inst. of Fam. & Life Advocs. v. Raoul*, 685 F. Supp. 3d 688, 704 (N.D. Ill. 2023) (citing *Rosenberger*, 515 U.S. 819 (1995) ("When the government targets not subject matter, but particular views taken by speakers on a subject, the violation of the First Amendment is all the more

---

[8] The Court discusses below whether counseling can be considered "conduct."

blatant."). The Plaintiffs contend that abortion confers no medical benefits. NIFLA dkt. 271-1 ¶ 18; Schroeder dkt. 236-1 ¶ 41. It is important to note that the Plaintiffs' definition of abortion basically only encompasses elective abortions (which seems to mean all abortions where there's a viable fetus). Schroeder dkt. 236-1 ¶ 38. For example, the Plaintiffs don't argue that terminating an ectopic pregnancy is an "abortion" as they define the term. *See* Trial Tr. 52:20–53:4. This view is consistent— albeit perhaps for different reasons—with the fact that even the medical profession doesn't consider terminating an ectopic pregnancy to be an "abortion." *See Procedural Abortion*, UptoDate.com (Feb. 2025) ("[W]hen a trained health care provider does a procedure to remove the pregnancy *from [a] uterus*.") (emphasis added). This limited definition of abortion is at least somewhat consistent with the Act, which doesn't provide immunity when health care professionals fail to act in an emergency. 745 ILCS 70/9.

The State disagrees with the Plaintiffs, believing that an abortion (however it is defined) is beneficial in certain circumstances. Whether the State or the Plaintiffs are correct, however, doesn't factor into this constitutional analysis. In demanding that health care professionals discuss the benefits (and thereby concede to the State's view), the State makes the providers "instruments" in delivering a particular message. *DeBoer v. Village of Oak Park*, 267 F.3d 558, 572 (7th Cir. 2001) (quoting *Wooley v. Maynard*, 430 U.S. 705, 715 (1977)).

Ordinarily, the First Amendment bars a state from commanding this type of speech, unless it survives strict scrutiny. This level of scrutiny requires the state to

identify a compelling interest and narrowly tailored means to achieve it. The State says it's entitled to deferential treatment in this case because Section 6.1(1) targets professional conduct and only incidentally implicates speech. The Plaintiffs disagree, arguing that Section 6.1(1) unconstitutionally compels speech. To determine whether Section 6.1(1) receives deferential treatment, the Court considers two First Amendment doctrines: (a) the *Zauderer* commercial speech and (b) the "speech incidental to conduct" exceptions.

<div align="center">a)      *Zauderer* Commercial Speech</div>

In limited, narrow circumstances, the government has leeway to regulate speech relating to professional activities. *Zauderer v. Off. of Disciplinary Couns. of Sup. Ct. of Ohio*, 471 U.S. 626 (1985); *Hurley v. Irish-American Gay, Lesbian & Bisexual Grp. of Boston, Inc.*, 515 U.S. 557, 573 (1995). The *Zauderer* exception applies only to "purely factual and uncontroversial information" in commercial advertising. *Becerra*, 585 U.S. at 768–69; *Hurley*, 515 U.S. at 573.

*Zauderer*'s narrow scope doesn't apply to this case for three reasons. First, none of the speech in this case is "commercial" speech. Generally, "[c]ommercial speech is speech that proposes a commercial transaction." *Jordan v. Jewel Food Stores, Inc.*, 743 F.3d 509, 517 (7th Cir. 2014) (citing *Bd. of Trs. of State Univ. of N.Y. v. Fox*, 492 U.S. 469, 475 (1989); *see also Commerce*, BLACK'S LAW DICTIONARY (12th ed. 2024) (defining commerce as the "exchange"—not the free provision—of "goods and services"); *In re Primus*, 436 U.S. 412, 437–38 n. 32 (1978) (finding an attorney

<div align="center">19</div>

engaged in noncommercial speech by advertising free services intended to advance "beliefs and ideas," as opposed to financial gain).

In this case, there's no economic transaction: None of the Pregnancy Centers charge for their services, so there's no financial exchange. *See NIFLA v. Raoul*, 685 F. Supp. 3d 688, 705 (N.D. Ill. 2023) (This Court made the same conclusion involving largely the same facts, because "there [was] no economic motivation for the speech."). Moreover, "abortion [is] anything but an 'uncontroversial' topic." *Becerra*, 585 U.S. at 769. Ordinary life experiences support that conclusion: Try talking about abortion in public amongst strangers and see what reaction it spawns. Third, as discussed more below, the information Public Act 99-690 requires "in no way relates to the services" that the Plaintiffs provide. *See Becerra*, 585 U.S. at 769. In *Becerra*, the Supreme Court held that the compelled disclosures (information about abortion) weren't "commercial speech," in part because the pregnancy centers didn't provide abortions. That's the same in this case. The Plaintiffs don't provide abortions, so the State can't rely on the *Zauderer* exception to compel speech about the procedure. So, the commercial speech exception won't shield the disclosures from heightened review.

b)    Speech Incidental to Conduct

The First Amendment also permits a state to regulate conduct, even when doing so incidentally burdens speech. Whether the regulation remains "incidental" depends on how to read (and reconcile) *Becerra* and *Planned Parenthood v. Casey*, 505 U.S. 833 (1992) (*overruled on other grounds by Dobbs v. Jackson Women's Health Org.*, 597 U.S. 215 (2022)). The Parties excise favorable sentences from one case while

nearly ignoring the other. *See e.g.*, NIFLA Plaintiffs' Table of Authorities, dkt. 275 at 3 (citing *Becerra* "*passim*" and *Casey* once); the State's Table of Authorities, dkt. 271 at 3, (citing *Casey* "*passim*" and *Becerra* twice). The Court also must examine whether and to what extent the Seventh Circuit's decision in *Doe v. Rokita* affects the interpretation of those two cases. 54 F. 4th 518. The Court is duty bound to harmonize all three cases. *United States v. Hansen*, 929 F.3d 1238, 1254 (10th Cir. 2019) ("[W]e must endeavor to interpret our cases in a manner that permits them to coexist harmoniously with overarching and controlling Supreme Court precedent and with each other."); *Kimberly-Clark Corp. v. Fort Howard Paper Co.*, 772 F.2d 860 63 (Fed. Cir. 1985) ("Thus, statements in opinions of this court must be read harmoniously with prior precedent, not in isolation.").

In *Casey*, abortion-provider plaintiffs challenged Pennsylvania's law requiring them to provide patients with certain information before performing an abortion. 505 U.S. at 880. Specifically, the law required the physician to discuss the "nature of the procedure, the health risks of the abortion and of childbirth, and the probable gestational age of the unborn child." *Id.* at 881. Further, the law required the physician to note the availability of state-published materials on child-support assistance, adoption agencies, and other abortion alternatives. *Id.*

The *Casey* plurality didn't evaluate the Pennsylvania law under heightened review. *Id.* Instead, the plurality termed the mandated disclosures an "informed consent requirement." *Id.* It suggested that a state doesn't violate the First Amendment when it requires a doctor to provide "truthful, nonmisleading

21

information about the nature of [a] procedure." *Id.* at 882. Though such requirements implicated the doctor's right not to speak, they did so "only as part of the practice of medicine, subject to reasonable licensing and regulation by the State." *Id.*

The State is correct that *Casey*'s language gives it some constitutional leeway to enact Section 6.1(1). But the *Casey* decision doesn't stand in isolation. Both the Supreme Court and the Seventh Circuit had more to say.

In *Becerra*, the Supreme Court considered a California statute that required certain pro-life pregnancy centers to display a state-drafted notice regarding abortion availability. *Becerra*, 585 U.S. at 763. The notice had to be "posted in the waiting room, printed and distributed to all clients, or provided digitally at check-in." *Id.*

Rejecting a so-called "professional speech" First Amendment exception, the Supreme Court held that "speech is not unprotected merely because it is uttered by professionals.'" *Id.* at 766. Citing *Casey*, the Court acknowledged that "States may regulate professional conduct, even though that conduct incidentally involves speech." *Id.* at 769. In doing so, *Becerra* immediately categorized the action at issue in *Casey* as more akin to conduct, rather than speech. Moving forward, the Supreme Court then held *Casey*'s lower standard didn't apply to the California statute. Instead, according to the *Becerra* Court, the law "regulate[d] speech as speech." *Id.* at 770. The *Becerra* Court reasoned that the Pennsylvania statute in *Casey* was an "informed consent" law; whereas, the California statute was "neither an informed consent requirement nor any other regulation of professional conduct." *Id.*

22

Although it didn't overrule *Casey*, *Becerra*'s dicta revealed the Court's dim view of compelled speech, even when it occurs in a medical context. "Doctors help patients make deeply personal decisions, and their candor is crucial," the Court said. *Id.* at 771 (citations omitted). And "[t]hroughout history, 'governments have 'manipulated the content of doctor-patient discourse' to increase state power and suppress minorities." *Id.* (citations omitted). "Doctors and nurses might disagree about the ethics of assisted suicide or the benefits of medical marijuana . . . [but] the people lose when government is the one deciding which ideas should prevail." *Id.* at 772.

<center>***</center>

The Court detours here to discuss "informed consent," for purposes of *Becerra*'s "speech incidental to conduct." *Becerra*, *Casey*, *Rokita*, and other abortion-related cases refer to informed consent. And, as the Parties recognize, this loaded term of art does a decisive amount of work: If a disclosure fits within an "informed consent" statute, *Becerra* deemed it "incidental to professional conduct," and thereby immune from heightened review. Indeed, post-*Becerra*, if a disclosure *isn't* an informed consent statute, few avenues permit deferential review. *But see Rokita infra.* Yet, there's apparently "no[] legal authority reciting the contours of 'informed consent.'" *E.M.W. Women's Surgical Ctr., P.S.C. v. Beshear*, 920 F. 3d 421, 448 (6th Cir. 2019) (Donald, J., dissenting).

The Parties in this case offer conflicting definitions of informed consent. A three-day trial devolved into disagreements about the competing ethical principles underpinning medical practice and which values should be prioritized over others.

<center>23</center>

*See* Trial Tr. 426–35; 603–10.  To the extent the American Medical Association or similar groups adopt a definition, the record demonstrates those are nonbinding guidelines.  NIFLA dkt. 275-2 ¶ 34.  So, under these circumstances, the Court has two options: examine legal precedent and derive a definition from that caselaw or choose between competing experts and trade associations on an issue fraught with scientific, moral, and philosophical controversy.  Some judges take the latter approach, looking to the normative medical definition promulgated by groups like AMA and ACOG.  *See E.M.W.*, 920 F. 3d at 454–55.  (6th Cir. 2019) (Donald, J., dissenting); *Camnitz*, 774 F.3d at 251–53.  A court would then conclude that whatever falls within the medical groups' informed consent definition automatically meets *Becerra*'s "speech incidental to conduct."

But there are significant problems with that approach, an approach this Court refuses to take.  First, that process ultimately nullifies *Becerra*: "Speech isn't unprotected," the *Becerra* Court held, "merely because it's uttered by professionals." Yet if the State or professional groups could tuck the compelled speech under an "informed consent" labeled shield, then they could routinely evade scrutiny.  *See Becerra*, at 755 ("[S]tate labels cannot be dispositive of [the] degree of First Amendment Protection." (cleaned up)).  Further, that approach forces the Court to decide what's constitutional based on the normative, conventional perspectives.  That conflicts with the First Amendment's entire purpose, aiming to protect *"unpopular* ideas [and] information." *See Becerra*, 585 U.S. at 773 (emphasis added).

More importantly, doctors and lawyers are talking past each other. *Becerra* didn't say "informed consent" status alone is a get-out-of-First-Amendment-free card. Instead, *Becerra* held that such provisions are acceptable *because they're incidental to professional conduct*. Indeed, the Supreme Court pointed to the specific informed consent provision at issue in *Casey*. 585 U.S. at 769–70. So, the Court must determine whether the medical definition of informed consent remains incidental to conduct. If the scope of the medical community's definition captures protected speech—i.e. amounts to more than an incidental burden—then it violates the First Amendment. A court can't abdicate its responsibility to determine constitutional protections to trade associations.

Ultimately, when medical experts disagree as to what constitutes "informed consent," the Court can't pick a side. It's not only unqualified do so, but, more importantly, *Becerra* doesn't care about the abstract definition. Instead, the Court examines abortion-related cases to discern some of the contours of informed consent. When "informed consent" meets *those* qualifications, it necessarily satisfies *Becerra*'s "incidental to professional conduct." The Court finds that "informed consent" is incidental to conduct when it meets the following four minimum requirements.

First, informed consent necessarily requires a "medical procedure." The *Becerra* statute wasn't an informed consent provision, because it wasn't "tied to a procedure at all," instead applying to "all interactions between a covered facility and its clients, regardless of whether a medical procedure is ever sought, offered or performed." *Becerra*, 585 U.S. at 756; *see also Rokita*, 54 F. 4th at 520 (noting that

25

states may require "informed consent to risky procedures"). That's also consistent with the term "incidental to conduct." If there's not an identifiable procedure—i.e. no conduct—then the informed consent can't latch on to anything.

Second, as the term suggests, an informed consent provision must "afford the patient the ability to make an informed, intelligent decision regarding medical treatment he is to receive," including "the general nature of the contemplated procedure, the risks involved, the prospects of success, the prognosis if the procedure is not performed and alternative medical treatment." *Roberts v. Patel*, 620 F. Supp. 323, 325 (N.D. Ill. 1985). *Canterbury v. Spence*, 464 F.2d 772, 781 (D.C. Cir. 1972) (physicians generally must "warn the patient of any risks to his well-being which the contemplated therapy may involve").

So, by definition, a disclosure only qualifies as an informed consent provision if it occurs *before* a patient undergoes a medical procedure. *See Patel*, 620 F. Supp. at 325 ("The doctrine of informed consent requires that *prior to* administering medical treatment . . . .") (emphasis added); *Becerra*, 585 U.S. at 769 (noting that *Casey* required "informed consent *before* they could perform an abortion." (emphasis added); *Karlin v. Foust*, 188 F.3d 446, 454 (7th Cir. 1999) (discussing informed consent before a procedure); *Stuart v. Camnitz*, 774 F.3d 238, 252 (4th Cir. 2014) ("The informed consent process typically involves a conversation between the patient . . . and the physician . . . before the procedure begins."). Both legal and medical dictionaries agree on this fundamental principle of informed consent. *Informed Consent*, BLACK'S LAW DICTIONARY (12th ed. 2024) ("A person's agreement to allow something to

26

happen, made with full knowledge of the risks involved and the alternatives."); *Informed Consent*, STEDMAN'S MED. DICTIONARY ("Voluntary agreement given by a person . . . for participation in a . . . treatment regime . . . after being informed of the purpose, methods, procedures, benefits, and risks.").

Third, to be incidental to conduct, the informed consent provision must substantively relate to the impending medical procedure. In other words, a state can't throw whatever it wants into a compelled disclosure and label it informed consent. Before surgery, the State can't require a doctor to tell her patient that ketchup should never be put on a hotdog. Courts have interpreted that requirement broadly, allowing discussions of such things as adoption and parental support, *Casey*, 505 U.S. at 881, and descriptive ultrasounds, *E.M.W.*, 920 F. 3d 421, 424. (6th Cir. 2019); *but see Camnitz*, 774 F.3d at 252 (holding such ultrasounds don't fit within informed consent). But in all those scenarios, the disclosures aimed to articulate the factual "risks involved, the prospects of success, the prognosis if the procedure is not performed and alternative medical treatment." *Patel*, 620 F. Supp. 323, 325 (N.D. Ill. 1985). The relational requirement essentially tracks the "truthful, non-misleading and relevant" standard articulated in *E.M.W.*, 920 F.3d at 424.[9]

---

[9] The State argues that "truthful, non-misleading, and relevant" standard should govern compelled disclosures, like Section 6.1(1). But the State skips a step. The *E.M.W.* court had already concluded that the statute at issue was an informed consent provision. *See* 420 F.3d at 424 ("Even though an *abortion-informed-consent* law compels a doctor's disclosure of certain information, it should be upheld so long as the disclosures is truthful, non-misleading, and relevant to an abortion.") (emphasis added); *id.* at 429 ("[S]uch incidental regulation includes mandated informed-consent requirements, provided that the disclosures are truthful, non-misleading, and relevant."). Moreover, the Court shares some

27

Fourth, doctrinally, an informed consent provision is incidental to conduct only when it regulates the health care provider performing the identified medical procedure. *See Casey*, 505 U.S. at 881–82 (explaining how the statute applied to the doctor performing the abortion); *A Woman's Choice-East Side Women's Clinic v. Newman*, 305 F.3d 684, 684–85 (discussing what the Court called an "informed consent" statute that regulated the "*physician who is to perform* the abortion") (emphasis added); *E.M.W.*, 920 F.3d at 424 (discussing what the court termed an informed consent provision that "direct[ed] a doctor, prior to performing an abortion"); *Tex. Med. Providers Performing Abortion Servs. v. Lakey*, 667 F.3d 570 (5th Cir. 2012) (same); *Planned Parenthood Minnesota, North Dakota, South Dakota v. Rounds*, 530 F.3d 724 (8th Cir. 2008) (same). All of those cases are doctrinally consistent with the goal of informed consent that a physician can't operate on a person without the patient's permission. *See Becerra*, at 770 (citing *Chloendorff v. Soc'y of N.Y. Hosp.*, 105 N.E. 92, 93 (1914) (Cardozo, J.) ("[A] surgeon who performs an operation without his patient's consent commits an assault."). That rationale only carries weight when the operating physician obtains the patient's consent for *that* impending procedure.

The State calls this an "invent[ed]" rule that imposes "a novel limitation" on the State's power. NIFLA dkt. 275 at 15. It's true that neither *Casey* nor those other cases said in exact words that a disclosure is only an informed consent provision when

---

of the *E.M.W.* dissent's concern that *Casey* may have used that language in an undue burden analysis, not a First Amendment one. *Id.* at 449.

it's regulating the procedure-providing doctor. But those were the factual circumstances. And cases must be read and their holdings interpreted in the factual context presented to the court making the decision. *See Pampered Chef v. Alexian*, 804 F. Supp. 2d 765, 782 (N.D. Ill. 2011); *MB Fin. Bank, N.A. v. Walker*, 741 F. Supp. 2d 912, 919 (N.D. Ill. 2010). Indeed, the Supreme Court found *Becerra*'s counterfactual (i.e. a state compelling speech from someone not necessarily performing the medical procedure) unconstitutional. What's more, the State has things backwards. The State cites no case that construes "informed consent" in this type of expansive manner, one that applies "informed consent" to health care providers who never offer the underlying-yet-to-occur procedure. Instead, the *State* breaks doctrinal ground by pioneering a novel definition without authority. In doing so, the State—not the Plaintiffs—are the inventors.

The State notes that *Casey* required the operating physicians to inform women about "subjects far beyond the health care they offered," including paternal child support and adoption. NIFLA dkt. 275 at 12. So, the State asserts, the physician need not provide the triggering medical procedure. *Id.* But the State confuses the necessary and sufficient conditions. If a doctor performs a medical procedure, then a state may require an informed consent disclosure. The doctor must perform a medical procedure for the state to constitutionally compel that disclosure. However, the doctor doesn't need to also perform the procedures (if any) contained within those disclosures. For example, a state may compel a surgeon to inform a patient that

surgery will consequentially require physical therapy, even though the surgeon doesn't offer physical therapy.

The State proposes a broader definition of informed consent. It contends that "[i]nformed consent is not limited to seeking authorization for an imminent medical procedure." NIFLA dkt. 275-1 ¶¶ 107–08. Instead, "[h]ealth care personnel are obligated to advise patients of risks and benefits of relevant procedures and treatment options, even if those treatments are not available at that particular medical facility." NIFLA dkt. 275-1 ¶¶107–08. The State derives that definition from the AMA's Code of Ethics and other professional bodies. *See* NIFLA dkt. 275-1 ¶¶ 75–78, 106–09. The State admits those ethical guidelines are "not binding professional or legal standards, but they provide a normative set of guidelines within the medical profession that health care professional consult to inform their practice." *Id.*[10] The State cites no case in which courts stretch informed consent to apply to doctors who don't perform the impending procedure. The Plaintiffs and their experts disagree with the State, offering a definition similar to the Court's definition. *See* NIFLA dkt. 271 at 3 ("To qualify as an informed consent requirement, a law must be tied to a medical procedure that the regulated parties perform.").

---

[10] To be clear, the Court doesn't doubt that "informed consent" also prizes "patient autonomy" and "self-determination." *Camnitz*, 774 F.3d at 251; *see also Canterbury v. Spence*, 464 F.2d 772, 787 (D.C. Cir. 1972) (emphasizing "patients right to self-decision" and determination). But the doctrine still requires certain other predicates to be satisfied for the term to qualify as "speech incidental to conduct." *Camnitz* found that an ultrasound-description requirement fell outside informed consent—essentially because it demanded *too much* information—but the necessary elements discussed above still existed.

The State's definition falls outside *Becerra*'s scope. *Becerra* carved out room for informed consent provisions as incidental to conduct. But that's because they were nearly contemporaneous with and in furtherance of the underlying procedure. "Incidental to conduct" is incompatible with a definition of informed consent that would require doctors to discuss hypothetical medical procedures they won't perform.

So, to summarize: Doctrinally, a statute qualifies as an informed consent provision—and therefore incidental to conduct—when it requires a health care professional, before she performs a medical procedure, to discuss the nature or consequences of the impending medical procedure.

<p align="center">***</p>

In medical cases, informed consent occupies most of the "speech incidental to professional conduct" universe. *See Becerra*, 885 U.S. at 768 (citing only two examples: the informed consent statute in *Casey* and legal advertising regulations). But *Becerra* leaves some room for non-informed consent qualifying statutes that are nonetheless incidental to professional conduct. *See id*. at 770 (noting that the California statute was "not an informed consent requirement *or any other regulation of professional conduct*."). *Rokita* provides such an example.

In *Rokita*, Indiana regulated the disposal of fetal remains. Specifically, the state required abortion providers (but not women who kept the remains) to dispose of the remains by either burial or cremation. 54 F. 4th 518, 519 (2022). The disposal requirements didn't apply to women who kept the remains themselves. *Id*. The

<p align="center">31</p>

provider could explain those options after the procedure, and the information didn't aim to inform her consent to a procedure; nor did *Rokita* call the statute an informed consent provision. Two doctors sued, arguing that the First Amendment barred Indiana from requiring them to ask the women to select an option: burial or cremation. *Id.* at 520.

In a brief decision, the Seventh Circuit held Indiana's law constitutional. On the one hand (and as the State highlights), the *Rokita* Court stressed that "states may require medical providers to give truthful notices," including disclosures that enable "informed consent to risky procedures." *Id.* Characterizing *Becerra*, *Rokita* explained that although a "state may not enforce requirements disconnected from medical care,"[11] the state could still demand that "medical professionals alert patients to laws that affect medical choices." *Id.* at 521. That precise language gives states some latitude to demand certain speech, so long as that speech related to "medical choices" or falls within "medical care." But, as the Seventh Circuit has reminded district courts, that sentence must be read in context, including in the context of the facts of the case. *Livingston v. Trustguard Ins.*, 558 Fed. Appx. 681, 683 (7th Cir. 2014) *citing United States v. Costello*, 663 F.3d 1040, 1044 (7th Cir. 2012).[12] The Seventh Circuit's reminder is critical because, as the Plaintiffs emphasize, later language in *Rokita* limits its scope. Characterizing *Becerra*'s characterization of *Casey*, *Rokita* held that "a state may require medical professionals to provide

---

[11] This is the "ketchup on the hot dog" example the Court used previously.
[12] For example, although *Rokita* used the phrase "risky procedures," no risky procedures were implicated under the challenged statute or facts of the case.

information that facilitates patients' choices directly linked to procedures that have been or may be performed." *Rokita*, 54 F.4th at 521.

Reading *Casey*, *Becerra*, and *Rokita* together, the Court derives the following rule: States may regulate the practice of medicine, but to the extent the regulation implicates speech, to be constitutional, that speech must be "incidental to professional conduct." *Becerra*, 885 U.S. at 768. In the medical context, qualifying informed consent provisions will occupy most of the "speech incidental to professional conduct" universe. But *Rokita* makes clear that there's still room for some other speech-implicating conduct regulations, so long as the speech remains incidental to the underlying conduct.

*Application to Section 6.1(1)*

With that background, the Court now assesses Section 6.1(1). It first considers whether the mandated disclosures are "informed consent" provisions, as earlier defined. It then weighs whether the provisions are otherwise "incidental to conduct."

As discussed above, to secure a liability shield, Section 6.1(1) compels certain speech; namely a discussion about a patient's "condition, prognosis, legal treatment options, and risks and benefits of the treatment options." NIFLA dkt. 275-1 ¶ 100 (imagining a "thorough[] discuss[ion]" between the provider and the patient; *id.* ¶¶ 90–110 (terming the discussion "counseling"). As discussed, the mandated disclosures don't qualify as commercial speech. So, the Court subjects it to heightened scrutiny, unless the speech is only incidental to conduct.

33

*Informed Consent Analysis*

If the disclosures fall under the definition of informed consent, then the *Becerra*, *Casey*, and *Rokita* decisions teach that the disclosures are necessarily incidental to conduct and therefore don't trigger strict scrutiny. Recall that a state action doctrinally qualifies as an informed consent provision when it requires a health care professional, before she performs a medical procedure, to discuss the nature or consequences of the impending medical procedure. Under Section 6.1(1):

> "The health care facility, physician, or health care personnel shall inform a patient of the patient's condition, prognosis, legal treatment options, and risks and benefits of the treatment options in a timely manner, consistent with current standards of medical practice or care."

The Pregnancy Centers engage in some medical-like conduct. They discuss medical histories, maternal health, abortion, and childbirth. In some cases, they administer STI and/or pregnancy tests as well as abortion pill reversals. And the Pregnancy Centers also perform transvaginal and abdominal ultrasounds. None of the Pregnancy Centers themselves perform abortions.

Although the cases on informed consent don't define a "medical procedure," under these facts, the Court is able to identify only two procedures from the list of medical conduct that could possibly anchor an informed consent provision: (i) sonogram/pregnancy test, and (ii) "medical options counseling." The Court considers whether either are qualifying "medical procedures," and, if so, whether the disclosures meet the other qualifications for informed consent.

i) *Ultrasound*

The Pregnancy Centers perform abdominal and transvaginal ultrasounds and conduct pregnancy tests.[13]  In doing so, a woman is "assigned a medical professional," and brought to an ultrasound exam room.  Tr. 361:12–22.   The Court finds these exams to be "medical procedures."  And because it's a qualifying medical procedure, the State has leeway to require informed consent for these procedures.

As applied to the Pregnancy Centers, the disclosure's timing doesn't fit the informed consent definition.  Section 6.1(1) kicks-in *after* the ultrasound procedure.  *See* Section 6.1(1) (the provider must inform the patient of her "condition, prognosis, legal treatment options, and risks and benefits of the treatment options.").[14]  These types of discussions could only occur following a pregnancy determination.  But after the ultrasound the woman is either "free to go," Trial Tr. 97:13–16, or otherwise discusses her pregnancy options with a nurse or patient advocate.  Trial Tr. 155:17–21.  At that point, the Pregnancy Centers don't perform an impending medical procedure, so there's nothing that requires the patient's informed consent.

And it's not just a timing issue.  There's a relationship disconnect.  A prototypical informed consent provision would pertain to the impending procedure's

---

[13] The Court identifies the ultrasound (as opposed to the urine test) as the underlying procedure, because its more invasive nature permits a broader set of disclosures, which in turn maximizes the likelihood that the disclosures are constitutional.

[14] The Plaintiffs contend that the ultrasound doesn't qualify as a medical "diagnosis." But the Court construes it as a diagnostic procedure for these purposes.  It blinks reality to assert that an ultrasound performed at a crisis pregnancy center is not performed to obtain images for medical diagnostic purposes.  *Diagnostic ultrasound*, STEDMAN'S MEDICAL DICTIONARY (28th ed. 2006).

(here an ultrasound) nature, risks, and benefits. To that end, the medical professional might need to inform a woman about the ultrasound's benefits. For example, the medical professional might need to inform the patient that the ultrasound provides an image of the fetus; that it can determine a fetus' age and condition; or that it can identify risky health conditions. And the health care professional might also be compelled to disclose that an ultrasound requires abdominal or vaginal contact; that less invasive procedures, like a urine test, can accomplish some of the same goals; or that an image of a fetus will appear on screen or that the woman may hear certain sounds. That type of information might inform the woman's decision as to whether to undergo the ultrasound procedure.

But the compelled disclosures required by Section 6.1(1) (i.e. the risks and benefits of abortion and childbirth) both occur after the ultrasound and substantively don't relate to that procedure. So, they don't fit within the doctrinal understanding of informed consent statutes.

<div align="center">(ii) <em>Medical Options Counseling</em></div>

The Court next considers whether the Pregnancy Centers' "medical options counseling" could qualify as a medical procedure that could anchor incidental disclosures. The State groups much of the Pregnancy Centers' activities together, terming them "medical options counseling." And the Plaintiffs admit they engage in this type of counseling. Dkt. 282-1 at 16. The Court understands that to essentially mean a discussion regarding pregnancy status (pregnant or not pregnant) and a woman's associated options (if pregnant, then childbirth or abortion). If all of that

<div align="center">36</div>

counseling itself is a "medical procedure," then the State could regulate that conversation under the theory that the discussion is actually conduct. Put simply, the speech itself is treatment, which would be conduct. Under that kind of reading, the Court wouldn't even need to consider whether particular speech was "incidental" or to a procedure, because the procedure necessarily encompasses the speech. Stated differently, according to the State, "medical options counseling" is conduct, not speech.

There's support for this type of reading. (In the near future, the Supreme Court might have something to say about this type of reading.) In *Tingley v. Ferguson*, the Ninth Circuit considered whether conversion therapy[15] constituted conduct or speech. 47 F.4th 1055. The therapist-plaintiff alleged that Washington's ban on the practice violated his free speech rights. But citing its pre-*Becerra* decision in *Pickup v. Brown*, 740 F. 3d 1208 (2014) the Ninth Circuit held that the therapy constituted conduct and therefore didn't implicate the First Amendment's free speech clause. 740 F.3d at 1221. The *Tingley* court reasoned that the therapy wasn't any less of a medical treatment "merely because [the treatment is] implemented through speech rather than conduct." *See also Chiles v. Salazar*, 116 F. 4th 1178, 1203–09 (10th Cir. 2024) (*cert. granted*, No. 24-539, 2025 U.S. LEXIS 1025 (Mar. 10, 2025)) (upholding a district court's preliminary injunction finding talk therapy a "medical treatment," and therefore "conduct.").

---

[15] "Within the field of psychology, conversion therapy is also known as 'reparative therapy' or 'sexual orientation and gender identity change efforts." 47 F.4th at 1064. Conversion therapy employs counseling and psychotherapy.

But not all circuit courts are on board.  The Eleventh Circuit, in *Otto v. City of Boca Raton, Florida*, held that conversion therapy constituted speech.  981 F.3d 854.  States couldn't regulate that speech, the *Otto* court held, by relabeling it "conduct."  *Id.* at 861.  The court recognized that it wasn't "entirely wrong" to characterize speech-based therapy as a "course of conduct."  But the *Otto* court stressed that what the enacting governments called a "medical procedure" actually "consist[ed]—entirely—of words."  *Id.* at 865.  So, the Eleventh Circuit concluded that the First Amendment applied to therapy regulations.

The State says *Otto* doesn't apply.  In its view, *Otto* didn't involve a "physician disclosure law of the kind at issue in *Casey* and *Rokita*, which require[d] providers to disclose certain information in connection with the provision of healthcare services."  NIFLA dkt. 275 at 23.  According to the State, "*Casey* and *Rokita* make clear that giving patients full information to make medical decisions is part of the 'practice of medicine, subject to reasonable licensing and regulation by the state.'"  *Id.* (citing *Casey*, 505 U.S. at 884)).  As explained above, the Court disagrees with the State's reading, because it largely ignores *Becerra* and sidesteps important language in *Rokita*.  The State must either establish that it's solely regulating conduct (without implicating any speech) or otherwise demonstrate that the speech is incidental.  Though *Otto*'s holding doesn't help the State demonstrate that therapy is fully conduct, *Tingley*'s and *Salazar*'s could.

But beyond its appearance in a string cite, the State didn't rely on either case.  Absent further briefing, the Court isn't willing to say categorically whether all

counseling/therapy constitutes speech or conduct. The Court only concludes that the State hasn't persuaded the Court to adopt *Tingley*/*Salazar*'s reasoning over *Otto*'s. So, the Court can't find that the Pregnancy Centers' "medical options counseling" qualifies as a "medical procedure" for purposes of the *Casey*/*Becerra*/*Rokita* doctrine. And because it's not a "procedure," it doesn't trigger an informed consent analysis.[16]

*Non-Informed Consent Analysis*

Concluding that Section 6.1(1) isn't an informed consent provision, the Court considers whether it's nevertheless incidental to some conduct. *Rokita* underscored that a state action need not qualify as an informed consent provision to be "incidental." So, for example, unlike an informed consent statute, compelled speech could follow a procedure or not need to be provided by the rendering physician at all. If the state is regulating a specific course of conduct, it has leeway to implicate directly related speech.

However, stretching *Rokita* too far ultimately reverts to a *Casey*-only world, one in which the state may regulate the amorphous "practice of medicine." *Becerra* limited the universe in which *Casey* applied, barring disclosures even when they appeared in the pregnancy center's waiting room. It's true that the disclosure doesn't have to qualify as an informed consent statute, but there isn't much space between constitutional informed consent provisions and *Becerra*'s unconstitutional compelled

---

[16] The Court applies strict scrutiny, because Section 6.1(1) is content-based, and not incidental to any recognized medical procedure. What's more, Section 6.1(1) isn't entitled to *Zauderer* deference. So, the Court doesn't see a doctrinal avenue to apply something like intermediate scrutiny. However, the Court notes that Section 6.1(1) would fail intermediate scrutiny on fit, for the reasons discussed below.

materials.  The Court finds that Section 6.1(1) doesn't squeeze through that narrow path.

*Rokita* involved a statute regulating the disposal of fetal remains.  To that end, after an abortion, a woman could choose to take possession of the fetus or the provider could dispose of it consistent with the statute.  *Rokita*, 54 F.4th at 519.  So, the provider necessarily had to determine which route the woman wanted to take.  This was a binary decision.  No discussion was required, let alone the thorough discussion the State contends Public Act 99-690 mandates.  What's more, the provider had to speak by asking this question.  It didn't otherwise compel any discussion, such as the provider informing the woman of the risks and benefits of each option.  *Id.*  There was a proximate relationship, both temporally and substantively, between the disclosures in *Rokita* and the medical conduct.[17]  Contrastingly, Section 6.1(1) demands a wide-ranging, hypothetical conversation unrelated to any procedure or other medical conduct.  Indeed, Section 6.1(1) requires a wide-ranging conversation that might be completely divorced from the reality of the situation; for example, the thrilled patient who is not reasonably likely to encounter medical difficulties because of the pregnancy.  What's more, that compelled speech isn't necessary to further future conduct.  Any link under those circumstances is far too attenuated to satisfy *Becerra* or *Rokita*.  Finding Section 6.1(1) not incidental to conduct, the Court must apply strict scrutiny.

---

[17] Similarly, as discussed below, Section 6.1(3) tethers any cognizable speech to specific conduct.

*Strict Scrutiny Analysis*

When a government restricts or requires speech based on content or viewpoint, the government action must survive strict scrutiny analysis. *Reed*, 576 U.S. at 171. Under this standard, the government must prove that the restrictions or required speech not only furthers a compelling interest but also that they do so in a narrowly tailored way to achieve that goal. *Id.* Restrictions that are underinclusive or overinclusive are not narrowly tailored. Indeed, to be narrowly tailored, the action must eliminate "no more than the exact source of the 'evil' it seeks to remedy." *Frisby v. Schultz*, 487 U.S. 474, 485 (1988).

The State argues that it has a compelling interest in ensuring that conscience-based objections don't impair patients' health. *See* 745 ILCS § 70/6.1. To that end, the State asserts, it must demand that patients "receive accurate, timely information about their treatment options necessary to make autonomous medical choices, as well as reliable information about other providers who offer the care they have chosen." NIFLA dkt. 275 at 21. The Plaintiffs argue that's not a compelling interest because there's no evidence patients lack any information. NIFLA dkt. 282 at 13.

 "[T]here can be no doubt," the Supreme Court has said, that "the government 'has an interest in protecting the integrity and ethics of the medical profession.'" *Gonzales v. Carhart*, 550 U.S. 124, 157 (2007) (quoting *Wash. v. Glucksberg*, 521 U.S. 702, 731 (1997) (citing *Barsky v. Bd. of Regents of Univ. of N.Y.*, 347 U.S. 442, 451 (1954) (noting that a state has "a legitimate concern for maintaining high standards of professional conduct")). The Court will assume, without deciding, that the State

41

has a compelling government interest, despite the State's failure to affirmatively produce evidence at trial on this requirement.

But Section 6.1(1) fails strict scrutiny because it's fatally overbroad. Section 6.1(1) requires compliance consistent with the "standard of care." Perhaps it's possible—after the fact—to discern the standard of care in a particular interaction. Those after-the-fact determinations occur continually in civil trials across Illinois. But testimony established that, prospectively, it's essentially indefinable. Indeed, the State admitted that "full explanation of all treatment options and the risks and benefits isn't required by the standard of care in every situation." Trial Tr. 661:17–20. Even assuming that, in some non-medically necessary cases, the "standard of care" would require a benefits discussion, the Pregnancy Centers have little guidance on what those situations look like. So, in every situation they'll either risk potential liability or utter compelled speech without furthering *any* interest. Under strict scrutiny, the State carries the burden of establishing the provision is narrowly tailored; it falls far short in this case.[18] So, Section 6.1(3) unconstitutionally compels speech, and therefore the State can't demand such speech in exchange for a liability shield.

B)      *Section 6.1(3)*

The Plaintiffs also challenge Section 6.1(3) on First Amendment Free Speech grounds. This Section requires covered providers to transfer, refer, or tender, upon

---

[18] Because the Court finds that Section 6.1(1) compels speech even when it furthers no interest, the Court doesn't assess the Plaintiffs' argument that it's also underinclusive because it applies to those with conscience objections.

request, a list of medical providers that they reasonably believe will provide abortion services. The Court ultimately concludes that Section 6.1(3) doesn't implicate speech, so it doesn't violate the Free Speech Clause, either facially or as applied to the Plaintiffs. Section 6.1(3) provides:

> If requested by the patient or the legal representative of the patient, the health care facility, physician, or health care personnel shall: (i) refer the patient to, or (ii) transfer the patient to, or; (iii) provide in writing information to the patient about other health care providers who they reasonably believe may offer the health care service the health care facility, physician, or health personnel refuses to permit, perform, or participate in because of a conscience-based objection.

Whereas Section 6.1(1) requires health care professionals to *say* something to obtain immunity from civil or criminal liability, Section 6.1(3) explains what covered people and entities must *do* to earn immunity after the triggering event occurs: refer, transfer, or provide written information. As discussed more below, those three options are all conduct; none of them cognizably implicate speech.

Nor do the Pregnancy Centers engage in inherently expressive activities. The Court understands that the Plaintiffs run these Pregnancy Centers for the very sake of communicating pro-life messages. But conduct doesn't become expressive merely because the person engaged therein intended to express an idea. *United States v. O'Brien*, 391 U.S. 367, 376 (1968). Juxtapose the line of cases extending First Amendment protections to inherently expressive conduct—such as dancing, flag burning, or web-design—with a doctor referring a patient to physical therapy.

43

Stripped of its controversy, the difference is easy to see. Actions like transfers, referrals, or listing potential alternatives aren't inherently creative processes.

Further, the State grants conscientious objectors three different avenues to immunity. In lieu of referring the patient, a health care provider may "transfer the patient" to another facility or provide information about "other health care providers who they *reasonably believe may* offer" the unavailable service. § 6.1(3)(iii) (emphasis added). Most obviously, the option to transfer a patient doesn't implicate speech.[19]

When viewed through the lens of common sense, the Court has no trouble concluding that Section 6.1(3) doesn't implicate protected First Amendment activities. But, in reaching this holding, the Court also relies on trial testimony, persuasive precedent, analogies, common usage of the terms, and legal and medical dictionaries. The Court first acknowledges the uncontested fact that the State intended for Section 6.1(3) to facilitate the provision of medical services. This provision narrowly applies when a patient expressly asks a medical provider for information regarding potential abortion providers. Stated differently, Section 6.1(3) contains an explicit and mandatory trigger that is directly linked to the action. And even then, the provider need only comply if he intends to use the HCRCA as an affirmative defense.

From this narrow and purposeful drafting, the Court deduces that Section 6.1(3) doesn't target speech. And dictionary definitions compel the same conclusion.

---

[19] The Court gives slightly more attention to the referral option because that's what the Parties emphasized. However, Section 6.1(3) provides *three options*, and all three are conduct.

For example, The National Cancer Institute defines "referral" as an act. *Referral*, *Nat. cancer. Inst.* ("In medicine, the act of sending from one health care provider to another . . . ."). Black's Law Dictionary defines the term similarly as "[t]he act . . . of *sending or directing* to another for information, service, consideration, or decision." *Referral*, Black's Law Dictionary (12th ed. 2024) (emphasis added).

What's more, courts around the country have expressly stated that medical providers engage in pure conduct when writing prescriptions. 360 *Virtual Drone Servs. LLC v. Ritter*, 102 F.4th 263, 274 (4th Cir. 2024); *Kory v. Bonta*, No. 24-cv-00001, 2024 U.S. Dist. LEXIS 73845, *11. As with prescriptions, the "key component" of a medical referral is the provision of treatment. *Kory*, 2024 U.S. Dist. LEXIS 73845, *11 (quoting *Nat'l Ass'n for the Advancement of Psychoanalysis v. Cal. Bd. of Psych.*, 228 F.3d 1043, 1046 (9th Cir. 2000). Prescriptions and referrals are both standard responsibilities among health care providers. They serve clinical—not expressive—goals. Again, contrast the goals of doctors with the goals of dancers. As this analogy shows, referrals aren't protected First Amendment activities.

There's also a trump card for this analysis. The Court finds clear guidance in the Seventh Circuit's decision in *K.C. v. Individual Members of Med. Licensing Bd. of Indiana*, 121 F.4th 604, 629 (7th Cir. 2024). At the heart of *K.C.* were several First Amendment challenges to SEA 480: an Indiana statute banning health care professionals from providing, discussing, or referring minor patients for gender conversion therapy. Indiana and Illinois' referral provisions are two halves of the same whole; one state *restricts* medical referrals for controversial procedures,

45

whereas another state *requires* them. The Seventh Circuit ultimately resolved the First Amendment issues in *K.C.* on other grounds. But, importantly, it reversed the lower court's holding that SEA 480 burdens speech "on its face or in its practical operation." *Id.* (citing *Sorrell v. IMS Health Inc.*, 564 U.S. 552, 567 (2011). To the contrary, the Seventh Circuit suggested that restrictions on referrals are valid regulations of professional conduct. *Id.*

As the *K.C.* court explained, "SEA 480's secondary liability provision burdens speech incidentally because it targets conduct: facilitating the provision of gender transition procedures." *Id.* This logic applies with full force to statutes targeting referrals for any other medical procedure. "After all, in the law, what is sauce for the goose is normally sauce for the gander." *Heffernan v. City of Paterson,* 578 U.S. 266, 273 (2016). The First Amendment certainly doesn't discriminate between topics of protected speech. *Otto*, 981 F.3d at 871 (11th Cir. 2020). So, if SEA 480's heavy restrictions on referrals for controversial medical treatment stand, so can their mirror image. *See id.*

*K.C.* and the additional cited authorities compel the Court's conclusion that medical referrals—and so certainly potential resource lists or transfers—are pure conduct, subject to reasonable state regulation. The Plaintiffs disagree. In their view, Public Act 99-690 is subject to strict scrutiny in its entirety because the practice of medicine necessarily implicates speech. Though it's true a few words are often necessary to carry out a course of conduct, words don't automatically turn the conduct into speech. *Giboney v. Empire Storage & Ice Co.*, 336 U.S. 490, 502 (1949). Consider,

46

for example, the hypothetical in *Schneiderman*, where, by adopting economic regulations, a state incidentally regulates merchants' speech:

> [A New York statute preventing credit card surcharges] is not like a typical price regulation.  Such a regulation—for example, a law requiring all New York delis to charge $10 for their sandwiches—would simply regulate the amount that a store could collect.  In other words, it would regulate the sandwich seller's conduct.  To be sure, in order to actually collect that money, a store would likely have to put "$10" on its menus or have its employees tell customers that price. Those written or oral communications would be speech, and the law—by determining the amount charged—would indirectly dictate the content of that speech.  But the law's effect on speech would be only incidental to its primary effect on conduct, and "it has never been deemed an abridgment of freedom of speech or press to make a course of conduct illegal merely because the conduct was in part initiated, evidenced, or carried out by means of language, either spoken, written, or printed." *Expressions Hair Design v. Schneiderman*, 581 U.S. 37, 47 (2017) (quoting *Giboney v. Empire Storage & Ice Co.*, 336 U.S. 490, 502 (1949)).

Similarly, minimum wage laws don't implicate speech just because they require a supervisor to write a certain number on the check.[20]  In these hypotheticals, as in this case, speech is a means to an end.  Each regulation holds conduct at its core; limitations on employee speech are only a necessary means of enforcing compliance with the central regulatory scheme.  In short, it's not enough to show that Public Act 99-690 implicates the First Amendment broadly.  Given the option of severability, the Plaintiffs must show that this section, standing alone, abridges the

---

[20] Contrastingly, minimum wage laws would implicate the First Amendment if they compelled the supervisor to discuss the benefits and downsides of paying certain salaries. That's the difference between Sections 6.1(1) and Section 6.1(3).

covered health care providers' rights not to speak. They haven't done so. Section 6.1(3) is a wholesale regulation of professional conduct with no cognizable downstream effects on speech.

Even if the Court took the Plaintiffs at their word that Section 6.1(3) incidentally restricts some cognizable amount of speech, this Section would still be constitutional. As explained at length already, *Becerra*, *Rokita*, and its progeny allow states to regulate speech incidental to professional conduct, even beyond drafting informed consent disclosures.[21] *Otto*, 981 F.3d at 865; *360 Virtual Drone Servs. LLC*, 102 F.4th at 273. In this case, the necessary speech—either writing a list or drafting a referral—bears a direct nexus to the underlying conduct that's necessarily effectuated by speaking or writing.

Ironically, though, the impact on speech is also incidental. The State's only goal in regulating things like referrals is to facilitate patients' access to their preferred medical treatment. The State doesn't intend to control the flow of discussion between doctors and patients—nor could it, for that matter.[22] Nothing in the HCRCA restricts the Plaintiffs' rights to express their own opinions, especially now that the Court finds Section 6.1(1) unconstitutional.

---

[21] No doubt, Section 6.1(3) isn't an informed consent requirement. Medical referrals only take place after an ultrasound or options counseling (that is, once the patient has confirmed that she is pregnant and decided what to do about it), and a referral isn't directly linked to either qualifying "procedure." The Court's analysis here essentially duplicates the discussion of Section 6.1(1) as an informed-consent requirement.

[22] Contrastingly, the benefits discussion in Section 6.1(1) wholly regulates the exchange of information between providers and patients. In that scenario, the State takes the drivers' seat in deciding which ideas should factor into a woman's decision to have an abortion. In this one, the State exercises its police powers to facilitate a woman's choice only after she's decided for herself.

The Court understands the Plaintiffs' position that, while complying with Section 6.1(3), they are required to effectively endorse a course of conduct they find morally abhorrent. That's more of a Free Exercise issue, discussed below. But, in any event, if the Plaintiffs are unhappy with this legislation, "the remedy to be applied is more speech." *United States v. Alvarez*, 567 U.S. 709, 727–28 (2012) (quoting Justice Brandeis' concurrence in *Whitney v. California*, 274 U.S. 357, 377 (1927)). When meeting the requirements of Section 6.1(3), covered providers may rearticulate their stance on abortion or explain that their conduct is required by the State. Many will. Section 6.1(3) establishes a floor, not a ceiling, of information that must be provided to patients. So, Section 6.1(3) doesn't offend the Plaintiffs' rights not to speak; it's simply a valid exercise of the State's police powers to improve citizens' access to health care by regulating professional conduct. Consequently, the State may require such conduct in exchange for the HCRCA's liability shield.

**Free Exercise Claim**

Because the Court found Section 6.1(3) constitutional on Free Speech grounds, it now considers the Plaintiffs' contention that this Section violates the Free Exercise Clause. The Court recognizes that the peculiar circumstances presented by the facts, the HCRCA, and Public Act 99-690 put it in uncharted waters. As explained earlier, *supra* Part I(C), Public Act 99-690 arises in a unique statutory scheme; it works alongside the HCRCA to "respect and protect the right of conscience" for all heath care providers. 745 ILCS 70/2. The initial version of the HCRCA (now, almost fifty years old) protects conscientious objectors from all liability resulting from their

"refus[al] to act contrary to their conscience." *Id.*[23] But after collecting evidence—albeit minimal—that the HCRCA was *too strong* of a shield, in 2015, the General Assembly amended the HCRCA via Public Act 99-690. This statutory context guides the following discussion of the Plaintiffs' Free Exercise claims.

The Free Exercise Clause of the First Amendment, as applied to the states through the Fourteenth, provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof . . . ." U.S. Const. amend. I. Again, the Plaintiffs argue that Section 6.1(3) imposes unconstitutional conditions on their receipt of a public benefit. The Parties agree that the Plaintiffs have a sincere religious practice in refraining from facilitating abortions. NIFLA dkt. 275-2 at 4–5. The trial testimony confirmed this agreement beyond doubt. To end the analysis here, however, "would be to make the professed doctrines of religious belief superior to the law of the land, and in effect to permit every citizen to become a law unto himself." *Reynolds v. United States*, 98 U.S. 145, 167 (1878).

The Court has "never held that an individual's religious beliefs excuse him from compliance with an otherwise valid law prohibiting conduct that the State is free to regulate." *Emp. Div., Dep't of Hum. Res. of Oregon v. Smith*, 494 U.S. 872, 879 (1990). Instead, courts determine the appropriate level of scrutiny by asking if a challenged regulation "targets religious conduct for distinctive treatment or advances legitimate governmental interests only against conduct with a religious motivation . . . ." *Church of Lukumi Babalu Aye, Inc. v. City of Hialeah.*, 508 U.S.

---

[23] Note, this part of the HCRCA has remained unchanged since its enactment. *See* P.A. 80-616 § 2; P.A. 90-246 § 5.

520, 531 (1993). Laws that "single out" religious conduct for discriminatory treatment are subject to strict scrutiny. *Espinoza v. Montana Dep't of Revenue*, 591 U.S. 464, 483 (2020) (quoting *Trinity Lutheran Church of Columbia, Inc. v. Comer*, 582 U.S. 449, 479 (2017) (Kagan, J., dissenting) (cleaned up). A "neutral law of general applicability," on the other hand, triggers rationality review, "even if [it has] the incidental effect of burdening a particular religious practice." *Lukumi*, 508 U.S. at 531.

To avoid burying the lede, the State correctly argues that Public Act 99-690 is a neutral law of general applicability. These "interrelated" requirements forbid the government from selectively imposing burdens only on conduct motivated by religious belief—partly by asking whether "the object of the law is to infringe upon or restrict practices because of their religious motivation." *Id.* at 531, 533; *Listecki v. Off. Comm. of Unsecured Creditors*, 780 F.3d 731, 743 (7th Cir. 2015). Public Act 99-690 does no such thing.

Ordinarily, "[t]he minimum requirement of neutrality is that a law not discriminate on its face. A law lacks facial neutrality if it refers to a religious practice without a secular meaning discernable from the language or context." *Lukumi*, 508 U.S. 520, 546 (1993). But, for the reasons already given, Section 6.1(3) doesn't fit neatly into the Free Exercise doctrine. Unlike the "historical instances of religious persecution and intolerance that gave concern to those who drafted the Free Exercise Clause," *Bowen v. Roy*, 476 U.S. 693, 703 (1986), Public Act 99-690 and the HCRCA expand conscientious objectors' rights to the free exercise of religion by immunizing

51

them from liability. This context is important. *See In re Sinclair*, 870 F.2d 1340, 1342 (7th Cir. 1989). "Considering the Act in isolation, as Plaintiffs insist the [C]ourt should, would mean that religious exemptions are a one-way ratchet: once extended, they could never be narrowed or abolished without violating the Free Exercise Clause because religious accommodations are, by their very nature, neither neutral nor generally applicable." NIFLA dkt. 176 at 35.

The Court wholeheartedly agrees with Judge Pallmeyer's discussion "about what law is the proper subject of analysis." *Id.* at 34. As she explained, the proper question is whether Public Act 99-690 *and* the HCRCA subject conscientious objectors to "unequal treatment" by imposing additional burdens on conscientious objectors over secular providers. *Lukumi*, 508 U.S. at 542 (quoting *Hobbie v. Unemployment Appeals Comm'n of Fla.*, 480 U.S. 136, 148 (1987) (Stevens, J., concurring)). Judge Pallmeyer hoped that the statewide "standard of care" may be dispositive; if Public Act 99-690 doesn't impose additional burdens on conscientious objectors, she reasoned, the Amendments must be neutral and generally applicable. NIFLA dkt. 176 at 20. As noted earlier, however, trial testimony made it impossible to prospectively and abstractly establish the standard of care for all providers in all circumstances.[24] *Supra* Part II(B). And, again, that conclusion is unsurprising given

---

[24] Importantly, the Court doesn't decide whether the standards of care do or don't match Section 6.1(3)'s provisions. It's possible that a conscientious objector might fail to comply with Section 6.1(3) and still satisfy the standard of care. As explained more later, the Court only concludes that the Plaintiffs can be called to court to make such a showing, as could anyone else.

that standard of care determinations are specific to the circumstances presented to the health care professional. *See Edelin*, 510 N.E.2d at 962.

So, this Court takes a different route, starting with a hypothetical from before the HCRCA: Two providers—one a conscientious objector and the other secular—both fail to provide a woman with requested information about abortion providers. The conscientious objector refuses because of his sincerely held beliefs. The secular provider doesn't provide the requested information because he's too busy. Both patients sue. Before the HCRCA, both suits could've gone forward, requiring the plaintiff in both cases to show that the health care providers fell below the standard of care.[25] After the HCRCA's enactment, the conscientious objector—but not the secular provider—is wholly protected, regardless of whether the provider's actions fell below the standard of care.

Along comes Public Act 99-690—partially restoring the pre-HCRCA universe. Now, as before, all health care providers are amenable to suit for failure to refer, transfer, or provide written information about potential abortion providers. Relative to each other, the secular provider isn't in any *better* position than before the HCRCA and the conscientious objector isn't any worse for the wear.

---

[25] As Judge Pallmeyer explained, there's no indication that the pre-HCRCA liability regime wasn't neutral and generally applicable. Put differently, absent the HCRCA, it's not necessarily unconstitutional to sue a doctor who didn't meet the standard of care because of her conscientious objection. In any event, the Amendments don't ban any other affirmative defenses.

As this hypothetical shows, the latest Amendments to the HCRCA don't impose additional burdens on conscientious objectors because of their beliefs.[26]  It's true that conscientious objectors can no longer rely on the HCRCA's once-expansive immunity. But as discussed previously, conscientious objectors were never constitutionally entitled to those benefits.  NIFLA dkt. 176 at 35.  The General Assembly was formerly inclined to offer an optional shield and now it isn't.  It's not the Court's place to second-guess the wisdom of that decision.  *Grand Trunk W. Ry. Co. v. Indus. Comm'n*, 291 Ill. 167, 172 (1919).

In a further attempt to bind the General Assembly to its own generosity, the Plaintiffs suggest that the State passed Public Act 99-690 at least partially "because of'" its adverse effect on religious activities.  *Personnel Administrator of Mass. v. Feeney*, 442 U.S. 256, 279, n. 24 (1979).  They don't support that argument with any evidence of legislative malintent.  *Compare Lukumi*, 508 U.S. at 540 (challenged city ordinances were designed to prevent religious activities because city councilmembers viewed the religion as "a sin, 'foolishness,' 'an abomination to the Lord,' and the worship of 'demons'") *with* S.B 1564, 99th Gen. Assemb. 2d Sess. (Ill. 2015) (Public Act 99-690 is designed to ensure that the HCRCA doesn't frustrate women's access to health care).  Even if Public Act 99-690 has discriminatory effects in operation, "[a]dverse impact will not always lead to a finding of impermissible targeting."

---

[26] For the mathematically inclined lawyer (if one exists):  0 [what the two providers had pre-HCRCA] + 1 [what the conscientious objector had after the HCRCA] – 1 [what the provider has after P.A. 99-690] = 0.  So, the two are once again on equal footing.  (In fact, that oversimplifies it because the conscientious objector, unlike the secular provider earns absolute immunity after complying with Section 6.1(3)).

*Lukumi*, 508 U.S. at 535.[27]  "The law's text and history . . . suggest instead that the legislature adopted the changes due to legitimate concerns about patient access to healthcare and not out of a desire to stifle religiously-motivated conduct."  NIFLA dkt. 176 at 38.  So, under the circumstances, Public Act 99-690 is neutral and generally applicable.

Finally, the Plaintiffs urge the Court to apply heightened scrutiny on a "hybrid rights" theory.  NIFLA dkt. 282 at 9–10.  "In *Smith*, the Supreme Court noted that, in cases implicating the Free Exercise Clause in conjunction with other constitutional protections, such as freedom of speech . . . the First Amendment" may require courts to apply strict scrutiny even to neutral, generally applicable laws.  *C.L. for Urb. Believers v. City of Chicago*, 342 F.3d 752, 764 (7th Cir. 2007) (citing *Smith*, 494 U.S. at 881–82).  Though a plaintiff doesn't need to *succeed* on another First Amendment claim, he "does not allege a hybrid rights claim entitled to strict scrutiny analysis merely by combining a free exercise claim with an utterly meritless claim of the violation of another alleged fundamental right."  *Id.* at 765 (quoting *Miller v. Reed*, 176 F.3d 1202, 1207–08 (9th Cir. 1999)).

The doctrine rests on a teetering foundation.  As Judge Pallmeyer noted, it "originates in [*Smith*'s] dictum."  NIFLA dkt. 176 at 36.  And it's "hard" to "justif[y]

---

[27] Likewise, the Plaintiffs didn't produce any evidence that Section 6.1(3) "prohibits religious conduct while permitting secular conduct that undermines the government's asserted interests in a similar way."  *Fulton v. City of Philadelphia, Pennsylvania*, 593 U.S. 522, 534 (2021).  Depending on the standard of care, health care providers may be liable if they unreasonably delay a woman's access to abortion by failing to transfer, refer, or provide her with written information *for any reason.*

the curious [hybrid rights] doctrine," some circuits essentially abandoning it entirely. *Fulton*, 593 U.S. at 599, 604 (2021) (Alito, J., concurring); *see also Henderson v. Kennedy,* 253 F.3d 12, 19 (D.C. Cir. 2001) ("For this argument to prevail, one would have to conclude that although the regulation does not violate the Free Exercise Clause, and although they have no viable First Amendment claim against the regulation, the combination of two untenable claims equals a tenable one. But in law as in mathematics zero plus zero equals zero." (citations omitted.)). "Telling[ly]," the Supreme Court "has never once accepted a 'hybrid rights' claim in the more than three decades since [*Smith*]." *Fulton*, 593 U.S. at 600. The Seventh Circuit similarly rejected hybrid rights theories in the two cases that considered them. *See Ill. Bible Coll. Assoc. v. Anderson*, 631, 641 (7th Cir. 2017); *Civil Liberties*, 342 F.3d at 764–65; *see also Maum Meditation House of Truth v. Lake County, Ill.*, 55 F.3d 1081, 1088 (N.D. Ill. 2014) (rejecting application); *Mahwikizi v. Ctr. for Control & Prevention*, 573 F. Supp. 3d 1245, 1253 (N.D. Ill. 2021) (same).

In any event, the Seventh Circuit seems to follow the Ninth in requiring, at minimum, a summary judgment level showing on the non-Free Exercise claim. *See C.L for Urb. Believers*, 342 F.3d at 765 (rejecting a hybrid rights theory because it "f[oun]d [the other claims] individually lacking the merit necessary to withstand summary judgment"). As to Section 6.1(3), the Plaintiffs' weak Free Speech claims fall short of the summary judgment standard, because the provisions only regulate conduct. The Court found a Free Speech violation in Section 6.1(1), but it severed the sections and assessed the two individually. It won't now resew them with a tenuous

doctrinal thread.  So, the Court doesn't believe the hybrid rights doctrine compels it to apply strict scrutiny to Section 6.1(3).

*Rational Basis Analysis*

Having reached the end of a long front walk, *see Steel Co. v. Citizens for a Better Env't.*, 523 U.S. 83, 102 (1998), the Court finds that Section 6.1(3) triggers (and withstands) rational-basis review.  Under this test, a court "need only find a reasonably conceivable state of facts that could provide a rational basis for the classification." *Ind. Petroleum Marketers & Convenience Store Ass'n v. Cook*, 808 F.3d 318, 322 (7th Cir. 2015); *Lukaszczyk v. Cook Cnty.*, 47 F.4th 587, 602–03 (7th Cir. 2022) (collecting cases).  This isn't an onerous test.  The law comes to court bearing a strong presumption of validity, and the challengers must negate every conceivable basis which might support it.  *Ind. Petroleum Marketers & Convenience Store Ass'n.*, 808 F.3d at 322.

Conceivably, the State has a legitimate interest in facilitating abortions provided by health care professionals to reduce the number of "self-managed abortions" or "self-induced abortions," which are inherently dangerous.  Requiring the Plaintiffs to provide the requested information is a rational means of meeting that goal.  So, Section 6.1(3) doesn't offend the Free Exercise Clause of the First Amendment.

**CONCLUSION**

Based on these findings of fact and conclusions of law, the Court holds that Section 6.1(1) violates the First Amendment's Free Speech Clause, but that Section

6.1(3) is constitutional.  So, the Court grants Plaintiff's request for declaratory and permanent injunctive relief as to Section 6.1(1), finding this provision of Public Act 99-690 is unconstitutional and cannot be enforced.  It denies the Plaintiffs' Motion as to Section 6.1(3).

Entered: April 4, 2025        By:_____

                                             Iain D. Johnston
                                             United States District Judge

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### WESTERN DIVISION

| | |
|---|---|
| Ronald L. Schroeder, et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) No. 17 CV 4663 |
| | ) |
| Mario Treto Jr., | ) |
| | ) |
| Defendant. | ) |

## RULE 58 JUDGEMENT ORDER

The Court enters judgment in favor of Ronald L. Schroeder, 1st Way Pregnancy Support Services, and Pregnancy Aid South Suburbs, granting declaratory relief against Mario Treto, Jr., in his official capacity, that Section 6.1(1) of the Health Care Right of Conscience Act (created by P.A. 99-690), 745 ILCS 70/6.1(1), violates the First Amendment's Freedom of Speech Clause and permanently enjoining enforcement of Section 6.1(1) by Mario Treto, Jr. in his official capacity, and his officers, agents, servants, employees, and attorneys, and others who are in active concert or participation with any of these individuals.

The Court denies all other relief.

Entered: __4/4/2025_____          By:_____
                                          Iain D. Johnston
                                          U.S. District Judge

APPEAL,CASREF,INTERDIST - TRANSF,PROTO,SCHNEIDER,TERMED

# United States District Court
## Northern District of Illinois - CM/ECF NextGen 1.8 (rev. 1.8.3) (Chicago)
## CIVIL DOCKET FOR CASE #: 1:17-cv-04663
## Internal Use Only

| | |
|---|---|
| Schroeder et al v. Treto, Jr. | Date Filed: 06/21/2017 |
| Assigned to: Honorable Iain D. Johnston | Date Terminated: 04/04/2025 |
| Referred to: Honorable Margaret J. Schneider | Jury Demand: Plaintiff |
| Case in other court: Illinois Central, 3:17-cv-03076 | Nature of Suit: 440 Civil Rights: Other |
| Cause: 28:1331 Federal Question: Other Civil Rights | Jurisdiction: Federal Question |

**Plaintiff**

**Ronald L Schroeder**
*Doctor*

represented by **Patrick T. Gillen**
Patrick T. Gillen
1581 Oakes Blvd
Naples, FL 34119
(734) 355-4728
Fax: Pro Hac Vice
Email: ptg.gillen@gmail.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Peter Christopher Breen**
Thomas More Society
309 W Washington St Ste 1250
Chicago, IL 60606
312 782 1680
Fax: Active
Email: pbreen@thomasmoresociety.org
*ATTORNEY TO BE NOTICED*

**Thomas Gerald Olp**
Thomas More Society
309 West Washington Street, Suite 1250
Chicago, IL 60606
3127821680
Fax: Active
Email: tomolp@gmail.com
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**1st Way Pregnancy Support Services**

represented by **Patrick T. Gillen**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Peter Christopher Breen**
(See above for address)
*ATTORNEY TO BE NOTICED*

Thomas Gerald Olp
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Pregnancy Aid South Suburbs**                represented by    **Patrick T. Gillen**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Peter Christopher Breen**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Thomas Gerald Olp**
(See above for address)
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Bruce Rauner**                               represented by    **Sarah Hughes Newman**
*Governor of Illinois*                                          Illinois Attorney General's Office
*TERMINATED: 10/27/2017*                                       115 S. LaSalle Street
Ste 27th Floor
Chicago, IL 60603
312-814-6131
Fax: 312-814-4425
Email: sarah.newman@ilag.gov
*TERMINATED: 04/09/2019*
*LEAD ATTORNEY*

**Michael T. Dierkes**
Illinois Attorney General's Office
115 S. LaSalle Street
Ste 27th Floor
Chicago, IL 60603
312-814-3672
Email: michael.dierkes@ilag.gov
*TERMINATED: 04/09/2019*

**Defendant**

**Mario Treto, Jr.**                           represented by    **Karyn L Bass Ehler**
Office of the Illinois Attorney General
100 W. Randolph Street
12th Floor
Chicago, IL 60601
312-814-3000
Fax: Active
Email: Karyn.BassEhler@ilag.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Keri L Holleb Hotaling**
Office of the Comptroller of the Currency
400 7th Street SW
Mailstop 9E-1
Washington, DC 20219
312-814-5352
Fax: Active
Email: Keri.HollebHotaling@ilag.gov
*TERMINATED: 08/01/2023*
*LEAD ATTORNEY*

**Sarah Hughes Newman**
(See above for address)
*TERMINATED: 04/09/2019*
*LEAD ATTORNEY*

**Christopher Graham Wells**
Illinois Attorney General's Office
Chief, Public Interest Division
115 S. LaSalle St.
Chicago, IL 60603
312-814-1134
Email: christopher.wells@ilag.gov
*ATTORNEY TO BE NOTICED*

**Elizabeth A.F. Morris**
Office of the Illinois Attorney General
100 W. Randolph St.
Chicago, IL 60601
773-590-7965
Fax: Not a member
Email: elizabeth.morris@ilag.gov
*ATTORNEY TO BE NOTICED*

**Hannah Yeon Mee Jurowicz**
Office of the Illinois Attorney General
100 West Randolph
11th Floor
Chicago, IL 60601
(312) 814-4720
Fax: Not a member
Email: H.GroschJurowicz@ilag.gov
*ATTORNEY TO BE NOTICED*

**John Thomas Hazinski**
Illinois Attorney General's Office
Illinois
115 S. LaSalle St.
Chicago, IL 60603
312-814-3000
Email: john.hazinski@ilag.gov
*ATTORNEY TO BE NOTICED*

**Kathryn Hunt Muse**
Illinois Department of Healthcare and
Family Services
Office of General Counsel
401 S. Clinton St.
Ste 6th Floor
Chicago, IL 60607
312-835-0336
Email: Kathryn.Muse@ilag.gov
*TERMINATED: 11/25/2024*

**Lauren Hancock Barski**
Illinois Attorney General's Office
100 W. Randolph Street
11th Floor
Chicago, IL 60601
(312) 814-3422
Fax: Not a member
Email: Lauren.Barski@ilag.gov
*TERMINATED: 09/09/2021*

**Matthew Vincent Chimienti**
Illinois Attorney General
100 W. Randolph Street
11th Floor
Chicago, IL 60601
(312) 814-8570
Fax: Not a member
Email: matthew.chimienti@ilag.gov
*TERMINATED: 09/09/2022*

**Michael T. Dierkes**
(See above for address)
*TERMINATED: 04/09/2019*

**Sarah Jeanne Gallo**
Illinois Office of the Attorney General
100 W. Randolph
Chicago, IL 60601
312-814-8309
Fax: Not a member
Email: sarah.gallo@ilag.gov
*ATTORNEY TO BE NOTICED*

**Defendant**

| | | |
|---|---|---|
| **Thomas Price**<br>*Secretaryof Health and Human Services*<br>*TERMINATED: 09/07/2017* | represented by | **Joshua I. Grant**<br>United States Attorney's Office<br>318 South Sixth Street<br>Springfield, IL 62701<br>217 492 4450<br>Fax: Active<br>Email: joshua.grant@usdoj.gov<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED* |

Michael Hendry Baer
United States Department of Justice, Civil
Division, Federal
20 Massachusetts Ave. NW
Washington, DC 20530
(202) 305-8573
Fax: US Govt Attorney
Email: michael.h.baer@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Monica V Mallory**
Rockford, IL 61101
*TERMINATED: 07/12/2019*

**Defendant**

**Sean Cavanaugh**                              represented by   **Joshua I. Grant**
*Acting Director of Centers for Medicare and*                   (See above for address)
*Medicaid Services*                                             *LEAD ATTORNEY*
*TERMINATED: 09/07/2017*                                        *ATTORNEY TO BE NOTICED*

                                                                **Michael Hendry Baer**
                                                                (See above for address)
                                                                *LEAD ATTORNEY*
                                                                *ATTORNEY TO BE NOTICED*

                                                                **Monica V Mallory**
                                                                (See above for address)
                                                                *TERMINATED: 07/12/2019*

**Amicus**

**American College of Obstetricians and**       represented by   **Rebecca Kim Glenberg**
**Gynecologists**                                               Roger Baldwin Foundation of ACLU, Inc.
                                                                150 N. Michigan Ave.
                                                                Ste. 600
                                                                Chicago, IL 60601
                                                                (312) 201-9740
                                                                Fax: Active
                                                                Email: rglenberg@aclu-il.org
                                                                *LEAD ATTORNEY*
                                                                *ATTORNEY TO BE NOTICED*

                                                                **Ameri Rose Klafeta**
                                                                1126 North Kenilworth
                                                                Oak Park, IL 60302
                                                                312-307-2765
                                                                Email: aklafeta@gmail.com
                                                                *ATTORNEY TO BE NOTICED*

                                                                **Emily Werth**
                                                                Roger Baldwin Foundation of ACLU, Inc.
                                                                150 N. Michigan Ave.
                                                                Suite 600

Chicago, IL 60601
(312) 201-9740 ext. 333
Fax: Not a member
Email: ewerth@aclu-il.org
*ATTORNEY TO BE NOTICED*

**Jenna Grace Prochaska**
Roger Baldwin Foundation of ACLU, Inc.
150 N Michigan Ave
Ste 600
Chicago, IL 60601
(312) 201-9740
Fax: Not a member
Email: jprochaska@aclu-il.org
*TERMINATED: 06/04/2019*

**Lorie Ann Chaiten**
American Civil Liberties Union
1640 North Sedgwick
Chicago, IL 60614
312-307-8027
Email: lchaiten@aclu.org
*TERMINATED: 06/04/2019*

**Mason B. Strand**
Roger Baldwin Foundation Of Aclu, Inc.
150 N. Michigan Ave.
Ste. 600
Chicago, IL 60601
(312) 201-9740
Fax: Not a member
Email: mstrand@aclu-il.org
*ATTORNEY TO BE NOTICED*

**Amicus**

**Illinois Academy of Family Physicians**    represented by   **Rebecca Kim Glenberg**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Ameri Rose Klafeta**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Jenna Grace Prochaska**
(See above for address)
*TERMINATED: 06/04/2019*

**Lorie Ann Chaiten**
(See above for address)
*TERMINATED: 06/04/2019*

**Amicus**

**Dr. Julie Chor**

represented by **Rebecca Kim Glenberg**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Ameri Rose Klafeta**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Jenna Grace Prochaska**
(See above for address)
*TERMINATED: 06/04/2019*

**Lorie Ann Chaiten**
(See above for address)
*TERMINATED: 06/04/2019*

**Amicus**

**Dr. AuTumn Davidson**

represented by **Rebecca Kim Glenberg**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Ameri Rose Klafeta**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Jenna Grace Prochaska**
(See above for address)
*TERMINATED: 06/04/2019*

**Lorie Ann Chaiten**
(See above for address)
*TERMINATED: 06/04/2019*

**Amicus**

**Dr. Sabrina Holmquist**

represented by **Rebecca Kim Glenberg**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Ameri Rose Klafeta**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Jenna Grace Prochaska**
(See above for address)
*TERMINATED: 06/04/2019*

**Lorie Ann Chaiten**
(See above for address)
*TERMINATED: 06/04/2019*

**Amicus**

**Dr. Scott Moses**                                  represented by **Rebecca Kim Glenberg**
                                                     (See above for address)
                                                     *LEAD ATTORNEY*
                                                     *ATTORNEY TO BE NOTICED*

                                                     **Ameri Rose Klafeta**
                                                     (See above for address)
                                                     *ATTORNEY TO BE NOTICED*

                                                     **Jenna Grace Prochaska**
                                                     (See above for address)
                                                     *TERMINATED: 06/04/2019*

                                                     **Lorie Ann Chaiten**
                                                     (See above for address)
                                                     *TERMINATED: 06/04/2019*

**Amicus**

**Dr. Maura Quinlan**                                represented by **Rebecca Kim Glenberg**
                                                     (See above for address)
                                                     *LEAD ATTORNEY*
                                                     *ATTORNEY TO BE NOTICED*

                                                     **Ameri Rose Klafeta**
                                                     (See above for address)
                                                     *ATTORNEY TO BE NOTICED*

                                                     **Jenna Grace Prochaska**
                                                     (See above for address)
                                                     *TERMINATED: 06/04/2019*

                                                     **Lorie Ann Chaiten**
                                                     (See above for address)
                                                     *TERMINATED: 06/04/2019*

**Amicus**

**Dr. Elizabeth Salisbury-Afshar**                  represented by **Rebecca Kim Glenberg**
                                                     (See above for address)
                                                     *LEAD ATTORNEY*
                                                     *ATTORNEY TO BE NOTICED*

                                                     **Ameri Rose Klafeta**
                                                     (See above for address)
                                                     *ATTORNEY TO BE NOTICED*

                                                     **Jenna Grace Prochaska**
                                                     (See above for address)
                                                     *TERMINATED: 06/04/2019*

                                                     **Lorie Ann Chaiten**
                                                     (See above for address)
                                                     *TERMINATED: 06/04/2019*

**Amicus**

**Dr. Debra Stulberg**

represented by **Rebecca Kim Glenberg**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Ameri Rose Klafeta**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Jenna Grace Prochaska**
(See above for address)
*TERMINATED: 06/04/2019*

**Lorie Ann Chaiten**
(See above for address)
*TERMINATED: 06/04/2019*

<u>Amicus</u>
**Dr. Tabatha Wells**

represented by **Rebecca Kim Glenberg**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Ameri Rose Klafeta**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Jenna Grace Prochaska**
(See above for address)
*TERMINATED: 06/04/2019*

**Lorie Ann Chaiten**
(See above for address)
*TERMINATED: 06/04/2019*

<u>Amicus</u>
**Dr. Santina Wheat**

represented by **Rebecca Kim Glenberg**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Ameri Rose Klafeta**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Jenna Grace Prochaska**
(See above for address)
*TERMINATED: 06/04/2019*

**Lorie Ann Chaiten**
(See above for address)
*TERMINATED: 06/04/2019*

<u>Amicus</u>

| | | |
|---|---|---|
| **Physicians for Reproductive Health** | represented by | **Leah Rachel Bruno**<br>Dentons US LLP<br>233 South Wacker Drive<br>Suite 5900<br>Chicago, IL 60606<br>(312)876-8000<br>Fax: Active<br>Email: leah.bruno@dentons.com<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED*<br><br>**Jacqueline A, Giannini**<br>Dentons Us Llp<br>233 South Wacker Drive<br>Suite 5900<br>Chicago, IL 60606<br>(312) 876-8000<br>Fax: Not a member<br>Email: jacqui.giannini@dentons.com<br>*ATTORNEY TO BE NOTICED*<br><br>**Joanne Caceres**<br>Dentons US LLP<br>233 South Wacker Drive<br>Suite 5900<br>Chicago, IL 60606<br>6177500858<br>Fax: Not a member<br>Email: joanne.caceres@dentons.com<br>*ATTORNEY TO BE NOTICED* |

| Date Filed | # | Docket Text |
|---|---|---|
| 03/16/2017 | 🌐1 | COMPLAINT against All Defendants (Filing fee $ 400.), filed by Ronald L Schroeder, Pregnancy Aid South Suburbs, 1st Way Pregnancy Support Services. (Attachments: # 1 Civil Cover Sheet)(Olp, Thomas) [Transferred from Illinois Central on 6/21/2017.] (Entered: 03/16/2017) |
| 03/16/2017 | 🌐2 | MOTION for Preliminary Injunction by Plaintiffs 1st Way Pregnancy Support Services, Pregnancy Aid South Suburbs, Ronald L Schroeder. Responses due by 3/30/2017 (Olp, Thomas) [Transferred from Illinois Central on 6/21/2017.] (Entered: 03/16/2017) |
| 03/16/2017 | 🌐3 | MEMORANDUM IN SUPPORT of Motion for Preliminary Injunction by Plaintiffs 1st Way Pregnancy Support Services, Pregnancy Aid South Suburbs, Ronald L Schroeder. Responses due by 3/30/2017 (Attachments: # 1 Exhibit Declaration of Ronald L. Schroeder, # 2 Exhibit Declaration of Judy Cocks, # 3 Exhibit Declaration of Tim Dilbeck)(Olp, Thomas) Modified to change event type per LC 39 on 3/22/2017 (GL, ilcd). (Attachment 1 replaced on 6/1/2017) (GL, ilcd). [Transferred from Illinois Central on 6/21/2017.] (Entered: 03/16/2017) |
| 03/20/2017 | 🔒🌐 | (Court only) *** QC completed; case flags added; party information updated. (GL, ilcd) [Transferred from Illinois Central on 6/21/2017.] (Entered: 03/20/2017) |

| 03/22/2017 | 🔒 🌐 | (Court only) ***Motion terminated 3 when event type changed to Memorandum in Support as per LC 39. (GL, ilcd) [Transferred from Illinois Central on 6/21/2017.] (Entered: 03/22/2017) |
|---|---|---|
| 03/22/2017 | 🔒 🌐 4 | Summons Issued as to All Defendants. Originals returned to Attorney Thomas Olp to effectuate service. (GL, ilcd) [Transferred from Illinois Central on 6/21/2017.] (Entered: 03/22/2017) |
| 03/30/2017 | 🌐 5 | NOTICE of Appearance of Attorney by Sarah Hughes Newman on behalf of Bruce Rauner, Bryan A Schneider (Newman, Sarah) [Transferred from Illinois Central on 6/21/2017.] (Entered: 03/30/2017) |
| 04/06/2017 | 🌐 6 | MOTION for Extension of Time to File Answer *or Otherwise Plead (Unopposed)*, MOTION for Extension of Time to File Response/Reply *to Plaintiffs' Motion for Preliminary Injunction (Unopposed)* by Defendants Bruce Rauner, Bryan A Schneider. Responses due by 4/20/2017 (Newman, Sarah) [Transferred from Illinois Central on 6/21/2017.] (Entered: 04/06/2017) |
| 04/07/2017 | 🌐 | TEXT ORDER: Defendants Bruce Rauner, Governor of Illinois, and Bryan A. Schneider, Secretary of the Illinois Department of Financial & Professional Regulation, have filed an Unopposed Motion for Extension of Time to Answer or Otherwise Plead 6 . Defendants have conferred with Plaintiffs' counsel, who states that Plaintiffs have no objection to the motion. Defendants' Motion for Extension of Time to Answer or Otherwise Plead 6 is GRANTED. Defendants Bruce Rauner, Governor of Illinois, and Bryan A. Schneider, Secretary of the Illinois Department of Financial & Professional Regulation, are DIRECTED to answer or otherwise respond to Plaintiffs' Complaint for Declaratory and Injunctive Relief 1 and to respond to Plaintiffs' Motion for Preliminary Injunction Under Fed. R. Civ. P. 65(a) 2 by Friday, May 19, 2017. Entered by Judge Sue E. Myerscough on 4/7/2017. (GL, ilcd) [Transferred from Illinois Central on 6/21/2017.] (Entered: 04/07/2017) |
| 05/16/2017 | 🌐 7 | NOTICE of Appearance of Attorney by Joshua I Grant on behalf of Sean Cavanaugh, Thomas Price (Grant, Joshua) [Transferred from Illinois Central on 6/21/2017.] (Entered: 05/16/2017) |
| 05/16/2017 | 🌐 8 | MOTION for Extension of Time to File Response/Reply as to 1 Complaint by Defendants Sean Cavanaugh, Thomas Price. Responses due by 5/30/2017 (Grant, Joshua) [Transferred from Illinois Central on 6/21/2017.] (Entered: 05/16/2017) |
| 05/17/2017 | 🌐 | TEXT ORDER: Defendants Thomas E. Price, Secretary of Health and Human Services, and Sean Cavanaugh, Acting Director of the Centers for Medicare and Medicaid Services, have filed a Motion for Extension of Time 8 . Defendants need additional time to review Plaintiffs' Complaint for Declaratory and Injunctive Relief 1 and to determine whether they are properly joined under Rule 19 of the Federal Rules of Civil Procedure. Defendants have conferred with Plaintiffs' counsel and counsel for Defendants Bruce Rauner, Governor of Illinois, and Bryan A. Schneider, Secretary of the Illinois Department of Financial and Professional Regulation, who have no objections to the motion. Defendants' Motion for Extension of Time 8 is GRANTED. Defendants Thomas E. Price, Secretary of Health and Human Services, and Sean Cavanaugh, Acting Director of the Centers for Medicare and Medicaid Services, are DIRECTED to answer or otherwise respond to Plaintiffs' Complaint for Declaratory and Injunctive Relief 1 by Friday, July 7, 2017. Entered by Judge Sue E. Myerscough on 5/17/2017. (GL, ilcd) [Transferred from Illinois Central on 6/21/2017.] (Entered: 05/17/2017) |
| 05/17/2017 | 🌐 9 | NOTICE of Appearance of Attorney by Lorie Ann Chaiten on behalf of American College of Obstetricians and Gynecologists, Illinois Academy of Family |

| | | Physicians, Julie Chor, AuTumn Davidson, Sabrina Holmquist, Scott Moses, Maura Quinlan, Elizabeth Salisbury-Afshar, Debra Stulberg, Tabatha Wells, Santina Wheat (Chaiten, Lorie) [Transferred from Illinois Central on 6/21/2017.] (Entered: 05/17/2017) |
|---|---|---|
| 05/17/2017 | 🌐 10 | NOTICE of Appearance of Attorney by Jenna Grace Prochaska on behalf of American College of Obstetricians and Gynecologists, Julie Chor, AuTumn Davidson, Sabrina Holmquist, Illinois Academy of Family Physicians, Scott Moses, Maura Quinlan, Elizabeth Salisbury-Afshar, Debra Stulberg, Tabatha Wells, Santina Wheat (Prochaska, Jenna) [Transferred from Illinois Central on 6/21/2017.] (Entered: 05/17/2017) |
| 05/17/2017 | 🌐 11 | MOTION for Leave to File *Brief of Amici Curiae (Uncontested)* by Amicus Parties American College of Obstetricians and Gynecologists, Julie Chor, AuTumn Davidson, Sabrina Holmquist, Illinois Academy of Family Physicians, Scott Moses, Maura Quinlan, Elizabeth Salisbury-Afshar, Debra Stulberg, Tabatha Wells, Santina Wheat. Responses due by 5/31/2017 (Attachments: # 1 Exhibit Proposed Brief of Amici Curiae, # 2 Text of Proposed Order)(Chaiten, Lorie) [Transferred from Illinois Central on 6/21/2017.] (Entered: 05/17/2017) |
| 05/17/2017 | 🌐 12 | CERTIFICATE OF INTEREST pursuant to Local Rule 11.3 by American College of Obstetricians and Gynecologists, Julie Chor, AuTumn Davidson, Sabrina Holmquist, Illinois Academy of Family Physicians, Scott Moses, Maura Quinlan, Elizabeth Salisbury-Afshar, Debra Stulberg, Tabatha Wells, Santina Wheat. (Chaiten, Lorie) [Transferred from Illinois Central on 6/21/2017.] (Entered: 05/17/2017) |
| 05/19/2017 | 🌐 13 | NOTICE of Appearance of Attorney by Leah R Bruno on behalf of Physicians for Reproductive Health (Bruno, Leah) [Transferred from Illinois Central on 6/21/2017.] (Entered: 05/19/2017) |
| 05/19/2017 | 🌐 14 | MOTION for Leave to File *Brief of Amicus Curiae with Consent of Parties in Opposition to Plaintiffs Motion for Preliminary Injunction* by Amicus Physicians for Reproductive Health. Responses due by 6/2/2017 (Attachments: # 1 Exhibit A - Brief of Amicus Curiae, # 2 Text of Proposed Order)(Bruno, Leah) [Transferred from Illinois Central on 6/21/2017.] (Entered: 05/19/2017) |
| 05/19/2017 | 🌐 15 | CERTIFICATE OF INTEREST pursuant to Local Rule 11.3 by Physicians for Reproductive Health. (Bruno, Leah) [Transferred from Illinois Central on 6/21/2017.] (Entered: 05/19/2017) |
| 05/19/2017 | 🌐 16 | MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM by Defendants Bruce Rauner, Bryan A Schneider. Responses due by 6/2/2017 (Newman, Sarah) [Transferred from Illinois Central on 6/21/2017.] (Entered: 05/19/2017) |
| 05/19/2017 | 🌐 17 | MOTION for Leave to File Excess Pages *(Unopposed)* by Defendants Bruce Rauner, Bryan A Schneider. Responses due by 6/2/2017 (Attachments: # 1 Exhibit A, Proposed brief and exhibits)(Newman, Sarah) [Transferred from Illinois Central on 6/21/2017.] (Entered: 05/19/2017) |
| 05/19/2017 | 🌐 18 | MOTION to Transfer Case *Pursuant to 28 U.S.C. Sec. 1404(a)* by Defendants Bruce Rauner, Bryan A Schneider. Responses due by 6/2/2017 (Newman, Sarah) [Transferred from Illinois Central on 6/21/2017.] (Entered: 05/19/2017) |
| 05/19/2017 | 🌐 19 | MEMORANDUM in Support re 18 MOTION to Transfer Case *Pursuant to 28 U.S.C. Sec. 1404(a)* filed by Defendants Bruce Rauner, Bryan A Schneider. (Attachments: # 1 Exhibit A, Complaint in National Institute of Family and Life |

| | | |
|---|---|---|
| | | Advocates v. Bruce Rauner, et al., No. 16 C 50310 (N.D. Ill.))(Newman, Sarah) [Transferred from Illinois Central on 6/21/2017.] (Entered: 05/19/2017) |
| 05/30/2017 | 🌐20 | MOTION for Extension of Time to File Response/Reply as to 17 MOTION for Leave to File Excess Pages *(Unopposed)*, 16 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM , MOTION for Leave to File Excess Pages by Plaintiff 1st Way Pregnancy Support Services. Responses due by 6/13/2017 (Attachments: # 1 Errata Corrected Declaration of Dr. Ronald L. Schroeder, # 2 Text of Proposed Order Proposed Agreed Order Regarding Scheduling and Related Matters)(Olp, Thomas) [Transferred from Illinois Central on 6/21/2017.] (Entered: 05/30/2017) |
| 05/31/2017 | 🌐 | TEXT ORDER: Defendants Bruce Rauner, Governor of Illinois, and Bryan A. Schneider, Secretary of the Illinois Department of Financial and Professional Regulation, have filed an Unopposed Motion for Leave to File Overlength Brief 17 . Because Defendants have prepared one memorandum of law to support their Motion to Dismiss Plaintiffs Complaint 16 and address Plaintiffs' Motion for Preliminary Injunction Under Fed. R. Civ. P. 65(a) 2 , Defendants request leave to file a memorandum of law in excess of 15 pages. Defendants have conferred with Plaintiffs' counsel and counsel for Defendants Thomas E. Price, Secretary of Health and Human Services, and Sean Cavanaugh, Acting Director of the Centers for Medicare and Medicaid Services, who have no objections to the motion. Defendants' Unopposed Motion for Leave to File Overlength Brief 17 is GRANTED. The Clerk is DIRECTED to file Defendants' Combined Memorandum of Law in Support of Their Motion to Dismiss Plaintiffs' Complaint and in Response to Plaintiffs' Motion for Preliminary Injunction [17-1]. Entered by Judge Sue E. Myerscough on 5/31/2017. (GL, ilcd) [Transferred from Illinois Central on 6/21/2017.] (Entered: 05/31/2017) |
| 05/31/2017 | 🌐21 | The State Defendants' Combined Memorandum of Law in Support of Their Motion to Dismiss Plaintiffs' Complaint and in Response to Plaintiffs' Motion for Preliminary Injunction filed by Defendants Bruce Rauner, Bryan A Schneider. (GL, ilcd) [Transferred from Illinois Central on 6/21/2017.] (Entered: 05/31/2017) |
| 05/31/2017 | 🌐 | TEXT ORDER: The parties have filed an Agreed Motion Regarding Scheduling and Related Matters 20 . The parties have no objections to the requests made by the other parties in the motion. The parties' Agreed Motion Regarding Scheduling and Related Matters 20 is GRANTED IN PART and DENIED IN PART. Plaintiffs are DIRECTED to respond to the Motion to Dismiss Plaintiffs' Complaint 16 and the Motion to Transfer Pursuant to 28 U.S.C. § 1404(a) 18 by Monday, June 19, 2017. Plaintiffs may file a memorandum of law that consists of up to 36 pages and includes a reply in support of Plaintiffs' Motion for Preliminary Injunction Under Fed. R. Civ. P. 65(a) 2 . Defendants Thomas E. Price, Secretary of Health and Human Services, and Sean Cavanaugh, Acting Director of the Centers for Medicare and Medicaid Services, may respond to the Motion to Transfer by Monday, June 19, 2017. Defendants Bruce Rauner, Governor of Illinois, and Bryan A. Schneider, Secretary of the Illinois Department of Financial and Professional Regulation, may file a 10-page reply in support of their Motion to Dismiss and a 5-page reply in support of their Motion to Transfer by Friday, June 30, 2017. The Clerk is DIRECTED to replace the Affidavit of Dr. Ronald L. Schroeder attached to the Motion for Preliminary Injunction [3-1] with the Affidavit of Dr. Ronald L. Schroeder attached to the Agreed Motion Regarding Scheduling and Related Matters [20-1]. Plaintiffs' request for oral argument on their Motion for Preliminary Injunction is DENIED. Plaintiffs may re-request oral argument on the motion, if necessary, after the Court rules on the Motion to Transfer. Entered by |

| | | Judge Sue E. Myerscough on 5/31/2017. (GL, ilcd) [Transferred from Illinois Central on 6/21/2017.] (Entered: 05/31/2017) |
|---|---|---|
| 06/19/2017 | 🌐 22 | RESPONSE to Motion re 18 MOTION to Transfer Case *Pursuant to 28 U.S.C. Sec. 1404(a)* filed by Defendant Thomas Price. (Attachments: # 1 Exhibits A-G) (Grant, Joshua) [Transferred from Illinois Central on 6/21/2017.] (Entered: 06/19/2017) |
| 06/19/2017 | 🌐 23 | MOTION for Extension of Time by Defendants Sean Cavanaugh, Thomas Price. Responses due by 7/3/2017 (Grant, Joshua) [Transferred from Illinois Central on 6/21/2017.] (Entered: 06/19/2017) |
| 06/19/2017 | 🌐 24 | RESPONSE to Motion re 18 MOTION to Transfer Case *Pursuant to 28 U.S.C. Sec. 1404(a)* filed by Plaintiffs 1st Way Pregnancy Support Services, Pregnancy Aid South Suburbs, Ronald L Schroeder. (Olp, Thomas) [Transferred from Illinois Central on 6/21/2017.] (Entered: 06/19/2017) |
| 06/19/2017 | 🌐 25 | REPLY to Response to Motion re 2 MOTION for Preliminary Injunction , 16 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM filed by Plaintiffs 1st Way Pregnancy Support Services, Pregnancy Aid South Suburbs, Ronald L Schroeder. (Attachments: # 1 Affidavit Affidavits of Judy Cocks, Tim Dilbeck, Trudy Bodenbach, # 2 Affidavit Affidavit of Donna Harrison MD)(Olp, Thomas) [Transferred from Illinois Central on 6/21/2017.] (Entered: 06/19/2017) |
| 06/20/2017 | 🌐 26 | REPLY to Response to Motion re 18 MOTION to Transfer Case *Pursuant to 28 U.S.C. Sec. 1404(a) to the Northern District of Illinois, Western Division* filed by Defendants Bruce Rauner, Bryan A Schneider. (Newman, Sarah) [Transferred from Illinois Central on 6/21/2017.] (Entered: 06/20/2017) |
| 06/21/2017 | 🌐 | TEXT ORDER: Defendants Bruce Rauner, Governor of Illinois, and Bryan A. Schneider, Secretary of the Illinois Department of Financial and Professional Regulation, have filed a Motion to Transfer Pursuant to 28 U.S.C. § 1404(a) 18 . Defendants seek to have this case transferred to the Northern District of Illinois because a substantially similar case--National Institute of Family and Life Advocates et al. v. Rauner et al., Case No. 16-cv-50310 (N.D. Ill.)--is pending there. Defendants Thomas E. Price, Secretary of Health and Human Services, and Seema Verma, Director of the Centers for Medicare and Medicaid Services, have filed a Response to the State Defendants' Motion to Transfer 22 , in which they join in the motion to transfer. Plaintiffs have filed a Response to the Motion to Transfer 24 , in which they state that they have no objection to the motion. This Court, "[f]or the convenience of parties and witnesses, in the interest of justice," may transfer this case "to any district or division to which all parties have consented." 28 U.S.C. 1404(a). Given the time and resources that will be conserved by having one district decide the issues in the two substantially similar cases, the Court finds that it is in the interest of justice that this case be transferred to the Northern District of Illinois, a district all parties have consented to. Defendants' Motion to Transfer Pursuant to 28 U.S.C. § 1404(a) 18 is GRANTED. The Clerk is DIRECTED to transfer this case to the Western Division of the Northern District of Illinois. Entered by Judge Sue E. Myerscough on 6/21/2017. (GL, ilcd) [Transferred from Illinois Central on 6/21/2017.] (Entered: 06/21/2017) |
| 06/21/2017 | 🔒 🌐 | (Court only) *** Set/Clear Flags: Transfer flag set. (GL, ilcd) [Transferred from Illinois Central on 6/21/2017.] (Entered: 06/21/2017) |
| 06/21/2017 | 🔒 🌐 27 | RECEIVED from Illinois Central; Case Number 3:17-cv-03076 (jjr) (Entered: 06/21/2017) |

| 06/21/2017 | 🌐28 | MAILED Rule 83.15 Letter to all Counsel of Record. (jjr, ) (Entered: 06/21/2017) |
|---|---|---|
| 06/22/2017 | 🌐29 | EXECUTIVE COMMITTEE ORDER: IT APPEARING THAT the case number 17cv4663, Schroeder, et al v. Rauner, et al, was assigned in error to the Honorable Edmond E. Chang and; IT FURTHER APPEARING that case number 17cv4663, Schroeder, et al v. Rauner, et al, was assigned in the Eastern Division in error and should have been assigned to the Western Division; IT IS HEREBY ORDERED that case number 17cv4663, Schroeder, et al v. Rauner, et al, be transferred to the Western Division for further proceedings. Signed by the Executive Committee on 6/22/2017. Mailed notice. (pk, ) (Entered: 06/22/2017) |
| 06/22/2017 | 🌐30 | TRANSFERRED the case record to the Western Division Division (pk, ) (Entered: 06/22/2017) |
| 06/22/2017 | 🌐31 | INTRA district transfer from the Eastern Division Division. Case assigned to Judge Honorable Frederick J. Kapala and Honorable Iain D. Johnston for all further proceedings. (jp, ) (jp, ). (Entered: 06/22/2017) |
| 06/22/2017 | 🌐32 | Western Division ADR Notification (jp, ) (Entered: 06/22/2017) |
| 06/22/2017 | 🌐33 | ATTORNEY Appearance for Defendants Bruce Rauner, Bryan A Schneider by Sarah Hughes Newman (Newman, Sarah) (Entered: 06/22/2017) |
| 06/26/2017 | 🌐34 | MINUTE entry before the Honorable Iain D. Johnston: The Court has received this case on transfer from the Eastern Division. A briefing schedule on the pending motion for preliminary injunction 2 and motion to dismiss 16 has already been set. The motions for leave to file amicus briefs by American College of Obstetricians and Gynecologists et al. 11 and Physicians for Reproductive Health 14 are unopposed and granted. The amicus briefs shall be filed as separately-docketed entries by 6/30/2017. Defendants' motion for extension of time 23 is denied as moot. However, the Court will extend the deadline for Defendants Price and Cavanaugh/Verma to answer until 7/31/2017. A telephonic status hearing is set for 9/12/2017 at 9:00 AM. By 9/8/2017, counsel shall provide direct-dial telephone numbers for the hearing to the Court's operations specialist, who will initiate the call. (yxp, ) (Entered: 06/26/2017) |
| 06/28/2017 | 🌐35 | ATTORNEY Appearance for Amicus Parties American College of Obstetricians and Gynecologists, Julie Chor, AuTumn Davidson, Sabrina Holmquist, Illinois Academy of Family Physicians, Scott Moses, Maura Quinlan, Elizabeth Salisbury-Afshar, Debra Stulberg, Tabatha Wells, Santina Wheat by Lorie Chaiten (Chaiten, Lorie) (Entered: 06/28/2017) |
| 06/28/2017 | 🌐36 | ATTORNEY Appearance for Amicus Parties American College of Obstetricians and Gynecologists, Julie Chor, AuTumn Davidson, Sabrina Holmquist, Illinois Academy of Family Physicians, Scott Moses, Maura Quinlan, Elizabeth Salisbury-Afshar, Debra Stulberg, Tabatha Wells, Santina Wheat by Jenna Grace Prochaska (Prochaska, Jenna) (Entered: 06/28/2017) |
| 06/28/2017 | 🌐37 | MEMORANDUM by American College of Obstetricians and Gynecologists, Julie Chor, AuTumn Davidson, Sabrina Holmquist, Illinois Academy of Family Physicians, Scott Moses, Maura Quinlan, Elizabeth Salisbury-Afshar, Debra Stulberg, Tabatha Wells, Santina Wheat in Opposition to motion for miscellaneous relief 2 *Brief of Amici Curiae in Opposition to Plaintiffs' Motion for Preliminary Injunction* (Attachments: # 1 Exhibit 1, # 2 Exhibit 2)(Chaiten, Lorie) (Entered: 06/28/2017) |
| 06/29/2017 | 🌐38 | MOTION by Defendants Bruce Rauner, Bryan A Schneider for extension of time to file response/reply *in support of motion to dismiss (unopposed)* (Newman, |

| | | Sarah) (Entered: 06/29/2017) |
|---|---|---|
| 06/29/2017 | 🌐39 | NOTICE of Motion by Sarah Hughes Newman for presentment of motion for extension of time to file response/reply 38 before Honorable Iain D. Johnston on 7/11/2017 at 10:00 AM. (Newman, Sarah) (Entered: 06/29/2017) |
| 06/29/2017 | 🌐40 | ATTORNEY Appearance for Defendants Sean Cavanaugh, Thomas Price by Michael Hendry Baer (Baer, Michael) (Entered: 06/29/2017) |
| 06/29/2017 | 🌐41 | WITHDRAWING *Joshua L. Grant* as counsel for Defendants Sean Cavanaugh, Thomas Price and substituting Michael Hendry Baer as counsel of record (Baer, Michael) (Entered: 06/29/2017) |
| 06/30/2017 | 🌐42 | MINUTE entry before the Honorable Iain D. Johnston: The state defendants' motion for an extension of time and for leave to file an oversized brief 38 is granted. The reply brief in support of their motion to dismiss 16 is now due 7/7/2017, and may be up to 15 pages long. Presentment of the motion for an extension of time and for leave to file an oversized brief set for 7/11/2017 is stricken. (yxp, ) (Entered: 06/30/2017) |
| 06/30/2017 | 🌐43 | DESIGNATION of Monica V Mallory as U.S. Attorney for Defendants Sean Cavanaugh, Thomas Price (Mallory, Monica) (Entered: 06/30/2017) |
| 06/30/2017 | 🌐44 | ATTORNEY Appearance for Amicus Physicians for Reproductive Health by Jacqueline A, Giannini (Giannini, Jacqueline) (Entered: 06/30/2017) |
| 06/30/2017 | 🌐45 | MEMORANDUM by Physicians for Reproductive Health in Opposition to motion for miscellaneous relief 2 *(Brief of Amicus Curiae Physicians for Reproductive Health in Opposition to Plaintiffs Motion for Preliminary Injunction)* (Attachments: # 1 Exhibit 1, # 2 Exhibit 2)(Bruno, Leah) (Entered: 06/30/2017) |
| 06/30/2017 | 🌐46 | NOTIFICATION of Affiliates pursuant to Local Rule 3.2 by Physicians for Reproductive Health (Bruno, Leah) (Entered: 06/30/2017) |
| 07/07/2017 | 🌐47 | REPLY by Defendants Bruce Rauner, Bryan A Schneider to reply to response to motion, 25 *and in further support of their motion to dismiss 16* (Attachments: # 1 Exhibit I, May 26, 2017 Opinion in Pregnancy Care Center v. Rauner)(Newman, Sarah) (Entered: 07/07/2017) |
| 07/31/2017 | 🌐48 | MOTION by Defendants Sean Cavanaugh, Thomas Price to dismiss for lack of jurisdiction , MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM (Baer, Michael) (Entered: 07/31/2017) |
| 07/31/2017 | 🌐49 | MEMORANDUM by Sean Cavanaugh, Thomas Price in support of motion to dismiss/lack of jurisdiction, Motion to Dismiss for Failure to State a Claim 48 (Baer, Michael) (Entered: 07/31/2017) |
| 07/31/2017 | 🌐50 | NOTICE of Motion by Michael Hendry Baer for presentment of motion to dismiss/lack of jurisdiction, Motion to Dismiss for Failure to State a Claim 48 before Honorable Iain D. Johnston on 8/8/2017 at 10:00 AM. (Baer, Michael) (Entered: 07/31/2017) |
| 07/31/2017 | 🌐51 | MINUTE entry before the Honorable Iain D. Johnston: On the federal defendants' motion to dismiss 48 , the plaintiffs shall respond by 8/22/2017 and the federal defendants shall reply by 9/5/2017. Telephonic status hearing remains set for 9/12/2017 at 9:00AM. The clerk is directed to substitute defendant Seema Verma, the Administrator of the Centers for Medicare & Medicaid Services, for defendant Sean Cavanaugh, the former Acting Administrator. See Fed. R. Civ. P. 25(d). |

| | | Presentment of the motion to dismiss et for 8/8/2017 is stricken. Mailed notice (jp, ) (Entered: 07/31/2017) |
|---|---|---|
| 08/17/2017 | 🌐 52 | NOTICE of Voluntary Dismissal by All Plaintiffs *of Federal Defendants Thomas Price and Sean Cavanaugh* (Olp, Thomas) (Entered: 08/17/2017) |
| 09/07/2017 | 🌐 53 | MINUTE entry before the Honorable Frederick J. Kapala: Pursuant to notice of voluntary dismissal 52 , Sean Cavanaugh and Thomas Price are dismissed from this case without prejudice. The motion to dismiss 48 is now moot. Mailed notice (sb, ) (Entered: 09/07/2017) |
| 09/07/2017 | 🌐 54 | MINUTE entry before the Honorable Iain D. Johnston: The telephonic status hearing previously set for 9/12/2017 is stricken and reset to 10/10/2017 at 9:00AM. By 10/6/2017 counsel shall provide direct-dial numbers for the hearing to the Court's operations specialist, who will initiate the call. Mailed notice (jp, ) (Entered: 09/07/2017) |
| 09/13/2017 | 🌐 55 | MINUTE entry before the Honorable Iain D. Johnston: The telephonic status hearing previously set for 10/10/2017 is stricken and reset to 10/3/2017 at 1:00 PM. By 9/29/2017 counsel shall provide direct-dial numbers for the hearing to the Court's operations specialist, who will initiate the call. (yxp, ) (Entered: 09/13/2017) |
| 10/03/2017 | 🌐 56 | ATTORNEY Appearance for Defendants Bruce Rauner, Bryan A Schneider by Michael T. Dierkes (Dierkes, Michael) (Entered: 10/03/2017) |
| 10/03/2017 | 🌐 57 | MINUTE entry before the Honorable Iain D. Johnston: Status hearing held with 3:16-cv-50310. Case management deadlines entered as follows: Rule 26(a)(1) initial disclosures shall be exchanged by 10/20/2017; 25 Interrogatories and 25 requests to admit; Defendants are given 8 depositions limited to 3 hours each except for party and 30(b)(6) depositions which are limited to 7 hours. Plaintiffs are given 4 depositions limited to 7 hours each; Amended pleadings, add new counts or parties and third-party complaints by 12/15/2017; Rule 26(a)(2)(C) disclosures by 1/22/2018; Supplements under 26(e) due 1/12/2018. Fact discovery set to close on 2/28/2018. Retained expert deadlines are reserved. By 1/8/2018, each side shall provide 5 proposed expert names by email to the Court's operations specialist. These expert names shall not be shared with the other side and shall not be contacted by counsel. Telephonic status hearing set for 12/19/2017 at 9:00 AM. By 12/15/2017 counsel shall provide direct-dial numbers to the Courts operations specialist who will initiate the call. (yxp, ) (Entered: 10/04/2017) |
| 10/27/2017 | 🌐 58 | ORDER: Plaintiffs motion for preliminary injunction 2 is denied without prejudice to refiling should the preliminary injunction entered in National Institute of Family and Life Advocates v. Governor Bruce Rauner, No. 16 C 50310, be dissolved or otherwise prove insufficient during the pendency of this case. Motion to dismiss by Governor Rauner and Bryan A. Schneider 16 is granted in part and denied in part. All claims against Governor Rauner are dismissed and he is terminated as a defendant in this case. Counts III, and VI-IX are dismissed with prejudice. The parties are directed to show cause in writing within 30 days why this case should not be consolidated with National Institute of Family and Life Advocates, et al. v. Governor Bruce Rauner, No. 16 C 50310. Signed by the Honorable Frederick J. Kapala on 10/27/2017:mailed notice(pg, ) (Entered: 10/27/2017) |
| 12/15/2017 | 🌐 59 | MINUTE entry before the Honorable Iain D. Johnston: The motion by the plaintiffs in 16 CV 50310 to stay 74 is unopposed by the defendant and is granted. Because of the similarities between the cases 16 CV 50310 and 17 CV 4663, both cases are stayed pending a decision by the U.S. Supreme Court in National |

| | | |
|---|---|---|
| | | Institute of Family & Life Advocates v. Becerra, 16-1140. Within 14 days after the U.S. Supreme Court's decision, the parties shall notify the Court by filing a short joint written status report in each case. Presentment of the motion to stay and the status hearing previously set for 12/19/2017 are stricken, as are all other pending deadlines. This order has no effect on the preliminary injunction entered in 16 CV 50310. (yxp, ) (Entered: 12/15/2017) |
| 07/11/2018 | 60 | STATUS Report *(Joint)* by Bryan A Schneider (Attachments: # 1 Exhibit A, Supreme Courts decision in NIFLA v. Becerra)(Newman, Sarah) (Entered: 07/11/2018) |
| 07/12/2018 | 61 | MINUTE entry before the Honorable Iain D. Johnston: Status report 60 received and reviewed. Status hearing is set for 7/31/2018 at 9:00 AM. Counsel shall appear in person. (yxp, ) (Entered: 07/12/2018) |
| 07/31/2018 | 62 | MINUTE entry before the Honorable Iain D. Johnston: Status hearing held on 7/31/2018. Defendants' answer to the complaint due 8/21/2018. Written discovery shall be completed by 10/31/2018. Depositions of fact witness shall be completed by 1/31/2019. Rule 26(a)(2)(C) disclosures due 12/3/2018. The retained expert deadlines and dispositive motion deadline are reserved. Telephonic status hearing set for 11/15/2018 at 9:00 AM. By 11/13/2018 counsel shall provide direct-dial phone numbers to the Court's operations specialist who will initiate the call. (yxp, ) (Entered: 08/01/2018) |
| 08/21/2018 | 63 | ANSWER to Complaint *and Affirmative Defenses* by Bryan A Schneider(Newman, Sarah) (Entered: 08/21/2018) |
| 11/13/2018 | 64 | MINUTE entry before the Honorable Iain D. Johnston: The plaintiffs in 16 CV 50310 filed a motion to withdraw 84 and set it for presentment on 11/15/2018 at 9:00 AM even though this Court's case management procedures on General Status and Motion Practice requires motions be set for presentment at 10:00AM. Presentment of the motion to withdraw 84 is reset to 11/15/2018 at 10:00 AM on the Court's motion call. The status hearings set for 11/15/2018 at 9:00 AM in both 16 CV 50310 and 17 CV 4663 are reset to 10:00 AM to coincide with presentment of the motion to withdraw. As with presentment of any motion, counsel must appear in person for presentment. However, plaintiff's counsel in 17 CV 04663 may appear telephonically for the 10:00AM status hearing. By 11/14/2018, plaintiff's counsel in 17 CV 4663 shall provide direct-dial telephone numbers to the Court's operation specialist, who will initiate the call. If the parties in 16 CV 50310 file a stipulation to dismiss the two plaintiffs that is signed by all the parties who have appeared in conformity with Fed. R. Civ. Pro. 41(a)(1)(A)(ii) by 12:00 PM on 11/14/2018, presentment of the motion to withdraw will be stricken and the status hearing in both cases will be reset to 9:00 AM and be telephonic. (yxp, ) (Entered: 11/13/2018) |
| 11/14/2018 | 65 | MINUTE entry before the Honorable Iain D. Johnston: The parties' stipulation to dismiss in 16 CV 50310 86 received and reviewed. Plaintiff's motion to withdraw in 16 CV 50310 84 and presentment of the motion on 11/15/2018 at 10:00 AM are stricken as moot. The status hearings in both 16 CV 50310 and 17 CV 4663 are reset to 11/15/2018 at 9:00 AM and are now telephonic. By 11/14/2018, counsel shall provide direct-dial telephone numbers to the Court's operations specialist, who will initiate the call. (yxp, ) (Entered: 11/14/2018) |
| 11/15/2018 | | (Court only) Set/Reset Hearings: Status hearing set for 11/15/2018 at 09:00 AM. (yxp, ) (Entered: 11/15/2018) |

| | | |
|---|---|---|
| 11/15/2018 | 🌐 66 | MINUTE entry before the Honorable Iain D. Johnston: Status hearing held on 11/15/2018. Party depositions shall be completed by 3/25/2019. A written status report on depositions shall be filed by 2/22/2019. Telephonic status hearing set for 3/28/2019 at 9:00 AM. By 3/26/2019 counsel shall provide direct-dial numbers to the Court's operations specialist who will initiate the call. (yxp, ) (Entered: 11/15/2018) |
| 01/31/2019 | 🌐 67 | MOTION by Plaintiffs 1st Way Pregnancy Support Services, Ronald L Schroeder, Pregnancy Aid South Suburbs for partial summary judgment (Attachments: # 1 Notice of Filing, # 2 Exhibit)(Olp, Thomas) Modified on 2/1/2019 (pg, ).(file Notice Of Motion separate from this motion) (Entered: 01/31/2019) |
| 02/01/2019 | 🌐 68 | NOTICE of Motion by Thomas Gerald Olp for presentment of motion for partial summary judgment, 67 before Honorable Iain D. Johnston on 2/8/2019 at 09:00 AM. (Olp, Thomas) (Entered: 02/01/2019) |
| 02/01/2019 | 🌐 69 | MINUTE entry before the Honorable Iain D. Johnston: Presentment of the plaintiffs' motion for summary judgment 67 previously set for 2/8/2019 is stricken and is reset to 3/28/2019 at 10:00 AM. The telephonic status hearing previously set for 3/28/2019 at 9:00 AM is reset to 10:00 AM that day to coincide with the presentment of the motion for summary judgment 67 . Counsel shall appear in person. (yxp, ) (Entered: 02/01/2019) |
| 02/12/2019 | 🌐 70 | MOTION by Plaintiffs 1st Way Pregnancy Support Services, Pregnancy Aid South Suburbs, Ronald L Schroeder to stay *discovery* (Olp, Thomas) (Entered: 02/12/2019) |
| 02/12/2019 | 🌐 71 | NOTICE of Motion by Thomas Gerald Olp for presentment of motion to stay 70 before Honorable Iain D. Johnston on 2/19/2019 at 10:00 AM. (Olp, Thomas) (Entered: 02/12/2019) |
| 02/19/2019 | 🌐 72 | MINUTE entry before the Honorable Iain D. Johnston: Motion hearing held on 2/19/2019. Plaintiffs' motion to stay 70 is stricken for the reasons stated on the record. Plaintiffs' motion for partial summary judgment 67 is entered and continued. The 2/22/2019 status report on depositions and the 3/28/2019 telephonic status hearing are stricken. All depositions shall be completed by 5/31/2019. Telephonic status hearing set for 6/18/2019 at 9:00 AM. By 6/14/2019 counsel shall provide direct-dial numbers to the Court's operations specialist who will initiate the call. (yxp, ) (Entered: 02/20/2019) |
| 02/22/2019 | 🔓🌐 73 | TRANSCRIPT OF PROCEEDINGS held on 2/19/19 before the Honorable Iain D. Johnston. Court Reporter Contact Information: Heather Perkins-Reiva, heather_perkins-reiva@ilnd.uscourts.gov, (779) 772-8309.<br><br>IMPORTANT: The transcript may be viewed at the court's public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through the Court Reporter/Transcriber or PACER. For further information on the redaction process, see the Court's web site at www.ilnd.uscourts.gov under Quick Links select Policy Regarding the Availability of Transcripts of Court Proceedings.<br><br>Redaction Request due 3/15/2019. Redacted Transcript Deadline set for 3/25/2019. Release of Transcript Restriction set for 5/23/2019. (Perkins-Reiva, Heather) (Entered: 02/22/2019) |
| 03/05/2019 | 🌐 74 | MOTION by Plaintiffs 1st Way Pregnancy Support Services, Pregnancy Aid South Suburbs, Ronald L Schroeder for Stay of Discovery (Olp, Thomas) (Entered: |

| | | 03/05/2019) |
|---|---|---|
| 03/05/2019 | ⚫75 | NOTICE of Motion by Thomas Gerald Olp for presentment of motion for miscellaneous relief 74 before Honorable Frederick J. Kapala on 3/15/2019 at 09:00 AM. (Olp, Thomas) (Entered: 03/05/2019) |
| 03/11/2019 | ⚫76 | ORDER: Plaintiffs' objection to the magistrate judge's disposition of plaintiffs' motion to stay discovery 74 is taken under advisement. Defendant shall file a response to the objection by 3/18/2019. Signed by the Honorable Frederick J. Kapala on 3/11/2019. Electronic notice (kms) (Entered: 03/11/2019) |
| 03/15/2019 | ⚫77 | ATTORNEY Appearance for Defendant Bryan A Schneider by Sarah Jeanne Gallo (Gallo, Sarah) (Entered: 03/15/2019) |
| 03/18/2019 | ⚫78 | RESPONSE by Defendant Bryan A Schneider to motion for miscellaneous relief 74 (Attachments: # 1 Exhibit 1)(Gallo, Sarah) (Entered: 03/18/2019) |
| 03/20/2019 | ⚫79 | ATTORNEY Appearance for Defendant Bryan A Schneider by Lauren Hancock Barski (Barski, Lauren) (Entered: 03/20/2019) |
| 03/22/2019 | ⚫80 | MOTION by Plaintiff 1st Way Pregnancy Support Services for leave to file *Reply In Support of Objections* (Olp, Thomas) (Entered: 03/22/2019) |
| 03/22/2019 | ⚫81 | NOTICE of Motion by Thomas Gerald Olp for presentment of motion for leave to file 80 before Honorable Iain D. Johnston on 3/4/2021 at 09:00 AM. (Olp, Thomas) Modified on 3/25/2019 (pg, ).(refile with correct date.) (Entered: 03/22/2019) |
| 03/25/2019 | ⚫82 | NOTICE of Motion by Thomas Gerald Olp for presentment of motion for leave to file 80 before Honorable Iain D. Johnston on 4/4/2019 at 09:00 AM. (Olp, Thomas). (Entered: 03/25/2019) |
| 03/25/2019 | ⚫83 | MINUTE entry before the Honorable Iain D. Johnston: The motion for leave to file a reply brief 80 is transferred to Judge Kapala to be decided with the objection 74 . Presentment of the motion set for 4/4/2019 is stricken. (yxp, ) (Entered: 03/25/2019) |
| 04/08/2019 | ⚫84 | MOTION by Attorney Sarah Hughes Newman and Michael Dierkes to withdraw as attorney for Bryan A Schneider. No party information provided (Newman, Sarah) (Entered: 04/08/2019) |
| 04/08/2019 | ⚫85 | NOTICE of Motion by Sarah Hughes Newman for presentment of motion to withdraw as attorney 84 before Honorable Iain D. Johnston on 4/16/2019 at 10:00 AM. (Newman, Sarah) (Entered: 04/08/2019) |
| 04/09/2019 | ⚫86 | MINUTE entry before the Honorable Iain D. Johnston: The motion to withdraw by attorneys Sarah Newman and Michael Dierkes 84 is granted because other attorneys from their office remain as counsel for defendant Schneider. The Clerk is directed to terminate the appearances of attorneys Newman and Dierkes. Presentment of the motion set for 4/16/2019 is stricken. (yxp, ) (Entered: 04/09/2019) |
| 04/16/2019 | ⚫87 | EXECUTIVE COMMITTEE ORDER: It appearing that the Clerk of the Court was directed to select the cases pursuant to Internal Operating Procedure IOP 17 for the Initial Calendar of Magistrate Judge Jensen; and It further appearing that civil referral 17 CV 4663, Schroeder et al v. Rauner et al., should have been transferred to Magistrate Judge Jensen accordance to the procedures set forth in IOP 17(a) for the creation of an initial calendar for a newly-appointed magistrate judge by equalization, but due to a clerical error this case was not listed on General |

| | | Order 19-0015; therefore It is hereby ordered that the Clerk shall reassign civil referral 17 CV 4663, Schroeder et al., v. Rauner et al., to Magistrate Judge Jensen. Signed by Executive Committee on 4/16/2019. (bg, ) (Entered: 04/16/2019) |
|---|---|---|
| 04/17/2019 | 🌐 88 | MINUTE entry before the Honorable Iain D. Johnston: In light of the reassignment of this case to Judge Jensen, the hearing set for 6/18/2019 is stricken. The hearing will be reset by entry from Judge Jensen's chambers. (yxp, ) (Entered: 04/17/2019) |
| 04/22/2019 | 🌐 89 | ORDER: Plaintiffs objections to the magistrate judges order striking their motion to stay discovery pending resolution of plaintiffs motion for summary judgment 74 are sustained in part. In ruling on this motion, the magistrate judge properly characterized defendants opposition to the motion to stay as a Rule 56(d) motion to discover facts needed to oppose plaintiffs motion for summary judgment. However, the magistrate judge did not have all the information he needed to decide this issue because defendants never filed the affidavit or declaration required by Rule 56(d) or explained why discovery was necessary to oppose plaintiffs motion for summary judgment which appears to raise only a legal issue. Therefore, the case is remanded to the magistrate judge to afford defendants the opportunity to file the Rule 56(d) affidavit or declaration. Signed by the Honorable Frederick J. Kapala on 4/22/2019:mailed notice(pg, ) (Entered: 04/22/2019) |
| 04/22/2019 | 🔒 🌐 | (Court only) ***Motions terminated: MOTION by Plaintiffs 1st Way Pregnancy Support Services, Pregnancy Aid South Suburbs, Ronald L Schroeder for Stay of Discovery 74 , MOTION by Plaintiff 1st Way Pregnancy Support Services for leave to file *Reply In Support of Objections* 80 (ruled on by 4/22/19 order) (sb, ) (Entered: 05/08/2019) |
| 04/23/2019 | 🌐 90 | MINUTE entry before the Honorable Lisa A. Jensen:: In light of Judge Kapala's order dated 4/22/2019, defendants shall file the required affidavit or declaration under Fed. R. Civ. P. 56(d) by 5/7/2019. A status hearing is set for 5/15/2019 at 9:00 AM. Counsel shall appear in person. In light of the transfer of cases from Magistrate Judge Johnston to Magistrate Judge Jensen, by 5/7/2019, the parties shall also file a status report containing the following information: (1) The names of all parties and counsel of record; (2) A general description of the claims and affirmative defenses; (3) All dates established in the case management order; (4) Whether the case is proceeding in a manner that will allow the case to meet the deadlines established by the case management order; and if, not, why not; (5) Any anticipated discovery disputes that may arise in the near future, and any anticipated motions; (6) The status of discovery, including discovery conducted to date; (7) Whether the parties have discussed settlement. If the parties have discussed settlement, the parties must state the status of those discussions. If the parties have not discussed settlement, the parties must state why not; (8) Whether the parties believe a settlement conference at this time has a reasonable likelihood of reaching a resolution. If the parties do not believe a settlement conference is reasonably likely to reach a resolution, the parties must state the specific reasons for that belief; (9) Any significant rulings entered to date; (10) Any additional information the parties believe is relevant to provide the Court with a better understanding of the case. Counsel for all parties are to cooperate in providing the status report. Counsel should also understand that the reassignment of cases from Magistrate Judge Johnston to Magistrate Judge Jensen is not to be viewed as an opportunity to seek reconsideration of previous adverse rulings. Mailed notice (jp, ) (Entered: 04/23/2019) |
| 04/24/2019 | 🌐 91 | ATTORNEY Appearance for Defendant Bryan A Schneider by Matthew Vincent Chimienti (Chimienti, Matthew) (Entered: 04/24/2019) |

| 05/02/2019 | 92 | ATTORNEY Appearance for Defendant Bryan A Schneider by Elizabeth A.F. Morris (Morris, Elizabeth) (Entered: 05/02/2019) |
| 05/07/2019 | 93 | STATUS Report *filed jointly by all parties* by 1st Way Pregnancy Support Services, Pregnancy Aid South Suburbs, Ronald L Schroeder (Olp, Thomas) (Entered: 05/07/2019) |
| 05/07/2019 | 94 | AFFIDAVIT of Sarah J. Gallo *Rule 56(d) Affidavit* (Attachments: # 1 Exhibit Rule 56(d) Affidavit)(Gallo, Sarah) (Entered: 05/07/2019) |
| 05/12/2019 | 95 | AMENDED GENERAL ORDER 19-0007: Case reassigned to the Honorable Rebecca R. Pallmeyer for all further proceedings. Honorable Frederick J. Kapala no longer assigned to the case. Signed by Executive Committee on 3/28/2019. (jp, ) (Entered: 05/12/2019) |
| 05/15/2019 | 96 | MINUTE entry before the Honorable Lisa A. Jensen: Status hearing held on 5/15/2019. The 5/31/2019 deposition deadline is stricken. A telephonic status hearing is continued to 6/17/2019 at 9:00 AM. Counsel are directed to provide telephone numbers to the Court's Operations Specialist by 6/13/2019. Mailed notice (jk, ) (Entered: 05/16/2019) |
| 05/17/2019 | 97 | MINUTE entry before the Honorable Rebecca R. Pallmeyer: Having reviewed Defendant's Rule 56(d) affidavit, the court concludes Plaintiff is entitled to depose the six individuals whose declarations have been submitted in support of Defendant's motion for summary judgment. The court therefore reinstates the motion to stay discovery, but denies it. The parties are directed to confer promptly to set dates for the depositions of the declarants and, within ten days, to furnish the court with an agreed deposition schedule. Plaintiff's memorandum in opposition to the motion for partial summary judgment will be due 45 days after the depositions are completed. Mailed notice. (etv, ) (Entered: 05/17/2019) |
| 05/24/2019 | 98 | STATUS Report *Agreed Schedule for Six Depositions* by Bryan A Schneider (Gallo, Sarah) (Entered: 05/24/2019) |
| 05/28/2019 | 99 | MINUTE entry before the Honorable Rebecca R. Pallmeyer: The court adopts the deposition schedule proposed by the parties. Plaintiffs' response to the motion for partial summary judgment will be due on or before November 1, 2019. Reply, if any, may be filed on or before November 29, 2019. Mailed notice. (etv, ) (Entered: 05/28/2019) |
| 05/31/2019 | 100 | MOTION by Defendant Bryan A Schneider to Align Summary Judgment Briefing and Set Remaining Discovery Schedule (Chimienti, Matthew) (Entered: 05/31/2019) |
| 05/31/2019 | 101 | NOTICE of Motion by Matthew Vincent Chimienti for presentment of motion for miscellaneous relief 100 before Honorable Rebecca R. Pallmeyer on 6/5/2019 at 08:45 AM. (Chimienti, Matthew) (Entered: 05/31/2019) |
| 06/03/2019 | 102 | MINUTE entry before the Honorable Rebecca R. Pallmeyer: Defendant's motion to align summary judgment briefing and set remaining discovery schedule 100 will be heard on 6/4/2019 at 2:00 p.m. Counsel who wish to appear by telephone should use the following call in number: Toll-Free Number: (877) 336-1839, Access Code: 6708061. Appearance on 6/5/2019 is stricken. Mailed notice. (etv, ) (Entered: 06/03/2019) |
| 06/04/2019 | 103 | RESPONSE by 1st Way Pregnancy Support Services, Pregnancy Aid South Suburbs, Ronald L Schroederin Opposition to MOTION by Defendant Bryan A |

| | | |
|---|---|---|
| | | Schneider to Align Summary Judgment Briefing and Set Remaining Discovery Schedule 100 (Olp, Thomas) (Entered: 06/04/2019) |
| 06/04/2019 | 🌑 104 | ATTORNEY Appearance for Amicus Parties American College of Obstetricians and Gynecologists, Julie Chor, AuTumn Davidson, Sabrina Holmquist, Illinois Academy of Family Physicians, Scott Moses, Maura Quinlan, Elizabeth Salisbury-Afshar, Debra Stulberg, Tabatha Wells, Santina Wheat by Rebecca Kim Glenberg (Glenberg, Rebecca) (Entered: 06/04/2019) |
| 06/04/2019 | 🌑 105 | ATTORNEY Appearance for Amicus Parties American College of Obstetricians and Gynecologists, Julie Chor, AuTumn Davidson, Sabrina Holmquist, Illinois Academy of Family Physicians, Scott Moses, Maura Quinlan, Elizabeth Salisbury-Afshar, Debra Stulberg, Tabatha Wells, Santina Wheat by Ameri Rose Klafeta (Klafeta, Ameri) (Entered: 06/04/2019) |
| 06/04/2019 | 🌑 106 | WITHDRAWING *Lorie Chaiten and Jenna Prochaska* as counsel for Amicus Parties American College of Obstetricians and Gynecologists, Julie Chor, AuTumn Davidson, Sabrina Holmquist, Illinois Academy of Family Physicians, Scott Moses, Maura Quinlan, Elizabeth Salisbury-Afshar, Debra Stulberg, Tabatha Wells, Santina Wheat and substituting Rebecca Kim Glenberg as counsel of record (Glenberg, Rebecca) (Entered: 06/04/2019) |
| 06/04/2019 | 🌑 108 | MINUTE entry before the Honorable Rebecca R. Pallmeyer: Motion hearing held on 6/4/2019. Defendant's motion to align summary judgment briefing and set remaining discovery schedule 100 is granted in part and denied in part. Depositions of six witnesses previously noticed, and of two additional doctors, to be completed by September. Defendants' response to Plaintiff's motion for summary judgment to be filed by 11/14/2019; reply to be filed by or on 12/11/2019. Mailed notice. (etv, ) (Entered: 06/05/2019) |
| 06/05/2019 | 🌑 107 | MINUTE entry before the Honorable Lisa A. Jensen: The telephonic status hearing previously set for 6/17/2019 is reset to 9/30/2019 at 9:00 a.m. By 9/26/2019, counsel shall provide telephone numbers to the Court's operations specialist. Mailed notice (jk, ) (Entered: 06/05/2019) |
| 07/12/2019 | 🔓 109 | TRANSCRIPT OF PROCEEDINGS held on 06/04/2019 before the Honorable Rebecca R. Pallmeyer. Order Number: 34991. Court Reporter Contact Information: Judith A. Walsh, CSR, RDR, F/CRR. Official Court Reporter. judith_walsh@ilnd.uscourts.gov. <P>IMPORTANT: The transcript may be viewed at the court's public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through the Court Reporter/Transcriber or PACER. For further information on the redaction process, see the Court's web site at www.ilnd.uscourts.gov under Quick Links select Policy Regarding the Availability of Transcripts of Court Proceedings.</P> Redaction Request due 8/2/2019. Redacted Transcript Deadline set for 8/12/2019. Release of Transcript Restriction set for 10/10/2019. (Walsh, Judy) (Entered: 07/12/2019) |
| 07/29/2019 | 🌑 110 | AGREED CONFIDENTIALITY ORDER. Signed by the Honorable Lisa A. Jensen on 7/29/2019. Mailed notice (jk, ) (Entered: 07/29/2019) |
| 08/09/2019 | 🌑 111 | MOTION for Leave to Appear Pro Hac Vice Filing fee $ 150, receipt number 0752-16122257. (Attachments: # 1 attachment)(Gillen, Patrick) (Entered: 08/09/2019) |

| 08/12/2019 | 🌐 112 | ORDER : Patrick T. Gillen's motion for leave to appear pro hac vice for Plaintiffs 111 is granted. Signed by the Honorable Rebecca R. Pallmeyer on 8/12/2019. Mailed notice(pk, ) (Entered: 08/12/2019) |
|---|---|---|
| 09/30/2019 | 🌐 113 | MINUTE entry before the Honorable Rebecca R. Pallmeyer: As the parties' discovery dispute interfered with prompt briefing of Plaintiff's motion for summary judgment 67 , that motion is stricken and deemed re-filed as of 6/4/2019, when this court entered a schedule for depositions of Plaintiff's declarants 108 . Mailed notice (lw, ) (Entered: 09/30/2019) |
| 09/30/2019 | 🌐 114 | MINUTE entry before the Honorable Lisa A. Jensen: Status hearing held on 9/30/2019. Parties report the depositions have been completed per Judge Pallmeyer's 6/04/2019 minute entry 108 . Parties report fact discovery is completed bar some routine document exchanges. No further status will be set at this time before the Magistrate Judge. Parties are directed to contact the courtroom deputy for Judge Pallmeyer for setting any additional hearings in this case. Mailed notice (jk, ) (Entered: 10/01/2019) |
| 10/16/2019 | 🌐 115 | MINUTE entry before the Honorable Lisa A. Jensen: Plaintiff's motion for an amended protective order (135) is agreed and granted. Enter agreed confidentiality order in this case and in 16-cv-50310. (Motion filed in 16-cv-50310 National Institute of Family and Life Advocates et al v. Bruce Rauner et al). Mailed notice (jk, ) (Entered: 10/16/2019) |
| 10/16/2019 | 🌐 116 | AGREED CONFIDENTIALITY ORDER. Signed by the Honorable Lisa A. Jensen on 10/16/2019. Mailed notice (jk, ) (Entered: 10/16/2019) |
| 10/31/2019 | 🌐 117 | MOTION by Defendant Bryan A Schneider for leave to file excess pages *in Response Brief and Excess Paragraphs in Statement of Facts* (Gallo, Sarah) (Entered: 10/31/2019) |
| 10/31/2019 | 🌐 118 | NOTICE of Motion by Sarah Jeanne Gallo for presentment of motion for leave to file excess pages 117 before Honorable Rebecca R. Pallmeyer on 11/4/2019 at 09:00 AM. (Gallo, Sarah) (Entered: 10/31/2019) |
| 11/01/2019 | 🌐 119 | MINUTE entry before the Honorable Rebecca R. Pallmeyer: Defendant Hagan's motion for leave to exceed page limits in her response brief and paragraph limits in her statement of facts 117 is granted to 35 pages and 60 paragraphs. Motion hearing date of 11/4/19 is stricken. Notice mailed by judge's staff (ntf, ) (Entered: 11/01/2019) |
| 11/14/2019 | 🔒 🌐 120 | SEALED DOCUMENT by Defendant Bryan A Schneider *Defendant's Local Rule 56.1 Statement of Additional Facts in Opposition to Plaintiffs' Motion for Summary Judgment* (Attachments: # 1 Exhibit 4, # 2 Exhibit 5, # 3 Exhibit 6, # 4 Exhibit 7, # 5 Exhibit 8, # 6 Exhibit 9, # 7 Exhibit 10, # 8 Exhibit 11)(Barski, Lauren) (Entered: 11/14/2019) |
| 11/14/2019 | 🌐 121 | RULE 56 56.1 Statement *of Additional Facts in Opposition to Plaintiffs' Motion for Summary Judgment* (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit 5, # 6 Exhibit 6, # 7 Exhibit 7, # 8 Exhibit 8, # 9 Exhibit 9, # 10 Exhibit 10, # 11 Exhibit 11, # 12 Exhibit 12, # 13 Exhibit 13, # 14 Exhibit 14, # 15 Exhibit 15, # 16 Exhibit 16, # 17 Exhibit 17, # 18 Exhibit 18, # 19 Exhibit 19, # 20 Exhibit 20, # 21 Exhibit 21, # 22 Exhibit 22, # 23 Exhibit 23, # 24 Exhibit 24, # 25 Exhibit 25, # 26 Exhibit 26, # 27 Exhibit 27, # 28 Exhibit 28, # 29 Exhibit 29, # 30 Exhibit 30, # 31 Exhibit 31, # 32 Exhibit 32, # 33 Exhibit 33, # 34 Exhibit 34, # 35 Exhibit 35, # 36 Exhibit 36, # 37 Exhibit 37, # 38 Exhibit 38, # 39 Exhibit 39, # 40 Exhibit 40, # 41 Exhibit 41, # 42 Exhibit 42, # 43 Exhibit 43, # 44 Exhibit 44, |

| | | |
|---|---|---|
| | | # 45 Exhibit 45, # 46 Exhibit 46, # 47 Exhibit 47, # 48 Exhibit 48, # 49 Exhibit 49, # 50 Exhibit 50, # 51 Exhibit 51, # 52 Exhibit 52, # 53 Exhibit 53 (part 1 of 2), # 54 Exhibit 53 (part 2 of 2), # 55 Exhibit 54, # 56 Exhibit 55, # 57 Exhibit 56, # 58 Exhibit 57, # 59 Exhibit 58, # 60 Exhibit 59, # 61 Exhibit 60, # 62 Exhibit 61, # 63 Exhibit 62, # 64 Exhibit 63, # 65 Exhibit 64, # 66 Exhibit 65, # 67 Exhibit 66, # 68 Exhibit 67, # 69 Exhibit 68, # 70 Exhibit 69, # 71 Exhibit 70, # 72 Exhibit 71, # 73 Exhibit 72, # 74 Exhibit 73, # 75 Exhibit 74, # 76 Exhibit 75, # 77 Exhibit 76, # 78 Exhibit 77, # 79 Exhibit 78)(Barski, Lauren) (Entered: 11/14/2019) |
| 11/14/2019 | 🌐 122 | RESPONSE by Defendant Bryan A Schneider *Defendant's Response to Plaintiffs' Local Rule 56.1 Statement of Undisputed Material Facts* 67 (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3)(Chimienti, Matthew) Docket Text Modified by Clerk's Office on 11/14/2019 (ph, ). (Entered: 11/14/2019) |
| 11/14/2019 | 🔒 🌐 123 | SEALED RESPONSE by Bryan A Schneider to notice of motion 68 *Defendant's Opposition to Plaintiffs' Motions for Summary Judgment* (Barski, Lauren) (Entered: 11/14/2019) |
| 11/14/2019 | 🌐 124 | MEMORANDUM by Bryan A Schneider *Defendant's Opposition to Plaintiffs' Motions for Summary Judgment* (Barski, Lauren) (Entered: 11/14/2019) |
| 11/14/2019 | 🌐 125 | MOTION by Defendant Bryan A Schneider to seal document sealed response 123 , sealed document, 120 *Defendant's Motion for Leave to File Documents Under Seal* (Chimienti, Matthew) (Entered: 11/14/2019) |
| 11/14/2019 | 🌐 126 | NOTICE of Motion by Matthew Vincent Chimienti for presentment of motion to seal document 125 before Honorable Rebecca R. Pallmeyer on 11/19/2019 at 09:00 AM. (Chimienti, Matthew) (Entered: 11/14/2019) |
| 11/15/2019 | 🌐 127 | ENTERED IN ERROR. Modified on 11/22/2019 (nsf, ). (Entered: 11/15/2019) |
| 11/15/2019 | 🌐 135 | EXHIBITS (Corrected) by Bryan A Schneider Secretary of the Illinois Dept of Financial and Professional Regulation regarding Rule 56 statement,,,,,, 121 (Document not Imaged) (nsf, ) (Entered: 11/22/2019) |
| 11/18/2019 | 🌐 128 | MINUTE entry before the Honorable Rebecca R. Pallmeyer: Defendant's motion for leave to file documents under seal 125 is granted. Motion hearing set for 11/19/19 is stricken; no appearance required. Notice mailed by judge's staff (ntf, ) (Entered: 11/18/2019) |
| 11/20/2019 | 🌐 129 | ATTORNEY Appearance for Amicus Physicians for Reproductive Health by Joanne Caceres (Caceres, Joanne) (Entered: 11/20/2019) |
| 11/20/2019 | 🌐 130 | MOTION by Amicus Physicians for Reproductive Health for leave to file *Brief of Amicus Curiae Physicians for Reproductive Health with Consent of Parties in Opposition to Plaintiffs' Motion for Summary Judgment* (Attachments: # 1 Exhibit 1)(Bruno, Leah) (Entered: 11/20/2019) |
| 11/21/2019 | 🌐 131 | MINUTE entry before the Honorable Rebecca R. Pallmeyer: Motion for leave to file brief of amicus curiae with consent of parties in opposition to Plaintiffs' motion for summary judgment 130 is granted. Notice mailed by judge's staff (ntf, ) (Entered: 11/21/2019) |

| | | |
|---|---|---|
| 11/21/2019 | 🌐132 | MOTION by Amicus Parties American College of Obstetricians and Gynecologists, AuTumn Davidson, Illinois Academy of Family Physicians, Scott Moses, Maura Quinlan, Tabatha Wells, Santina Wheat for leave to file *Brief of Amici Curiae in Opposition to Plaintiffs' Motions for Summary Judgment* (Attachments: # 1 Exhibit A (Proposed Brief of Amici Curie))(Glenberg, Rebecca) (Entered: 11/21/2019) |
| 11/21/2019 | 🌐133 | NOTICE of Motion by Rebecca Kim Glenberg for presentment of motion for leave to file, 132 before Honorable Rebecca R. Pallmeyer on 12/2/2019 at 09:00 AM. (Glenberg, Rebecca) (Entered: 11/21/2019) |
| 11/21/2019 | 🌐134 | Brief of Amicus Curiae Physicians for Reproductive Health in Opposition to Plaintiffs' Motion for Summary Judgment by Physicians for Reproductive Health (Bruno, Leah) (Entered: 11/21/2019) |
| 11/22/2019 | 🌐136 | NOTICE of Correction regarding exhibit 127 (nsf, ) (Entered: 11/22/2019) |
| 12/02/2019 | 🌐137 | MINUTE entry before the Honorable Rebecca R. Pallmeyer: Motion hearing held. Motion for leave to file brief of Amici Curiae in opposition to Plaintiffs' motions for summary judgment 132 is granted. Notice mailed by judge's staff (ntf, ) (Entered: 12/02/2019) |
| 12/03/2019 | 🌐138 | MEMORANDUM by American College of Obstetricians and Gynecologists, AuTumn Davidson, Illinois Academy of Family Physicians, Scott Moses, Maura Quinlan, Tabatha Wells, Santina Wheat *in Opposition to Plaintiffs' Motions for Summary Judgment* (Attachments: # 1 Exhibit 1 (List of Amici))(Glenberg, Rebecca) (Entered: 12/03/2019) |
| 12/11/2019 | 🔒🌐139 | SEALED REPLY by 1st Way Pregnancy Support Services, Pregnancy Aid South Suburbs, Ronald L Schroeder to Rule 56 statement,,,,,, 121 , Response, 122 (Attachments: # 1 Exhibit, # 2 Exhibit, # 3 Exhibit, # 4 Exhibit, # 5 Exhibit, # 6 Exhibit, # 7 Exhibit)(Olp, Thomas) (Entered: 12/11/2019) |
| 12/11/2019 | 🔒🌐140 | SEALED REPLY by 1st Way Pregnancy Support Services, Pregnancy Aid South Suburbs, Ronald L Schroeder to sealed response 123 (Olp, Thomas) (Entered: 12/11/2019) |
| 12/11/2019 | 🌐141 | MOTION by Plaintiffs 1st Way Pregnancy Support Services, Pregnancy Aid South Suburbs, Ronald L Schroeder to seal document reply 140 , reply, 139 (Olp, Thomas) (Entered: 12/11/2019) |
| 12/11/2019 | 🌐142 | NOTICE of Motion by Thomas Gerald Olp for presentment of motion to seal document 141 before Honorable Rebecca R. Pallmeyer on 12/17/2019 at 08:45 AM. (Olp, Thomas) (Entered: 12/11/2019) |
| 12/11/2019 | 🌐143 | REPLY by 1st Way Pregnancy Support Services, Pregnancy Aid South Suburbs, Ronald L Schroeder to memorandum 124 , Rule 56 statement,,,,,,, 121 , Response, 122 (Attachments: # 1 Exhibit, # 2 Exhibit, # 3 Exhibit, # 4 Exhibit, # 5 Exhibit, # 6 Exhibit, # 7 Exhibit, # 8 Exhibit)(Olp, Thomas) (Entered: 12/12/2019) |
| 12/12/2019 | 🔒🌐144 | SEALED RESPONSE by 1st Way Pregnancy Support Services, Pregnancy Aid South Suburbs, Ronald L Schroeder to reply, 139 *CORRECTED Doc 139* (Attachments: # 1 Exhibit Exs. 1- 5 Verif Compl, Declarations, # 2 Exhibit Ex. 6 - Code Excerpts, # 3 Exhibit Ex. 7 - Cocks Dep Excerpts, # 4 Exhibit Ex. 8 - Wilson Dep Excerpts, # 5 Exhibit Ex. 9 - Schroeder Dep Excerpts, # 6 Exhibit Ex.10 - IDFPR Documents, # 7 Exhibit Ex.11 - Ps Doc Production)(Olp, Thomas) (Entered: 12/12/2019) |

| 12/12/2019 | 🔒 ● 145 | SEALED REPLY by 1st Way Pregnancy Support Services, Pregnancy Aid South Suburbs, Ronald L Schroeder to reply 140 , memorandum 124 , sealed response 123 *CORRECTED Doc 140* (Olp, Thomas) (Entered: 12/12/2019) |
|---|---|---|
| 12/13/2019 | ● 146 | REPLY by 1st Way Pregnancy Support Services, Pregnancy Aid South Suburbs, Ronald L Schroeder to reply to response to motion, 143 (Attachments: # 1 Errata Corrected Attachment 3 to Doc 143, # 2 Errata Corrected Attachment 7 to Doc 143)(Olp, Thomas) (Entered: 12/13/2019) |
| 12/13/2019 | ● 147 | MINUTE entry before the Honorable Rebecca R. Pallmeyer: Plaintiffs' unopposed motion for leave to file documents under seal 141 is granted. Motion hearing date of 12/17/19 is stricken. Notice mailed by judge's staff (ntf, ) (Entered: 12/13/2019) |
| 03/16/2020 | ● 148 | ORDER Amended General Order 20-0012 IN RE: CORONAVIRUS COVID-19 PUBLIC EMERGENCY Signed by the Chief Judge Rebecca R. Pallmeyer on March 16, 2020. All open cases are impacted by this Amended General Order. See attached Order for guidance.Signed by the Honorable Rebecca R. Pallmeyer on 3/16/2020: Mailed notice. (pj, ) (Entered: 03/17/2020) |
| 03/30/2020 | ● 149 | ORDER Seconded Amended General Order 20-0012 IN RE: CORONAVIRUS COVID-19 PUBLIC EMERGENCY Signed by the Chief Judge Rebecca R. Pallmeyer on March 30, 2020. All open cases are impacted by this Second Amended General Order. Amended General Order 20-0012, entered on March 17, 2020, and General Order 20-0014, entered on March 20, 2020, are vacated and superseded by this Second Amended General. See attached Order for guidance.Signed by the Honorable Rebecca R. Pallmeyer on 3/30/2020: Mailed notice. (docket1, ) (Entered: 03/31/2020) |
| 04/24/2020 | ● 150 | ORDER Third Amended General Order 20-0012 IN RE: CORONAVIRUS COVID-19 PUBLIC EMERGENCY Signed by the Chief Judge Rebecca R. Pallmeyer on April 24, 2020. All open cases are impacted by this Third Amended General Order. Parties are must carefully review all obligations under this Order, including the requirement listed in paragraph number 5 to file a joint written status report in most civil cases. See attached Order. Signed by the Honorable Rebecca R. Pallmeyer on 4/24/2020: Mailed notice. (docket1, ) (Entered: 04/27/2020) |
| 05/04/2020 | ● 151 | STATUS Report *JOINT* by Bryan A Schneider (Gallo, Sarah) (Entered: 05/04/2020) |
| 05/26/2020 | ● 152 | ORDER ORDER Fourth Amended General Order 20-0012 IN RE: CORONAVIRUS COVID-19 PUBLIC EMERGENCY Signed by the Chief Judge Rebecca R. Pallmeyer on May 26, 2020. This Order does not extend or modify any deadlines set in civil cases. For non-emergency motions, no motion may be noticed for presentment on a date earlier than July 15, 2020. See attached Order. Signed by the Honorable Rebecca R. Pallmeyer on 5/26/2020: Mailed notice. (docket1, ) (Entered: 05/26/2020) |
| 07/10/2020 | ● 153 | ORDER Fifth Amended General Order 20-0012 IN RE: CORONAVIRUS COVID-19 PUBLIC EMERGENCY Signed by the Chief Judge Rebecca R. Pallmeyer on July 10, 2020. This Order does not extend or modify any deadlines set in civil cases. No motions may be noticed for in-person presentment; the presiding judge will notify parties of the need, if any, for a hearing by electronic means or in-court proceeding. See attached Order. Signed by the Honorable Rebecca R. Pallmeyer on 7/10/2020: Mailed notice. (Clerk3, Docket) (Entered: 07/10/2020) |

| 09/03/2020 | 🌐 154 | MEMORANDUM Opinion and Order. Plaintiffs' motions for summary judgment (NIFLA Mot. for Summ. J. 90 ; Schroeder Mot. for Partial Summ. J. 67 ) are denied. Parties are directed to submit a written report of their proposed schedule for expert discovery. Signed by the Honorable Rebecca R. Pallmeyer on 9/3/2020. Notice mailed by judge's staff (ntf,) (Entered: 09/03/2020) |
| --- | --- | --- |
| 09/29/2020 | 🌐 155 | EXECUTIVE COMMITTEE ORDER: GENERAL ORDER 20-0029: It appearing that Iain D. Johnston has been appointed as a United States District Judge for the Northern District of Illinois, Western Division; therefore IT IS HEREBY ORDERED That the attached list of civil cases are hereby reassigned to form the initial calendar of the Honorable Iain D. Johnston; and It is further ordered that the Fourth Amended General Order 19-0007 -Western Division Reassignment Wheel, be vacated in its entirety and this General Order supersedes it; and It is further ordered the Clerk of Court is to add Judge Johnston's name to the Court's existing civil and criminal case assignment system so that he shall receive a full share of such cases; and It is further ordered that all criminal cases that were assigned and reassigned pursuant to General Order 19-0007 shall remain assigned to the current district judge absent further order of the Court. Case reassigned to the Honorable Iain D. Johnston for all further proceedings. Honorable Rebecca R. Pallmeyer no longer assigned to the case. Signed by Honorable Rebecca R. Pallmeyer on 9/29/2020.(docket10, ) (Entered: 09/29/2020) |
| 10/09/2020 | 🌐 156 | MOTION by Plaintiffs 1st Way Pregnancy Support Services, Pregnancy Aid South Suburbs, Ronald L Schroeder to join *MOTION OF NIFLA PLAINTIFFS IN 16 CV 50310 (TO AMEND AND TO CERTIFY FOR INTERLOCUTORY APPEAL THE COURT'S ORDER DENYING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT) AND TO STAY EXPERT DISCOVERY PENDING RESOLUTION OF THE NIFLA MOTION* (Olp, Thomas) (Entered: 10/09/2020) |
| 10/13/2020 | 🌐 157 | MINUTE entry before the Honorable Iain D. Johnston: The plaintiffs' motion for leave to adopt the motion to amend and certify filed in Nat'l Institute of Family v. Rauner (16 CV 50310) 156 is granted. The Clerk is directed to file a copy of the motion to amend and certify from Nat'l Institute on the docket in this case and to note in the minute entry that it is adopted by plaintiffs Schroeder, 1st Way Pregnancy Support Services, and Pregnancy Aid South Suburbs. The defendants shall file a single response brief in each case by 11/30/2020, and the plaintiffs shall file a single reply brief in each case by 1/8/2021. Expert discovery is stayed in each case. (yxp, ) (Entered: 10/13/2020) |
| 10/13/2020 | 🌐 158 | MOTION to Amend/Correct Order Denying Plaintiffs' Motion for Summary Judgment from 16 CV 50310 as adopted by plaintiffs Schroeder, 1st Way Pregnancy Support Services, and Pregnancy Aid South Suburbs. (Attachments: # 1 Memorandum in Support of Motion) (yxp, ) (Entered: 10/13/2020) |
| 11/30/2020 | 🌐 159 | RESPONSE by Bryan A Schneiderin Opposition to MOTION by Plaintiffs 1st Way Pregnancy Support Services, Pregnancy Aid South Suburbs, Ronald L Schroeder to amend/correct 158 (Gallo, Sarah) (Entered: 11/30/2020) |
| 03/29/2021 | 🌐 160 | ORDER with Statement; Plaintiffs' motions to amend and to certify for interlocutory appeal the Court's order denying plaintiffs' motion for summary judgment, dkt. 178 (in 16 CV 50310); dkt. 158 (in 17 CV 4663), are denied. The case is referred to Magistrate Judge Jensen for expert discovery. Because this case will proceed with expert discovery, the Court solicits position papers from the parties on their views as to whether the Court should retain a Court appointed-expert under Federal Rule of Evidence 706. The parties' position papers are due by |

| | | April 16, 2021. See the attached order for details. Signed by the Honorable Iain D. Johnston on 3/29/2021:(yxp, ) (Entered: 03/29/2021) |
|---|---|---|
| 03/30/2021 | 🌐161 | MINUTE entry before the Honorable Lisa A. Jensen: A telephonic status hearing is set in cases 16-cv-50310 and 17-cv-04663 for 4/22/2021 at 11:00 AM. Public access is available via the following call-in number: (877) 336-1831 with access code 2813746. Counsel for all parties are directed to appear. Counsel of record will receive an email the day prior to the start of the telephonic hearing with instructions to join the call. Persons granted remote access to proceedings are reminded of the general prohibition against photographing, recording, and rebroadcasting of court proceedings. Violation of these prohibitions may result in sanctions. Mailed notice. (vk) (Entered: 03/30/2021) |
| 04/14/2021 | 🌐162 | MOTION by Defendant Bryan A Schneider for extension of time to file *Fed. R. Ev. 706(a) position paper* (Gallo, Sarah) (Entered: 04/14/2021) |
| 04/15/2021 | 🌐163 | MINUTE entry before the Honorable Lisa A. Jensen: Defendant's motion for extension of time 162 is unopposed and granted. Defendant's position paper on whether the court should retain a court appointed-expert under Federal Rule of Evidence 706 is now due 4/23/2021. The telephonic status hearing previously set for 4/22/2021 is stricken and reset to 5/4/2021 at 9:30 AM. Public access is available via the following call-in number: (877) 336-1831 with access code 2813746. Counsel for all parties are directed to appear. Counsel of record will receive an email the day prior to the start of the telephonic hearing with instructions to join the call. Persons granted remote access to proceedings are reminded of the general prohibition against photographing, recording, and rebroadcasting of court proceedings. Violation of these prohibitions may result in sanctions. Mailed notice. (vk) (Entered: 04/15/2021) |
| 04/16/2021 | 🌐164 | RESPONSE by Plaintiffs 1st Way Pregnancy Support Services, Pregnancy Aid South Suburbs, Ronald L Schroeder to order on motion to amend/correct,,,,, 160 *Statement of Position on Court Appointment of Expert* (Olp, Thomas) (Entered: 04/16/2021) |
| 04/22/2021 | 🌐165 | Defendant's Position on Whether the Court Should Appoint an Expert STATEMENT by Bryan A Schneider (Gallo, Sarah) (Entered: 04/22/2021) |
| 05/04/2021 | 🌐166 | MINUTE entry before the Honorable Lisa A. Jensen: A telephonic status conference held on 5/4/2021 to discuss an expert disclosure/deposition schedule. For the reasons stated in open court, the telephonic status conference will reconvene on 5/25/2021 at 11:00 AM. The Defendants shall be prepared to discuss the status of their computer issues and their proposed schedule for disclosure of experts. Public access is available via the following call-in number: (877) 336-1831 with access code 2813746. Counsel of record will receive an email the day prior to the start of the telephonic hearing with instructions to join the call. Persons granted remote access to proceedings are reminded of the general prohibition against photographing, recording, and rebroadcasting of court proceedings. Violation of these prohibitions may result in sanctions. Mailed notice. (vk) (Entered: 05/04/2021) |
| 05/25/2021 | 🌐167 | MINUTE entry before the Honorable Lisa A. Jensen: A telephonic status conference held on 5/25/2021 to discuss an expert disclosure/deposition schedule. For the reasons stated on the record, pursuant to parties' agreement, the Court enters the following expert disclosure schedule: Defendants will identify experts by 6/15/2021; Defendants' expert report are due 8/1/2021; Plaintiffs will identify experts by 9/15/2021; Plaintiffs' expert report are due 11/1/2021. A telephonic status conference is set for 11/15/2021 at 10:00AM. The parties shall be prepared |

| | | |
|---|---|---|
| | | to discuss the remainder of the expert disclosure/deposition schedule and if they plan on using rebuttal experts. Public access is available via the following call-in number: (877) 336-1831 with access code 2813746. Counsel of record will receive an email the day prior to the start of the telephonic hearing with instructions to join the call. Persons granted remote access to proceedings are reminded of the general prohibition against photographing, recording, and rebroadcasting of court proceedings. Violation of these prohibitions may result in sanctions. Mailed notice. (vk) (Entered: 05/25/2021) |
| 07/23/2021 | 🌐168 | MOTION by Defendant Bryan A Schneider to Schedule a Status Conference *Unopposed* (Morris, Elizabeth) (Entered: 07/23/2021) |
| 07/23/2021 | 🌐169 | NOTICE of Motion by Elizabeth A.F. Morris for presentment of motion for miscellaneous relief 168 before Honorable Lisa A. Jensen on 7/29/2021 at 10:00 AM. (Morris, Elizabeth) (Entered: 07/23/2021) |
| 07/26/2021 | 🌐170 | MINUTE entry before the Honorable Lisa A. Jensen: Defendant's motion to schedule a status conference 168 is unopposed and granted. The motion hearing set for 7/29/2021 is stricken. However, the Court will proceed with a telephonic status hearing on 7/29/2021 at 10:00 AM. Public access is available via the following call-in number: (877) 336-1831 with access code 2813746. Counsel of record will receive an email the day prior to the start of the telephonic hearing with instructions to join the call. Persons granted remote access to proceedings are reminded of the general prohibition against photographing, recording, and rebroadcasting of court proceedings. Violation of these prohibitions may result in sanctions. Mailed notice. (vk) (Entered: 07/26/2021) |
| 07/29/2021 | 🌐171 | MINUTE entry before the Honorable Lisa A. Jensen: A telephonic status hearing held on 7/29/2021 to discuss the progress of expert discovery. Pursuant to agreement of the parties and for the reasons discussed on the record, the 8/2/2021 expert disclosure deadline is stricken. Additionally, Plaintiffs shall submit all supplemental discovery documents to defense counsel by 8/5/2021. A telephonic status conference is set for 8/11/2021 at 10:00 AM. The parties shall be prepared to discuss a new Defendants expert report disclosure date. Public access is available via the following call-in number: (877) 336-1831 with access code 2813746. Counsel of record will receive an email the day prior to the start of the telephonic hearing with instructions to join the call. Persons granted remote access to proceedings are reminded of the general prohibition against photographing, recording, and rebroadcasting of court proceedings. Violation of these prohibitions may result in sanctions. Mailed notice. (vk) (Entered: 07/29/2021) |
| 08/11/2021 | 🌐172 | MINUTE entry before the Honorable Lisa A. Jensen: A telephonic status conference held on 8/11/2021 to discuss the expert disclosure/deposition schedule. For the reasons stated on the record and pursuant to parties' agreement, the Court revises the expert schedule as follows: Defendants' expert reports are due 8/16/2021; Plaintiffs will identify experts by 9/30/2021; Plaintiff's expert reports are due 11/16/2021. The status hearing scheduled for 11/15/2021 is stricken and reset to 11/29/2021 at 10:00 AM. The parties shall be prepared to discuss the remainder of the expert disclosure/deposition schedule and if they plan on using rebuttal experts. Public access is available via the following call-in number: (877) 336-1831 with access code 2813746. Counsel of record will receive an email the day prior to the start of the telephonic hearing with instructions to join the call. Persons granted remote access to proceedings are reminded of the general prohibition against photographing, recording, and rebroadcasting of court proceedings. Violation of these prohibitions may result in sanctions. Mailed notice. (vk) (Entered: 08/11/2021) |

| 09/08/2021 | 🌐173 | MOTION by Attorney Lauren H Barski to withdraw as attorney for Bryan A Schneider. No party information provided (Barski, Lauren) (Entered: 09/08/2021) |
|---|---|---|
| 09/09/2021 | 🌐174 | MINUTE entry before the Honorable Lisa A. Jensen: Attorney Lauren H Barski's motion to withdraw 173 is granted because other counsel remain for Defendant. The Clerk is directed to terminate attorney Lauren H Barski's appearance. Mailed notice. (vk) (Entered: 09/09/2021) |
| 11/24/2021 | 🌐175 | ATTORNEY Appearance for Defendant Bryan A Schneider by Hannah Yeon Mee Jurowicz (Jurowicz, Hannah) (Entered: 11/24/2021) |
| 11/29/2021 | 🌐176 | MINUTE entry before the Honorable Lisa A. Jensen: Telephonic status hearing held on 11/29/2021 on the status of expert discovery. Expert discovery ends on 2/18/2021. By 12/8/2021, the parties shall file a joint status report to include the names and scheduled deposition dates of the expert deponents. A telephonic status hearing set for 2/22/2022 at 10:00 AM to discuss the next steps in the case. Public access is available via the following call-in number: (877) 336-1831 with access code 2813746 #. Counsel for all parties are directed to appear. Counsel of record will receive an email the day prior to the start of the telephonic hearing with instructions to join the call. Persons granted remote access to proceedings are reminded of the general prohibition against photographing, recording, and rebroadcasting of court proceedings. Violation of these prohibitions may result in sanctions. Mailed notice. (vk) (Entered: 11/29/2021) |
| 12/08/2021 | 🌐177 | STATUS Report *(Joint) on Expert Deposition Scheduling* by Bryan A Schneider (Chimienti, Matthew) (Entered: 12/08/2021) |
| 02/22/2022 | 🌐178 | MINUTE entry before the Honorable Lisa A. Jensen: A telephonic status hearing held on 2/22/2022. The parties report that expert discovery has been completed. Fact discovery, including expert discovery, is closed. Defense counsel states their intention to file a dispositive motion. As such, by 3/1/2022, the parties are directed to consult Judge Johnston's standing order on summary judgment found on his webpage and contact Judge Johnston's chambers to schedule a prefiling conference referenced therein. Mailed notice. (vk) (Entered: 02/22/2022) |
| 02/28/2022 | 🌐179 | MINUTE entry before the Honorable Iain D. Johnston: By agreement of the parties, a telephonic summary judgment prefiling conference is set for 3/18/2022 at 9:30 AM. Counsel of record will receive an email a day before the hearing with instructions to join the call. (yxp, ) (Entered: 02/28/2022) |
| 03/18/2022 | 🌐180 | MINUTE entry before the Honorable Iain D. Johnston: Telephonic prefiling summary judgment conference held on 3/18/2022. Parties shall file a written status report by 3/29/2022 on how they would like to proceed with the case. A copy of the article discussed on the call has been attached to this entry. (Attachments: # 1 Supplement Trial On The Papers) (yxp, ) (Entered: 03/18/2022) |
| 03/29/2022 | 🌐181 | STATUS Report *Joint Status Report* by Bryan A Schneider (Chimienti, Matthew) (Entered: 03/29/2022) |
| 03/30/2022 | 🌐182 | MINUTE entry before the Honorable Iain D. Johnston: Status report 181 received and reviewed. Telephonic status hearing is set for 4/6/2022 at 10:00AM. Counsel will receive an email prior to the start of the telephonic status hearing with instructions to join the call. Members of the public and media will be able to call in to listen to this hearing. The call-in number is 888-557-8511 and the access code is 2660444. Persons granted remote access to proceedings are reminded of the general prohibition against photographing, recording, and rebroadcasting of court |

| | | proceedings. Violation of these prohibitions may result in sanctions. (yxp, ) (Entered: 03/30/2022) |
|---|---|---|
| 04/06/2022 | 🔘 183 | MINUTE entry before the Honorable Iain D. Johnston: Status hearing held on 4/6/2022. The briefing schedule on the Daubert and Federal Rule of Evidence 702 motions is set as follows: All motions shall be filed by 7/11/2022; Responses shall be filed by 8/1/2022 and replies shall be filed by 8/15/2022. The next hearing will be set at a later date. (yxp, ) (Entered: 04/06/2022) |
| 07/11/2022 | 🔘 184 | MOTION by Defendant Bryan A Schneider to strike *Expert Testimony* (Jurowicz, Hannah) (Entered: 07/11/2022) |
| 07/11/2022 | 🔘 185 | MEMORANDUM by Bryan A Schneider in support of motion to strike 184 *Expert Testimony* (Attachments: # 1 Exhibit A - Table of Opinions to Exclude, # 2 Exhibit B - Dr. Boles Expert Report, # 3 Exhibit C - Dr. Boles Deposition Transcript Excerpts, # 4 Exhibit D - Dr. Fernandes Expert Report, # 5 Exhibit E - Dr. Fernandes Deposition Transcript Excerpts, # 6 Exhibit F - Dr. Lee Expert Report, # 7 Exhibit G - Dr. Lee Deposition Transcript Excerpts, # 8 Exhibit H - Article by Iris Jovel, et al., # 9 Exhibit I - Plaintiffs' Statement of Facts for Experts, # 10 Exhibit J - Westlaw Cited Cases)(Jurowicz, Hannah) (Entered: 07/11/2022) |
| 08/01/2022 | 🔘 186 | RESPONSE by 1st Way Pregnancy Support Services, Pregnancy Aid South Suburbs, Ronald L Schroederin Opposition to MOTION by Defendant Bryan A Schneider to strike *Expert Testimony* 184 (Attachments: # 1 Exhibit Exhibits 1-5, # 2 Exhibit Exhibits 6-7)(Olp, Thomas) (Entered: 08/01/2022) |
| 08/15/2022 | 🔘 187 | REPLY by Defendant Bryan A Schneider to motion to strike 184 (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C)(Gallo, Sarah) (Entered: 08/15/2022) |
| 09/08/2022 | 🔘 188 | MOTION by Attorney Matthew V. Chimienti to withdraw as attorney for Bryan A Schneider. No party information provided (Chimienti, Matthew) (Entered: 09/08/2022) |
| 09/09/2022 | 🔘 189 | MINUTE entry before the Honorable Lisa A. Jensen: Defendant's motion to withdraw 188 is granted because other counsel remains for Defendant. The Clerk is directed to terminate the appearance of attorney Matthew Chimienti. Mailed notice. (vk) (Entered: 09/09/2022) |
| 11/29/2022 | 🔘 190 | MINUTE entry before the Honorable Iain D. Johnston: The Court would be interested in knowing the parties' positions on what effect, if any, the Seventh Circuit's recent decision in Doe v. Rokita, No. 22-2748 (7th Cir. Nov. 28, 2022) has on these cases. The parties may file position papers on this issue by January 13, 2023. The Court does not need-or even expect-a 15 page brief on the topic. But, having asked for the parties' views, the Court will certainly read and consider the filings regardless of length and detail. Mailed notice (jp, ) (Entered: 11/29/2022) |
| 12/29/2022 | 🔘 191 | ANNUAL REMINDER: Pursuant to Local Rule 3.2 (Notification of Affiliates), any nongovernmental party, other than an individual or sole proprietorship, must file a statement identifying all its affiliates known to the party after diligent review or, if the party has identified no affiliates, then a statement reflecting that fact must be filed. An affiliate is defined as follows: any entity or individual owning, directly or indirectly (through ownership of one or more other entities), 5% or more of a party. The statement is to be electronically filed as a PDF in conjunction with entering the affiliates in CM/ECF as prompted. As a reminder to counsel, parties must supplement their statements of affiliates within thirty (30) days of any change in the information previously reported. This minute order is being issued to all counsel of record to remind counsel of their obligation to provide updated |

| | | |
|---|---|---|
| | | information as to additional affiliates if such updating is necessary. If counsel has any questions regarding this process, this LINK will provide additional information. Signed by the Executive Committee on 12/29/2022: Mailed notice. (tg, ) (Entered: 12/29/2022) |
| 01/09/2023 | 🌐 192 | ATTORNEY Appearance for Defendant Bryan A Schneider by John Thomas Hazinski (Hazinski, John) (Entered: 01/09/2023) |
| 01/12/2023 | 🌐 193 | ATTORNEY Appearance for Defendant Bryan A Schneider by Kathryn Hunt Muse (Muse, Kathryn) (Entered: 01/12/2023) |
| 01/13/2023 | 🌐 194 | Position Paper by Bryan A Schneider *Defendant's Position Paper Regarding Doe v. Rokita* (Attachments: # 1 Exhibit A - Amendment to Health Care Right of Conscience Act, # 2 Exhibit B - Draft Defendant's Motion for Summary Judgment) (Morris, Elizabeth) (Entered: 01/13/2023) |
| 01/13/2023 | 🌐 195 | Plaintiffs' Position on Doe v Rokita STATEMENT by 1st Way Pregnancy Support Services (Olp, Thomas) (Entered: 01/13/2023) |
| 01/17/2023 | 🌐 196 | MINUTE entry before the Honorable Iain D. Johnston: The Court thanks the parties for their helpful filings and appreciates their input. Not surprisingly, all sides believe that Doe v. Rokita supports their case. But Defendant went one step further. Defendant wants another shot at summary judgment, even going so far as to attach a draft motion. (The Court is unsure whether it is a motion or memorandum, but that really doesn't matter.) Under Defendant's theory, no expert testimony is needed now. If that were true, the Court would not need to rule on the various motions to strike under Daubert and Federal Rule of Evidence 702. The Court believes additional summary judgment briefing would not be an efficient use of time and resources. Without repeating the Court's position on filing summary judgment motions generally and summary judgment motions in cases that will be tried without a jury specifically, the Court does not believe yet another round of summary judgment briefing would further the goals of Federal Rule of Civil Procedure 1. Instead, the Court will soldier on as discussed during the April 6, 2022, status hearing. The Court will decide the Daubert and Rule 702 motions. The parties can then prepare stipulations of fact for the bench trial. Experts will testify at the bench trial to the extent they can after the Court's ruling on the motions. Again, the Court appreciates the parties' filings regarding Doe v. Rokita. And just in case any party was thinking about it, the Court will not accept new motions to strike expert testimony. At the trial, the Court will be able to determine relevance and other issues. If the Court determines some expert testimony is no longer relevant, the Court will still hear the testimony under an offer of proof. Trust me. At this point, the Court's process is the quickest route to resolution of this case in the district court. (yxp, ) (Entered: 01/17/2023) |
| 03/22/2023 | 🌐 197 | ORDER, By 4/3/2023 the parties must provide the answer to the question asked in this Order in three pages or less. See the attached for details. Signed by the Honorable Iain D. Johnston on 3/22/2023: (yxp, ) (Entered: 03/22/2023) |
| 04/03/2023 | 🌐 198 | Defendant's Position on Opinion Witnesses by Bryan A Schneider (Gallo, Sarah) (Entered: 04/03/2023) |
| 04/03/2023 | 🌐 199 | Statement of Need for Opinion Testimony STATEMENT by 1st Way Pregnancy Support Services, Pregnancy Aid South Suburbs, Ronald L Schroeder (Olp, Thomas) (Entered: 04/03/2023) |
| 04/06/2023 | 🌐 200 | ATTORNEY Appearance for Defendant Bryan A Schneider by Keri L Holleb Hotaling (Holleb Hotaling, Keri) (Entered: 04/06/2023) |

| 05/15/2023 | 🌐 201 | MINUTE entry before the Honorable Iain D. Johnston: A telephonic status hearing is set for 5/19/2023 at 1:30 PM. Counsel will receive an email prior to the start of the telephonic status hearing with instructions to join the call. The call-in number is 888-557-8511 and the access code is 2660444. Persons granted remote access to proceedings are reminded of the general prohibition against photographing, recording, and rebroadcasting of court proceedings. Violation of these prohibitions may result in sanctions. (yxp, ) (Entered: 05/15/2023) |
|---|---|---|
| 05/19/2023 | 🌐 202 | MINUTE entry before the Honorable Iain D. Johnston: Status hearing held on 5/19/2023. Defendant's motion to strike 184 is granted in part and denied in part for the reasons stated on the record. The final pretrial order shall be filed by 8/28/2023 and shall include witness and exhibit lists. Bench trial set for 9/20/2023 at 9:30 AM. ETT: 3 days. (yxp, ) (Entered: 05/19/2023) |
| 06/22/2023 | 📗🌐 203 | TRANSCRIPT OF PROCEEDINGS held on 5/19/2023 before the Honorable Iain D. Johnston. Order Number: 45925. Court Reporter Contact Information: Heather Perkins-Reiva, heather_perkins-reiva@ilnd.uscourts.gov, (779)772-8309.

IMPORTANT: The transcript may be viewed at the court's public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through the Court Reporter/Transcriber or PACER. For further information on the redaction process, see the Court's web site at www.ilnd.uscourts.gov under Quick Links select Policy Regarding the Availability of Transcripts of Court Proceedings.

Redaction Request due 7/13/2023. Redacted Transcript Deadline set for 7/24/2023. Release of Transcript Restriction set for 9/20/2023. (Perkins-Reiva, Heather) (Entered: 06/22/2023) |
| 07/18/2023 | 🌐 204 | ATTORNEY Appearance for Defendant Bryan A Schneider by Karyn L Bass Ehler (Bass Ehler, Karyn) (Entered: 07/18/2023) |
| 07/31/2023 | 🌐 205 | MOTION by Attorney Keri Holleb Hotaling to withdraw as attorney for Bryan A Schneider. No party information provided

Presented before District Judge

(Holleb Hotaling, Keri) (Entered: 07/31/2023) |
| 08/01/2023 | 🌐 206 | MINUTE entry before the Honorable Lisa A. Jensen: Attorney Keri Holleb's motion to withdraw 205 is granted because other counsel remain for Defendant. The Clerk is directed to terminate attorney Holleb's appearance. Mailed notice. (vk) (Entered: 08/01/2023) |
| 08/07/2023 | 🌐 207 | MOTION by Defendant Bryan A Schneider to substitute party *Unopposed*

Presented before District Judge

(Gallo, Sarah) (Entered: 08/07/2023) |
| 08/08/2023 | 🌐 208 | MINUTE entry before the Honorable Lisa A. Jensen: Defendant Bryan A. Schneider's motion to substitute party 207 is unopposed and granted. The Clerk is directed to substitute Mario Treto Jr. for Defendant Bryan A. Schneider. Mailed notice. (vk) (Entered: 08/08/2023) |
| 08/16/2023 | 🌐 209 | MOTION by Defendant Mario Treto, Jr. to consolidate cases *for trial, agreed motion* |

|  |  | Presented before District Judge |
|---|---|---|
|  |  | (Gallo, Sarah) (Entered: 08/16/2023) |
| 08/17/2023 | 🌐210 | MINUTE entry before the Honorable Iain D. Johnston: On the joint motion for consolidation 209 , the parties shall submit a proposed order to the Court's proposed order inbox by 8/21/2023. (yxp, ) (Entered: 08/17/2023) |
| 08/22/2023 | 🌐211 | ORDER, The motion to consolidate cases 209 is granted. See the attached Order for details. Signed by the Honorable Iain D. Johnston on 8/22/2023:(yxp, ) (Entered: 08/22/2023) |
| 08/28/2023 | 🌐212 | ATTORNEY Appearance for Plaintiffs 1st Way Pregnancy Support Services, Pregnancy Aid South Suburbs, Ronald L Schroeder by Peter Christopher Breen (Breen, Peter) (Entered: 08/28/2023) |
| 08/28/2023 | 🌐213 | MOTION by Defendant Mario Treto, Jr.in limine *to bar testimony of Pasha Bohlen and Steven Jellema*

Presented before District Judge

(Attachments: # 1 Exhibit A, # 2 Exhibit B)(Gallo, Sarah) (Entered: 08/28/2023) |
| 08/28/2023 | 🌐214 | MOTION by Defendant Mario Treto, Jr.in limine *Regarding Admission of Evidence for Non-Hearsay Purposes (Joint)*

Presented before District Judge

(Hazinski, John) (Entered: 08/28/2023) |
| 08/29/2023 | 🌐215 | EXHIBIT by Plaintiffs 1st Way Pregnancy Support Services, Pregnancy Aid South Suburbs, Ronald L Schroeder (Attachments: # 1 Text of Proposed Order proposed pretrial order)(Olp, Thomas) (Entered: 08/29/2023) |
| 08/30/2023 | 🌐216 | MINUTE entry before the Honorable Iain D. Johnston: The motion to bar 213 and agreed motion in limine 214 are taken under advisement. (yxp, ) (Entered: 08/30/2023) |
| 09/01/2023 | 🌐217 | MINUTE entry before the Honorable Iain D. Johnston: The Court has adopted a new standing order on Bench Trials. The parties are directed to review the standing order on the Court's webpage as it will apply to the bench trial in this case. (yxp, ) (Entered: 09/01/2023) |
| 09/04/2023 | 🌐218 | RESPONSE by Pregnancy Aid South Suburbsin Opposition to MOTION by Defendant Mario Treto, Jr.in limine *to bar testimony of Pasha Bohlen and Steven Jellema*

Presented before District Judge

213 (Attachments: # 1 Exhibit PASS W list 8-11-23)(Olp, Thomas) (Entered: 09/04/2023) |
| 09/07/2023 | 🌐219 | MINUTE entry before the Honorable Iain D. Johnston: An in-person final pretrial conference is set for 9/19/2023 at 1:30 PM. (yxp, ) (Entered: 09/07/2023) |
| 09/12/2023 | 🌐220 | MOTION by Plaintiffs 1st Way Pregnancy Support Services, Pregnancy Aid South Suburbs, Ronald L Schroederfiling of corrected Ex. C to proposed final pretrial order |

| | | |
|---|---|---|
| | | Presented before District Judge<br><br>(Attachments: # 1 motion to submit corrected Ex. C to proposed final pretrial order)(Olp, Thomas) (Entered: 09/12/2023) |
| 09/19/2023 | 🌐 221 | MINUTE entry before the Honorable Iain D. Johnston: Final pretrial conference held on 9/19/2023. Defendant's motion to bar testimony 213 is taken under advisement. A PDF searchable version shall be submitted to Judge Johnston's proposed order email. The joint motion to admit evidence for non-hearsay purposes 214 is stricken and shall be addressed as issues are raised during the trial. Plaintiffs' motion to amend exhibit C 220 is granted. 472 and 473 of defendant's exhibit 58 shall be submitted to the Court for in camera review. The bench trial set for 9/20/2023 at 9:30 AM is moved to begin at 9:00 AM. (yxp, ) (Entered: 09/19/2023) |
| 09/20/2023 | 🌐 222 | MINUTE entry before the Honorable Iain D. Johnston: Bench trial held on 9/20/2023. Defendant's motion in limine 213 is denied for the reasons stated on the record. Bench Trial continued to 9/21/2023 at 9:00 AM. (yxp, ) (Entered: 09/20/2023) |
| 09/21/2023 | 🌐 223 | MINUTE entry before the Honorable Iain D. Johnston: Bench trial held on 9/21/2023 and continued to 9/22/2023 at 9:00 AM. (yxp, ) (Entered: 09/21/2023) |
| 09/22/2023 | 🌐 224 | MINUTE entry before the Honorable Iain D. Johnston: Bench trial completed on 9/22/2023. The parties are reminded to review the Court's standing order on bench trials located on the Court's webpage. Post-trial briefs shall be filed by 10/23/2023. (yxp, ) (Entered: 09/22/2023) |
| 09/26/2023 | 🔓🌐 225 | TRANSCRIPT OF PROCEEDINGS held on 9/20/2023, Trial Transcript, Volume I, before the Honorable Iain D. Johnston. Court Reporter Contact Information: Heather Perkins-Reiva, heather_perkins-reiva@ilnd.uscourts.gov, (779)772-8309.<br><br>IMPORTANT: The transcript may be viewed at the court's public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through the Court Reporter/Transcriber or PACER. For further information on the redaction process, see the Court's web site at www.ilnd.uscourts.gov under Quick Links select Policy Regarding the Availability of Transcripts of Court Proceedings.<br><br>Redaction Request due 10/17/2023. Redacted Transcript Deadline set for 10/27/2023. Release of Transcript Restriction set for 12/25/2023. (Perkins-Reiva, Heather) (Entered: 09/26/2023) |
| 09/26/2023 | 🔓🌐 226 | TRANSCRIPT OF PROCEEDINGS held on 9/21/2023, Trial Transcript, Volume II, before the Honorable Iain D. Johnston. Court Reporter Contact Information: Heather Perkins-Reiva, heather_perkins-reiva@ilnd.uscourts.gov, (779)772-8309.<br><br>IMPORTANT: The transcript may be viewed at the court's public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through the Court Reporter/Transcriber or PACER. For further information on the redaction process, see the Court's web site at www.ilnd.uscourts.gov under Quick Links select Policy Regarding the Availability of Transcripts of Court Proceedings.<br><br>Redaction Request due 10/17/2023. Redacted Transcript Deadline set for 10/27/2023. Release of Transcript Restriction set for 12/25/2023. (Perkins-Reiva, Heather) (Entered: 09/26/2023) |

| 09/26/2023 | 227 | TRANSCRIPT OF PROCEEDINGS held on 9/22/2023, Trial Transcript, Volume III, before the Honorable Iain D. Johnston. Court Reporter Contact Information: Heather Perkins-Reiva, heather_perkins-reiva@ilnd.uscourts.gov, (779)772-8309.<br><br>IMPORTANT: The transcript may be viewed at the court's public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through the Court Reporter/Transcriber or PACER. For further information on the redaction process, see the Court's web site at www.ilnd.uscourts.gov under Quick Links select Policy Regarding the Availability of Transcripts of Court Proceedings.<br><br>Redaction Request due 10/17/2023. Redacted Transcript Deadline set for 10/27/2023. Release of Transcript Restriction set for 12/25/2023. (Perkins-Reiva, Heather) (Entered: 09/26/2023) |
|---|---|---|
| 09/28/2023 | 228 | ATTORNEY Appearance for Defendant Mario Treto, Jr. by Christopher Graham Wells (Wells, Christopher) (Entered: 09/28/2023) |
| 09/29/2023 | 229 | MOTION by Defendant Mario Treto, Jr. to set a briefing schedule *for post-trial submissions (Joint)*<br><br>Presented before District Judge<br><br>(Hazinski, John) (Entered: 09/29/2023) |
| 09/29/2023 | 230 | ORDER Setting Schedule For Post-Trial Submissions [See Attached]. Signed by the Honorable Iain D. Johnston on 9/29/2023. Mailed notice (jp, ) (Main Document 230 replaced on 10/4/2023) (yxp, ). (Entered: 09/29/2023) |
| 10/09/2023 | 231 | TRANSCRIPT OF PROCEEDINGS held on 9/19/2023 before the Honorable Iain D. Johnston. Order Number: 46967. Court Reporter Contact Information: Heather Perkins-Reiva, heather_perkins-reiva@ilnd.uscourts.gov, (779)772-8309.<br><br>IMPORTANT: The transcript may be viewed at the court's public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through the Court Reporter/Transcriber or PACER. For further information on the redaction process, see the Court's web site at www.ilnd.uscourts.gov under Quick Links select Policy Regarding the Availability of Transcripts of Court Proceedings.<br><br>Redaction Request due 10/30/2023. Redacted Transcript Deadline set for 11/9/2023. Release of Transcript Restriction set for 1/8/2024. (Perkins-Reiva, Heather) (Entered: 10/09/2023) |
| 10/30/2023 | 232 | STIPULATION *Parties' Joint Post-Trial Stipulations of Fact* (Attachments: # 1 Exhibit A)(Morris, Elizabeth) (Entered: 10/30/2023) |
| 10/30/2023 | 233 | Exhibit List *Joint List of Parties' Agreed Exhibits* by Mario Treto, Jr.. (Attachments: # 1 Exhibit A: Joint List of Parties' Agreed Exhibits)(Hazinski, John) (Entered: 10/30/2023) |
| 10/30/2023 | 234 | Deposition Designations by Mario Treto, Jr. *Parties' Deposition Designations for Witness Susan Wilson* (Attachments: # 1 Exhibit 1: Highlighted Deposition Transcript, # 2 Exhibit 2: Wilson Dep. Ex. 1, # 3 Exhibit 3: Wilson Dep. Ex. 2, # 4 Exhibit 4: Wilson Dep. Ex. 4, # 5 Exhibit 5: Wilson Dep. Ex. 6, # 6 Exhibit 6: Wilson Dep. Ex. 7, # 7 Exhibit 7: Wilson Dep. Ex. 8, # 8 Exhibit 8: Wilson Dep. |

| | | Ex. 9, # 9 Exhibit 9: Wilson Dep. Ex. 12, # 10 Exhibit 10: Wilson Dep. Ex. 13, # 11 Exhibit 11: Wilson Dep. Ex. 15)(Hazinski, John) (Entered: 10/30/2023) |
|---|---|---|
| 11/14/2023 | 235 | MOTION by Defendant Mario Treto, Jr. to bar the Undisclosed Expert Testimony of Dr. C. Brent Boles<br><br>Presented before District Judge<br><br>(Attachments: # 1 Exhibit A - Dr. Boles Expert Report, # 2 Exhibit B - Dr. Boles Deposition Transcript, # 3 Exhibit C - Trial Transcript of Dr. Boles Testimony) (Jurowicz, Hannah) (Entered: 11/14/2023) |
| 11/20/2023 | 236 | TRIAL Brief *and Proposed Findings* by 1st Way Pregnancy Support Services, Pregnancy Aid South Suburbs, Ronald L Schroeder (Attachments: # 1 Exhibit Proposed Findings of Fact)(Olp, Thomas) (Entered: 11/20/2023) |
| 11/27/2023 | 237 | MOTION by Defendant Mario Treto, Jr. for extension of time to file response/reply as to trial brief 236 *Joint Motion to Amend the Briefing Schedule*<br><br>Presented before District Judge<br><br>(Morris, Elizabeth) (Entered: 11/27/2023) |
| 11/28/2023 | 238 | MOTION by Defendant Mario Treto, Jr. for leave to file excess pages *UNOPPOSED*<br><br>Presented before District Judge<br><br>(Morris, Elizabeth) (Entered: 11/28/2023) |
| 11/28/2023 | 239 | MINUTE entry before the Honorable Iain D. Johnston: The parties have moved jointly to extend post-trial briefing deadlines 237 , asserting that the holidays are making the deadlines difficult to meet, even though the Court merely adopted the deadlines the parties had proposed, see Dkt. 229. The motion 237 is granted. The defendant's response brief, supplemental statements of fact, and responses to the plaintiffs' supplemental statements of fact are now due 12/18/2023 and the plaintiffs' reply briefs and responses to the defendant's supplemental statements of fact are now due 1/9/2024. The defendant's motion for leave to file an oversized brief 238 is granted. (yxp, ) (Entered: 11/28/2023) |
| 11/30/2023 | 240 | RESPONSE by 1st Way Pregnancy Support Services, Pregnancy Aid South Suburbs, Ronald L Schroederin Opposition to MOTION by Defendant Mario Treto, Jr. to bar the Undisclosed Expert Testimony of Dr. C. Brent Boles<br><br>Presented before District Judge<br><br>235 *Resp & Ex 1-4a-4c* (Olp, Thomas) (Entered: 11/30/2023) |
| 12/12/2023 | 241 | MOTION by Plaintiffs 1st Way Pregnancy Support Services, Pregnancy Aid South Suburbs, Ronald L Schroederadmit Schroeder P Trial Exhibits 162 and 163<br><br>Presented before District Judge<br><br>(Attachments: # 1 brief in support of motion to admit, # 2 Exhibit Exhibit 1)(Olp, Thomas) (Entered: 12/12/2023) |
| 12/18/2023 | 242 | RESPONSE by Defendant Mario Treto, Jr. to trial brief 236 (Attachments: # 1 Exhibit A - Defendant's Supplemental Facts, # 2 Exhibit B - Defendant's Response |

to NIFLA Facts, # 3 Exhibit C - Defendant's Response to Schroeder Plaintiffs' Facts, # 4 Exhibit 1 - Schroeder Trial Ex 154 - Options Now Website, # 5 Exhibit 2 - Def #71 - Focus Web Website, # 6 Exhibit 3 - Def #38 - Options Now Abortion Health and Safety Checklist, # 7 Exhibit 4 - Schroeder Trial Ex 114 - Policy - Educational Materials, # 8 Exhibit 5 - Schroeder Trial Ex 84 - Options Now - Telephone Talking points, # 9 Exhibit 6 - Schroeder 104 - Nurse Ultrasound Scripting, # 10 Exhibit 7 - Schroeder Trial Ex 66 - Health Services Cook Will County, # 11 Exhibit 8 - Susan Wilson Dep Transcript Excerpts, # 12 Exhibit 9 - Susan Wilson Dep Ex 6, # 13 Exhibit 10 - Susan Wilson Dep Ex 7, # 14 Exhibit 11 - Schroeder Trial Ex 89 - Options Now - Advocate Intake Form, # 15 Exhibit 12 - Schroeder Trial Ex 129 - Policy Guidelines and Patient Flow for Ultrasounds, # 16 Exhibit 13 - Schroeder Trial Ex 130 - Options Now Policy Scheduling of Ultrasound Services, # 17 Exhibit 14 - NIFLA Trial Ex 32a, # 18 Exhibit 15 - NIFLA Trial Ex 32b, # 19 Exhibit 16 - NIFLA Trial Ex 32k - ACOG Committee Opinion No 390 Dec 2007, # 20 Exhibit 17 - Def Trial Ex #72 - ACOG Committee Opinion No 385 Nov 2007, # 21 Exhibit 18 - Def Trial Ex #55 - Ltr form Dr. T.Z. (undated), # 22 Exhibit 19 - Def Trial Ex #56 - Ltr from Dr. T.Z. (4-4-2014), # 23 Exhibit 20 - Def Trial Ex #57, # 24 Exhibit 21 - Def Trial Ex #58, # 25 Exhibit 22 - Def Trial Ex #59 - Complaint re Care Net Pregnancy Services of DuPage County, # 26 Exhibit 23 - Def Trial Ex #60 - Complaint - Claim Intake Report, # 27 Exhibit 24 - Def Trial Ex #61 - IDFPR Investigative Report (Aug. 24, 2016), # 28 Exhibit 25 - Def Trial Ex #62 - Ltr re medical treatment, # 29 Exhibit 26 - Def Trial Ex #66 - Human Services Committee Hrg Transcript 5.13.2015, # 30 Exhibit 27 - Def Trial Ex #11 - Life Choices Medical History, # 31 Exhibit 28 - Def Trial Ex 68 - Mosaic Website combined, # 32 Exhibit 29 - Def. Trial Ex 69 - Life Choices Website, # 33 Exhibit 30 - Def Trial Ex #70 - Options Now - Thrive Metro East Website, # 34 Exhibit 31 - Def Trial Ex #7 - Unpregnant is not a word pamphlet, # 35 Exhibit 32 -Def Trial Ex #19 - Mosaic's 2016 Impact Report, # 36 Exhibit 33 - Def Trial Ex #20 - Mosaic's 2017 Impact Report, # 37 Exhibit 34 - Def Trial Ex #21 - Mosaic's 2018 Impact Report, # 38 Exhibit 35 - Def Trial Ex #26 - The Truth about Abortion Procedures Brochure, # 39 Exhibit 36 - Def Trial Ex #10 - Life Choices client intake form, # 40 Exhibit 37 - Def Trial Ex #27 - 1st Way Basic Counseling, # 41 Exhibit 38 - Def Trial Ex #39 - Options Now Ultrasound Form, # 42 Exhibit 39 - Def Trial Ex #40 - Options Now Contraception Ed Policy, # 43 Exhibit 40 - NIFLA Trial Ex 7 - Mosaic Informational booklet on abortion, # 44 Exhibit 41 - NIFLA Trial Ex 17 - Mosaic telephone talking points, # 45 Exhibit 42 - NIFLA Trial Ex 32c - Dr. Paul Burcher Expert Report, # 46 Exhibit 43 - Schroeder Trial Ex 157-01 - Focus website, # 47 Exhibit 44 - Schroeder 157-15 - Focus considering abortion webpage, # 48 Exhibit 45 - Schroeder 157-17 - Focus types of abortion webpage)(Hazinski, John) (Entered: 12/18/2023)

| | | |
|---|---|---|
| 12/19/2023 | 🌐243 | ATTORNEY Appearance for Amicus American College of Obstetricians and Gynecologists by Emily Werth (Werth, Emily) (Entered: 12/19/2023) |
| 12/19/2023 | 🌐244 | MOTION by Amicus American College of Obstetricians and Gynecologists for leave to file *Brief in Support of Defendant Mario Treto Jr.* <br><br> Presented before District Judge <br><br> (Attachments: # 1 Exhibit A-Brief Amicus Curiae American College of Obsetricians and Gynecologists in Support of Defendant Mario Treto Jr., # 2 Exhibit B-Westlaw Cases)(Klafeta, Ameri) (Entered: 12/19/2023) |
| 12/20/2023 | 🌐245 | MINUTE entry before the Honorable Iain D. Johnston: ACOG's motion for leave to file an amicus brief 244 is granted. The brief shall be filed instanter. (yxp, ) |

| | | (Entered: 12/20/2023) |
|---|---|---|
| 12/20/2023 | 🌐246 | Brief of Amicus Curiae American College of Obstetricians and Gynecologists in Support of Defendant Mario Treto Jr. by American College of Obstetricians and Gynecologists (Klafeta, Ameri) (Entered: 12/20/2023) |
| 12/22/2023 | 🌐247 | RESPONSE by Mario Treto, Jr.in Opposition to MOTION by Plaintiffs 1st Way Pregnancy Support Services, Pregnancy Aid South Suburbs, Ronald L Schroederadmit Schroeder P Trial Exhibits 162 and 163 <br><br>Presented before District Judge <br><br>241 (Attachments: # 1 Exhibit A: Pew Research Center Methodology, # 2 Exhibit B: Cited cases not published in official reporters)(Hazinski, John) (Entered: 12/22/2023) |
| 12/28/2023 | 🌐248 | ANNUAL REMINDER: Pursuant to Local Rule 3.2 (Notification of Affiliates), any nongovernmental party, other than an individual or sole proprietorship, must file a statement identifying all its affiliates known to the party after diligent review or, if the party has identified no affiliates, then a statement reflecting that fact must be filed. An affiliate is defined as follows: any entity or individual owning, directly or indirectly (through ownership of one or more other entities), 5% or more of a party. The statement is to be electronically filed as a PDF in conjunction with entering the affiliates in CM/ECF as prompted. As a reminder to counsel, parties must supplement their statements of affiliates within thirty (30) days of any change in the information previously reported. This minute order is being issued to all counsel of record to remind counsel of their obligation to provide updated information as to additional affiliates if such updating is necessary. If counsel has any questions regarding this process, this LINK will provide additional information. Signed by the Executive Committee on 12/28/2023: Mailed notice. (tg, ) (Entered: 12/28/2023) |
| 01/03/2024 | 🌐249 | ATTORNEY Appearance for Amicus American College of Obstetricians and Gynecologists by Mason B. Strand (Strand, Mason) (Entered: 01/03/2024) |
| 01/09/2024 | 🌐250 | REPLY by Plaintiffs 1st Way Pregnancy Support Services, Pregnancy Aid South Suburbs, Ronald L Schroeder to response in opposition to motion, 247 (Attachments: # 1 Exhibit Response D Supp PFF)(Olp, Thomas) (Entered: 01/10/2024) |
| 09/05/2024 | 🌐251 | MINUTE entry before the Honorable Iain D. Johnston: Before the Court are two post-trial motions 235 and 241 . The motions are briefed and remain under advisement, along with the parties' proposed findings of facts and conclusions of law. For administrative purposes, the clerk is directed to terminate 235 and 241 as separate pending motions, as the Court will take them up along with the parties' other post-trial materials. (yxp, ) (Entered: 09/05/2024) |
| 09/11/2024 | 🌐252 | EXECUTIVE COMMITTEE ORDER: General Order 24-0027: On September 9, 2024, United States Magistrate Judge Lisa Jensen retired from service and is no longer sitting as a magistrate judge in the Northern District of Illinois. The court must reassign cases previously referred to Judge Jensen to a U.S. magistrate judge. General Order 24-0026 directed the Clerk of Court to reassign certain civil consent and miscellaneous cases. Additional cases must now be reassigned; therefore IT IS HEREBY ORDERED THAT the cases in the attached list are to be reassigned accordingly to the magistrate judge listed; and IT IS HEREBY FURTHER ORDERED THAT unless otherwise ordered by the newly assigned magistrate |

| | | |
|---|---|---|
| | | judge, all hearing dates, deadlines, and schedules previously set are to remain in effect. (jp, ) (Entered: 09/12/2024) |
| 11/25/2024 | 🌐253 | MOTION by Attorney Kathryn Hunt Muse to withdraw as attorney for Mario Treto, Jr.. No party information provided<br><br>Presented before District Judge<br><br>(Muse, Kathryn) (Entered: 11/25/2024) |
| 11/25/2024 | 🌐254 | MINUTE entry before the Honorable Margaret J. Schneider:Attorney Kathryn Hunt Muse's Motion to Withdraw Attorney of Record as Counsel for Defendant 253 , is granted. The Court notes Defendant continues to be represented by other counsel. The Clerk is directed to terminate Attorney Kathryn Hunt Muse's appearance from the docket.Mailed notice. (jxk) (Entered: 11/25/2024) |
| 12/27/2024 | 🌐255 | ANNUAL REMINDER: Pursuant to Local Rule 3.2 (Notification of Affiliates), any nongovernmental party, other than an individual or sole proprietorship, must file a statement identifying all its affiliates known to the party after diligent review or, if the party has identified no affiliates, then a statement reflecting that fact must be filed. An affiliate is defined as follows: any entity or individual owning, directly or indirectly (through ownership of one or more other entities), 5% or more of a party. The statement is to be electronically filed as a PDF in conjunction with entering the affiliates in CM/ECF as prompted. As a reminder to counsel, parties must supplement their statements of affiliates within thirty (30) days of any change in the information previously reported. This minute order is being issued to all counsel of record to remind counsel of their obligation to provide updated information as to additional affiliates if such updating is necessary. If counsel has any questions regarding this process, this LINK will provide additional information. Signed by the Honorable Virginia M. Kendall on 12/27/2024: Mailed notice. (tg, ) (Entered: 12/27/2024) |
| 04/04/2025 | 🌐256 | MEMORANDUM Opinion and Order: Plaintiffs' request for declaratory and permanent injunctive relief as to Section 6.1(1) of Public Act 99-690 is granted and the Plaintiffs' motion as to Section 6.1(3) is denied. See the attached Order for details. Signed by the Honorable Iain D. Johnston on 4/4/2025: (yxp, ) (Entered: 04/04/2025) |
| 04/04/2025 | 🌐257 | ENTERED JUDGMENT, Civil case terminated. Signed by the Honorable Iain D. Johnston on 4/4/2025:(yxp, ) (Entered: 04/04/2025) |
| 04/07/2025 | 🌐258 | MINUTE entry before the Honorable Iain D. Johnston: In light of the Court's ruling 256 , the defendant's motion to bar 235 and plaintiffs' motion to admit trial exhibits 241 are stricken as moot. (yxp, ) (Entered: 04/07/2025) |
| 04/09/2025 | 🌐259 | NOTICE of appeal by 1st Way Pregnancy Support Services, Pregnancy Aid South Suburbs, Ronald L Schroeder regarding orders 256 , 257 Filing fee $ 605, receipt number AILNDC-23323791. Receipt number: n (Olp, Thomas) (Entered: 04/09/2025) |